Annick M. Persinger (CA Bar No. 272996)
Emily Feder Cooper (CA Bar No. 352951)
*apersinger@tzlegal.com*
*ecooper@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Andrea R. Gold (*admitted pro hac vice*)
Anna C. Haac (*admitted pro hac vice*)
*agold@tzlegal.com*
*ahaac@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900

Patrick Brickman (*admitted pro hac vice*)
Frank Bartela (*admitted pro hac vice*)
*pbrickman@dworkenlaw.com*
*fbartela@dworkenlaw.com*
**DWORKEN & BERNSTEIN CO., L.P.A.**
1468 W. 9th Street, Suite 135,
Cleveland, OH 44113
Telephone: (833) 856-0445

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JERRY MITCHELL ADAIR, DAVID AMBROZIC, PHILIP CAMACHO, DANIEL KADYROV, LINDSEY LABELLA, JEFFREY NYKERK, MICHAEL PAWSON, STACEY RODGERS, and MARC SCHAEFER on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>        Defendant. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Eumi K. Lee<br><br>Case No. 5:24-cv-07588-EKL |

Plaintiffs Jerry Mitchell Adair, David Ambrozic, Philip Camacho, Daniel Kadyrov, Lindsey LaBella, Jeffrey Nykerk, Michael Pawson, Stacey Rodgers, and Marc Schaefer ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through counsel, hereby bring this action against Apple Inc. ("Apple"), seeking relief due to the defective nature of their Apple AirPods Pro Generation One Headphones ("AirPods Pro Gen 1"). Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts and upon the investigation of their counsel, and information and belief as to all other matters.

## NATURE OF THE CASE

1.    Apple admits that AirPods Pro Gen 1 have an audio defect that causes them to exhibit crackling or static sounds, loss of bass sounds, or an increase in background sounds. These "sound issues," which Apple acknowledges on its own support page, are referred to herein as the "Audio Defect." *See* Exhibit 1 (https://support.apple.com/AirPods-pro-service-program-sound-issues).

2.    Plaintiffs bring this case against Apple because Apple touted its AirPods Pro Gen 1's superior audio and noise-cancelling qualities and sold AirPods Pro Gen 1 to consumers nationwide even though its AirPods Pro Gen 1 had a hidden Audio Defect.

3.    Indeed, although numerous consumers started complaining to Apple soon after the release of the AirPods Pro Gen 1 in October 2019—and even though Apple itself admitted to the defect in October 2020 on an obscure support page—Apple continued to sell AirPods Pro Gen 1 with an Audio Defect it knew about, but that was hidden from purchasers, for hundreds of dollars a pair until September 2022.

4.    The functionality of audio components is a material and essential feature of any headphones. Reasonable consumers expect that high-end, high-priced headphones like Apple's AirPods Pro Gen 1, which Apple advertised as having noise cancelling features and superior sound compared to other headphones, would have consistently functioning, high-quality audio.

5.    Reasonable consumers are not experts on the internal workings of audio components and thus trusted that Apple sold them high-quality headphones, at a high price point, that would have consistently functioning audio. Indeed, Apple made sure that consumers would continue to buy headphones not knowing that they contained the Audio Defect.

6.    Although Apple provided an ineffective "Service Program"—that just replaced defective headphones with replacements that were also defective—and admitted the Audio Defect with respect to a small subset of the total number of affected units, Apple concealed the sound issues it knew about from consumers so it could continue to sell its AirPods Pro Gen 1 while it developed a AirPods Pro Gen 2. Despite Apple vaguely acknowledging on a support page the defect in certain units, and providing a so-called Service Program, Apple did not make any effort to publicize the problem—continuing instead to sell headphones that Apple knew had a hidden defect.

7.    Plaintiffs and many consumers like them have all experienced the same sound issues—including crackling or static sounds, loss of bass sounds, or an increase in background sounds. When consumers attempt to return the AirPods Pro Gen 1 for a replacement earbud under the Service Program, Apple provides replacement earbuds that contain the exact same defect. Many consumers, including Plaintiffs, have been through several pairs of AirPods Pro Gen 1 only to experience the same defect each time. As a result, even the few consumers to whom Apple provides replacement under its Audio Defect Service Program are caught in a vicious cycle: use, malfunction, replacement, repeat. And after the Service Program-period has expired, consumers are left with a broken pair of expensive AirPods Pro Gen 1 headphones with no recourse.

8.    Based on Apple's representations about sound-quality and its omission of the truth about the sound issues the AirPods Pro Gen 1 experience, Plaintiffs and other consumers like them purchased Apple's AirPods Gen 1 based on their reasonable belief that they would effectively transmit sound and that they would not, instead, have "sound issues." Reasonable consumers, including Plaintiffs, would not have purchased Apple's AirPods Pro Gen 1 had they known that Apple's representations about audio functionality and quality were false and misleading, and that the AirPods Pro Gen 1 contained an Audio Defect that caused "sound issues" such as crackling, static, and interruption and loss of sound.

9.    Plaintiffs and similarly situated Class Members bought defective AirPods Pro Gen 1 headphones at a premium price when they, in fact, have "sound issues" that make the headphones worth less than what they paid for them. As a result of Apple's false and misleading advertising, and sale of its AirPods Pro Gen 1 with a hidden Audio Defect, Plaintiffs and the proposed Class have suffered damages. Plaintiffs and similarly situated Class Members would not have purchased their AirPods Pro Gen 1 or

they would have paid less had they known that Apple's advertising was false and misleading, and that the AirPods Pro Gen 1 contained an Audio Defect.

10.    Accordingly, Plaintiffs bring this action, individually and on behalf of a nationwide class of similarly situated owners of Apple's AirPods Pro Gen 1 headphones for violation of the consumer protection law, express warranty law, and implied warranty law of the 50-states, or in the alternative, for violation of the consumer protection law, as well as laws governing breach of express and implied warranty of California, Florida, Illinois, New York, Ohio, Pennsylvania, and Texas Classes where Plaintiffs reside.

## THE PARTIES

11.    Plaintiff Philip Camacho is a resident and citizen of Chatsworth, California. He has resided in California since on or about August 2023.

12.    Plaintiff Marc Schaefer is a resident and citizen of San Diego, California. At all times relevant hereto, he has resided in California.

13.    Plaintiff Jeffrey Nykerk is a resident and citizen of Jacksonville, Florida. At all times relevant hereto, he has resided in Florida.

14.    Plaintiff David Ambrozic is a resident and citizen of Chicago, Illinois. At all times relevant hereto, he has resided in Illinois.

15.    Plaintiff Jerry Mitchell Adair is a resident and citizen of Queens, New York. At all times relevant hereto, he has resided in New York.

16.    Plaintiff Daniel Kadyrov is a resident and citizen of Manhattan, New York. At all times relevant hereto, he has resided in New York.

17.    Plaintiff Stacey Rodgers is a resident and citizen of Painesville, Ohio. At all times relevant hereto, she has resided in Ohio.

18.    Plaintiff Lindsey LaBella is a resident and citizen of Allegheny County, Pennsylvania. At all times relevant hereto, she has resided in Pennsylvania.

19.    Plaintiff Michael Pawson is a resident and citizen of Harris County, Texas in the Houston metro area. At all times relevant hereto, he has resided in Texas.

20.    Defendant Apple Inc. is a corporation incorporated under the laws of the State of California. Apple's corporate headquarters and principal place of business are located in Cupertino (Santa Clara County), California. Accordingly, for jurisdictional purposes, Defendant Apple Inc. is a citizen of California.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs; there are more than 100 putative class members; and at least one putative class member is from a state different from Apple.

22.    This Court has personal jurisdiction over Apple because it is incorporated under the laws of the State of California; its corporate headquarters and principal place of business are located in Cupertino (Santa Clara County), California; it conducts substantial business in this District; and a substantial part of the acts and omissions complained of occurred in this District.

23.    Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District. Apple has its principal place of business in this District; it is authorized to conduct business in this District; it has intentionally availed itself of the laws and markets within this District; it does substantial business in this District; and it is subject to personal jurisdiction in this District.

## COMMON CLASS ALLEGATIONS

### A.    Apple Touted the Audio Quality of Its AirPods Pro Gen 1

24.    Apple announced its AirPods Pro Gen 1 on October 28, 2019, and released them on October 30, 2019. Apple continued to sell AirPods Pro Gen 1 until September 7, 2022.

25.    From its first press release announcing AirPods Pro Gen 1, on October 28, 2019, Apple touted the first generation AirPods Pro Gen 1's noise cancelling features, superior, clear sound, and high audio quality.[1] Apple also highlighted that the design of the first generation AirPods Pro Gen 1 had superior audio capabilities compared to other headphones by providing a "superior noise-canceling

---

[1]    Apple AirPods Pro Gen 1 Press Release, posted October 28, 2019, available here: https://perma.cc/3G3B-B4TV (last visited Oct. 1, 2024).

experience," through the combination of two microphones and "advanced software" that was supposed to remove unwanted background noise.[2]

26.    An advertisement also released on October 28, 2019 similarly emphasized Apple's AirPods Pro Gen 1 audio capabilities—claiming that the AirPods Pro Gen 1 offered consumers "superior sound quality" with "pure, incredibly clear sound" that "cuts out the noise" for an "immersive noise-canceling experience," and overall "rich, immersive listening experience."[3] Apple further promised a superior audio experience compared to its competition—representing that the AirPods Pro Gen 1 were "the only in-ear headphones with Active Noise Cancellation that continuously adapts to the geometry of your ear and the fit of your ear tips – blocking out the world so you can focus on what you are listening to."[4] In promoting its Transparency mode, which is still supposed to cancel "internal" noise with an inward facing microphone, Apple claimed that its AirPods Pro "let[] outside sound in, and allow[ed] things to sound and feel natural when you're talking to people nearby."[5] In other words, Apple promised that both modes would block unwanted sound produced internally, externally or both, and produce clear, high quality sound for their users.

27.    Apple also released numerous television commercial advertisements that sought to promote the noise cancelling features of the AirPods Pro Gen 1. For example, in one such commercial, a woman can be seen walking along a busy city street, with the constant buzz of people, cars, and other noises in the background until she activates the noise cancellation features of her AirPods Pro Gen 1, at which point she is depicted as though she is dancing down a deserted street, with no background noise at

---

[2] *Id.*

[3] *Id.*

[4] Apple AirPods Pro Gen 1 web advertisement, posted October 28, 2019, available here: https://perma.cc/SQG3-PZCU (last visited Oct. 1, 2024).

[5] Apple AirPods Pro Gen 1 web advertisement, posted October 28, 2019, available here: https://perma.cc/SQG3-PZCU (last visited Oct. 1, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT, 5:24-cv-07588-EKL

1   all.[6] Similar ads were run showing other individuals in busy streets, who began dancing as soon as they

2   turned on their AirPods Pro Gen 1 and were able to eliminate background street noise.[7]

3      28.   Immediately following Apple's announcement of the first generation AirPods Pro Gen 1

4   and beginning on or about October 28, 2019, Apple continued to make these consistent representations

5   in print ads, television ads, on shelves at point of sale, on its website, and on third-party websites like

6   BestBuy,[8] Target,[9] and Amazon[10] until at least September 7, 2022—when Apple announced AirPods

7   Pro Gen 1's successor, the second generation of AirPods Pro[11].

8      29.   Apple's retailers, like Target, Amazon, and BestBuy, displayed language at the point of

9   sale and on its own websites[12] that was provided by Apple and in material respects identical to the

10   language advertising AirPods Pro Gen 1 on Apple's website. For example, Apple instructed its retailers

11   to advertise the AirPods Pro Gen 1 as capable of providing "active noise cancellation for immersive

12   sound," and that it had "transparency mode for hearing what's happening around you."[13]

13

14

15

---

16   [6] Apple: AirPods Pro Snap; https://www.youtube.com/watch?v=DpcXUXtZ4CU (posted Apr. 3, 2020) (last visited Oct. 4, 2024).

17   [7]*See, e.g.*, Apple AirPods Pro TV Spot, 'Jump' Song by Young Franco, available here: https://www.ispot.tv/ad/OVi_/apple-AirPods-pro-jump-song-by-young-franco (posted Mar. 14, 2021)
18   (last visited Oct. 4, 2024); AirPods Pro Commercial, available here: https://www.youtube.com/watch?v=C4AOtoidPPk (posted Mar. 5, 2023) (last visited Oct. 4, 2024).

19   [8] *See BestBuy's website*: "Active noise cancellation for immersive sound" and "Transparency mode for hearing and connecting with the world around you," as of November 4, 2019, available here:
20   https://perma.cc/28NK-35NK.

21   [9] *Target's website*: "Active noise cancellation for immersive sound" and "Transparency mode for hearing and connecting with the world around you," as of March 5, 2020, available here: https://perma.cc/A2NV-
22   A7R8.

23   [10] *See, e.g.*, *Amazon's website*: "Active Noise Cancellation blocks outside noise, so you can immerse yourself in music" and "Transparency mode for hearing and interacting with the world around you," as of
24   February 4, 2022, available here: https://perma.cc/W2KF-723V; *see also Amazon's website* at https://perma.cc/L8XA-Q37T (last visited October 25, 2024).

25   [11] "Apple announces the next generation of AirPods Pro," available here: https://perma.cc/83YC-LACV
26   (posted Sept. 7, 2022) (last visited Oct. 4, 2024).

27   [12] Apple AirPods Pro Gen 1 web advertisement, posted October 28, 2019, available here: https://perma.cc/SQG3-PZCU (last visited Oct. 1, 2024); *see also supra* n. 8 (Best Buy), n. 9 (Target), n.
   10 (Amazon).

28   [13] Apple AirPods Pro Gen 1 Press Release, posted October 28, 2019, available here: https://perma.cc/3G3B-B4TV (last visited Oct. 1, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT, 5:24-cv-07588-EKL

30.     At the same time that Apple represented that its AirPods Pro Gen 1 headphones had high quality sound, Apple never disclosed that the AirPods Pro Gen 1 had a sound defect such that they could experience crackling or static sounds, loss of bass sounds, or an increase in background sounds—except for on an obscure support page that understated the defect, and that had to be actively found through research by consumers. Even worse, the support page and Apple's Service Program (i) minimized the Audio Defect and its true extent by understating the number of affected units, and (ii) gave consumers the run-around as Apple replaced their defective headphones with more headphones containing the same hidden Audio Defect. First, with its unpublicized Service Program, Apple affirmatively misled those consumers who somehow discovered or accessed the Service Program into the false belief that Apple would fix the problem or that their headphones did not contain the Audio Defect identified. Second, for other consumers who did not fall within the Service Program's arbitrary time cut-off, Apple misled consumers into the false belief that there was not an actual Audio Defect with their headphones and that Apple was not aware of one.

**B.     Apple Admits That AirPods Pro Gen 1 Had an Audio Defect**

31.     Although Apple promised that its AirPods Pro Gen 1 had superior audio quality and noise cancelling features, in October 2020, on an obscure support page buried online, Apple admitted that its AirPods Pro Gen 1 headphones contained an Audio Defect associated with "sound issues," including crackling, static, and interruption and loss of sound.[14]

32.     Specifically, Apple admitted that "AirPods Pro may experience sound issues" where AirPods Pro "may exhibit one or more of the following behaviors:

- Crackling or static sounds that increase in loud environments, with exercise or while talking on the phone;
- Active Noise Cancellation not working as expected, such as a loss of bass sound, or an increase in background sounds, such as street or airplane noise."

33.     Apple first admitted to these sound issues when it published a support page, "AirPods Pro Service Program for Sound Issues"—stating that it would replace earbuds manufactured before October 2020 with a confirmed issue, if a user succeeded in following Apple's process for obtaining a

---

[14] "AirPods Pro Service Program for Sound Issues," posted Oct. 30, 2020, available here: https://perma.cc/KXJ3-GGTH (information available as of Sep. 1, 2021) (last visited Oct. 7, 2024).

replacement. The problem for Apple is that the replacement set of AirPods Pro Gen 1 contained the same Audio Defect. In other words, those users simply received another defective set of AirPods Pro Gen 1, worth less than consumers paid for them, with many users later experiencing the Audio Defect with the defective replacement set as well.[15]

34.     When Apple originally launched its Service Program on October 30, 2020, the "program cover[ed] affected AirPods Pro for 2 years after the first retail sale of the unit[,]" with Apple specifically agreeing to replace affected earbuds until October 31, 2021. Then, just two weeks shy of this 2-year mark, Apple updated its Service Program to "cover[] affected AirPods Pro [*i.e.* those made before October 30, 2020] for 3 years after the first retail sale of unit[,]" in other words, for an additional year, through October 31, 2022.[16]

35.     While Apple buried this admission on a support page that users would have had to search out and pursue, Apple never made any effort to notify AirPods Pro Gen 1 purchasers, and entirely omitted the Audio Defect at the point of sale—leading reasonable consumers to believe that the high-end expensive headphones they purchased would not experience crackling or static sounds, loss of bass sounds, or an increase in background sounds. For example, Apple never pushed out this Service Program to its users through their cell phones, website accounts, or other apps, which it could have done. Instead, it continued to sell AirPods Pro Gen 1 headphones to unwary consumers who could not have reasonably known that the high end, expensive headphones that they were buying could experience crackling or static sounds, loss of bass sounds, or an increase in background sounds.

**C.     The Audio Defect Inherent in AirPods Pro Gen 1 Persisted after October 2020**

36.     Further hiding the Audio Defect it knew about from consumers, on its obscure support page, Apple understates the extent of the defect by only admitting to the Audio Defect in units

---

[15] *See, e.g.*, "Apple Quietly Extends AirPods Pro Repair Program That Addresses Crackling/Static." MacRumors.com News Discussion Board containing multiple posts about replacement AirPods experiencing same crackling issues, available here: https://perma.cc/M9KK-LYQ9/ (posted Oct. 13, 2021) (last visited Oct. 7, 2024).

[16] *Compare* "AirPods Pro Service Program for Sound Issues," posted Oct. 30, 2020, available here: https://perma.cc/KXJ3-GGTH (information available as of Sep. 1, 2021) (last visited Oct. 7, 2024) *with* Exhibit 1.

manufactured before October 2020. Plaintiffs' investigation, however, confirms that all AirPods Pro Gen 1 have the Audio Defect—regardless of manufacture date.

37.    A microscopic examination of AirPods Pro Gen 1 sold before and after October 2020 reveals that there are no significant component differences between AirPods Pro Gen 1 before and after October 2020. *See*, *e.g.*, Exhibit 2 (Appendix A, B, C (depicting microscopic comparisons showing same material components)). Such an examination could not reasonably be conducted by consumers with no expertise in the components of headphones to discover the Audio Defect hidden by Apple.

38.    A general schematic of the material components of all AirPods Pro Gen 1 appears as follows:



39.    Plaintiffs' investigation, which required consultation from an expert and could not have reasonably been discovered by the average consumer, further reveals that, while Apple briefly experimented with a possible quick fix—by replacing the MEMs microphones after the October 2020

date before reverting to the original MEMs microphones—Apple's attempt at a quick fix had no impact on the Audio Defect.[17]

40.    Plaintiffs' investigation corroborates that all AirPods Pro Gen 1 have the same material components and same Audio Defect regardless of manufacture date. For instance, Plaintiffs' investigation shows that multiple units sold after October 2020 manifested the Audio Defect and failed Apple' sound test—thus corroborating user complaints and suggesting that *all* AirPods Pro Gen 1 contain an Audio Defect regardless of whether they were manufactured before or after October 2020.

41.    The fact that the Audio Defect persisted in units after October 2020 is thus corroborated by (*inter alia*) (i) the fact that the major component parts did not change (save a nonmaterial, temporary switch of the MEMs microphone that made no difference); (ii) the consistent failures of Apple's sound test for units manufactured after October 2020, including those documented as part of Plaintiffs' investigation; (iii) the continued reports by users experiencing the same sound issues well after the October 2020 date identified by Apple (*see infra* § E); and (iv) the redesign of all audio component parts in the second generation of AirPods Pro (*see infra* § D).

42.    Accordingly, although Apple failed to acknowledge the defect in post-October 2020 devices—while continuing to sell its AirPods Pro Gen 1 at the same time, and for the same price as it was developing its second generation of AirPods Pro in an attempt to address AirPods Pro Gen 1's inherent Audio Defect—AirPods Pro Gen 1 headphones sold after October 2020 still contained the Audio Defect.

---

[17] Plaintiffs' investigation suggests that Apple predominately utilized the Goertek model GWM1 microphone post October 2020 but experimented with a microphone that had a different frequency response and/or different SNR ("Sound to Noise Ratio") to see if there might be an easy fix for the problems with AirPods Pro Gen 1's noise cancelling features before reverting to the originally used Goertek model GWM1 microphone. For example, Appendix D (*see* Ex. 2), depicts microphotos of the MEMS microphone models used in four disassembled AirPods Pro Gen 1s sold after October 2020, which shows that Apple utilized the Goertek model GWM1 microphone in all but one of the 4 disassembled devices. During disassembly and microphotographic examination of these units, the other major components were observed to have no visual differences from the pre-October 2020 models of the AirPods Pro Gen 1. *See* Exhibit 2 (Appendix B (comparing microphones in four defective samples sold between November 2020 and February 2022)). As shown by the continued failure of devices after the October 2020 time frame discussed herein, Apple's attempt at a "quick fix" by switching the MEMS microphone did not materially improve the Audio Defect.

43.    The AirPods Pro Gen 1 were thus not worth the premium price that consumers paid for them—as they contained a hidden Audio Defect and thus could experience crackling or static sounds, loss of bass sounds, or an increase in background sounds.

**D.    The Audio Defect Inherent in AirPods Pro Gen 1 Precipitated the Development of the AirPods Pro Gen 2**

44.    Although there are no significant changes in the material components among all AirPods Pro Gen 1 headphones, microscopic examination confirms that the material audio components were redesigned in the AirPods Pro Gen 2 units released to replace Apple's AirPods Pro Gen 1. Specifically, the DSP processor, the rear facing microphone, and the error microphone were all redesigned. *See* Exhibit 2 (Appendix E).[18]

45.    In particular, Apple appears to have attempted to solve the AirPods Pro Gen 1's Audio Defect in the redesign of AirPods Pro Gen 2 by (i) increasing the processing speed of the DSP processor (responsible for noise cancelling or decreasing background ambient noise), and by, at some point during its sale of AirPods Pro Gen 2 (ii) redesigning the speakers to add angular striations along its periphery to improve low frequency (base tone) response.

46.    Apple developed AirPods Pro Gen 2 with increased processing speed because the noise cancelling circuitry of the DSP processor in the AirPods Pro Gen 1 was too slow to reject abrupt noises and may have created white noise.

47.    In that regard, although Apple claimed on its website that its AirPods Pro Gen 1 models had noise cancelling adjusted at 200 times per second, Apple touts its AirPods Pro Gen 2 models as having an improved processor chip called the H2 which facilitated "2x more Active Noise Cancellation."[19]

48.    In other words, because the speed of the DSP processor likely contributed to the Audio Defect in the AirPods Pro Gen 1, Apple seems to have decided to develop a significantly faster DSP processor in the AirPods Pro Gen 2. Apple's apparent awareness that the DSP processing speed

---

[18] The MEMS speaker is also different from any MEMS speaker used in AirPods Pro Gen 1—likely a change to accommodate AirPods Pro Gen 2's faster DSP processing speed.

[19] https://perma.cc/9MXY-L4M4 (last visited Oct. 4, 2024); *see also* https://perma.cc/34YP-5W6E (last visited Oct. 23, 2024); https://perma.cc/LHG6-CT5F (last visited Oct. 23, 2024).

contributed to the Audio Defect in AirPods Pro Gen 1 is further corroborated by its telling instruction to third parties to disable ANC functionality in AirPods Pro Gen 1 when encountering noise issues.

49.     If a DSP processor is too slow, as it was in the AirPods Pro Gen 1, it can generate white noise as it attempts to cancel out background noise, which gets amplified by AirPods Pro Gen 1's "error microphone."[20]  The result is "white noise"[21] and/or "feedback noise."[22]

50.     Additionally, to attempt to fix the problem with feedback, Apple also added angular striations around the periphery of the AirPods Pro Gen 2 speaker diaphragm to improve low frequency base tone response—as the largest vibration excursions in speaker diaphragms are caused by the lowest frequency base tones.

51.     In short, rather than attempt fix the problem with AirPods Pro Gen 1, Apple abandoned AirPods Pro Gen 1 and the sound issues it knew the headphones had, but could not figure how to solve by, instead, experimenting with improvements aimed at fixing the problem in a new generation.

---

[20] SoundSightr, "5 Reasons Why Active Noise Cancelling is Bad (Read This Before Buying)," posted Mar. 26, 2022, available here: https://perma.cc/LHG6-CT5F (last visited Oct. 4, 2024).

[21] White noise is generated by the ANC circuitry and multiple microphones on the outside and inside of the headphones in their effort to cancel a wide range or frequency sounds out. Due to the slower DSP processing AirPods Pro Gen 1, and the unpredictable and changing nature of ambient noise, the ANC circuity could not reproduce a cancelling anti-noise in time causing white noise. *See* SoundSight Journal, "5 Reasons Why Active Noise Cancelling is Bad (Read This Before Buying)," March 26, 2022 (available here: https://perma.cc/LHG6-CT5F (last visited Oct. 4, 2024)) ("Noise-cancelling can generate white noise. Hybrid ANC headsets have a problem called 'white noise,' which is the combination of all audible frequencies equally. This is not a loud high-pitched sound, but a noise generated by the ANC circuitry and multiple microphones on the outside and inside in their effort to cancel a wide range of frequencies.")

[22] Feedback noise is also generated by the additional "error microphone" that is in front of AirPods Pro Gen 1's speaker to give the DSP processor a second chance to detect an error in its first pass at cancelling ambient noise—this speaker may perceive some parts of music or voice audio as ambient noise and attempt to attenuate the sound that belong to the music—resulting in an audible noise that the microphone and DSP processor try and cancel out again in a feedback loop. *See* SoundSightr Journal, "5 Reasons Why Active Noise Cancelling is Bad (Read This Before Buying)," March 26, 2022 (available here: https://perma.cc/LHG6-CT5F (last visited Oct. 4, 2024)) ("Feedback noise—Recursive capture of noise by an internal microphone. Feedback noise is present in headphones with Feedback and Hybrid technologies. Unlike Feedforward headphones, these two types of headphones have an additional internal microphone in front of the speakers to pick up sounds behind the ear cups. Because of these design flaws, some parts of your music may be perceived as noise, which interferes with the user's listening experience.").

**E.**    **Apple Has Long Been Aware of Consumers' Complaints About the Audio Defect**

52.    Plaintiffs' experiences with sound issues in the AirPods Pro Gen 1 headphones are by no means isolated occurrences. Since soon after the release of AirPods Pro Gen 1 in October 2019, owners of AirPods Pro Gen 1 have complained on Apple's own website regarding the Audio Defect. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Audio Defect with their AirPods Pro Gen 1, irrespective of whether they were manufactured before or after Apple's arbitrary October 2020 cutoff.

53.    The following are just a few examples of the numerous user complaints reporting the sound issues Apple itself has acknowledged:

- "The left AirPod makes a loud static wind-like sound whenever I use the passthrough mode or the noise cancelling mode . . . I tried re-pairing it. I tried a different iPhone. Im on the latest iOS. Nothing got it working." (posted October 30, 2019).[23]

- "…. [Apple] agreed to replace one of the AirPods (the one making the noise) but insisted that if it happens again, that's 'normal behaviour.'" (response posted January 10, 2020).[24]

- "In my left AirPod while I had the Noise cancelling or Transparency mode on I hear a crackling noise. They are only a couple weeks old. When I play audio there is static noise I hear also when people are speaking." (posted April 20, 2020).[25]

- My right AirPods Pro has recently started making this noise where it kind of sounds like someones blowing on a microphone in transparency or noise cancelling mode. I've tried resetting them but this did nothing to fix them. The sound happens at all times whether I have music playing or not. If anyone could help it would be very appreciated. (posted January 18, 2021).[26]

---

[23] "Broken AirPods pro. Static noise." Reddit thread available here: https://perma.cc/UYZ3-DX89 (posted Oct. 30, 2019) (last visited Oct. 7, 2024).

[24] "Broken AirPods pro. Static noise." Reddit thread available here: https://perma.cc/UYZ3-DX89 (posted Oct. 30, 2019) (response posted Jan. 10, 2020) (last visited Oct. 7, 2024).

[25] "AirPod Pros Crackling while in Noise cancelling and Transparency mode?" Apple Discussion Board available here: https://perma.cc/T4QM-7GVH  (posted Apr. 20, 2020) (last visited Oct. 7, 2024).

[26] "AirPod crackling noise." Reddit thread available here: https://perma.cc/4T3T-ZCUK (posted Jan. 18, 2021) (last visited Oct. 7, 2024)

54.      Based upon these consumer complaints, many of which were made directly to Apple, including on its own website, Apple had knowledge of, or should have had knowledge of, the Audio Defect in the AirPods Pro Gen 1 by the end of October 2019, if not earlier, but in all events long before Apple admitted the sound issues with its AirPods Pro Gen 1 in October 2020 in connection with its so-called Service Program.

55.      In fact, in May 2020, Apple posted support documents on its website for troubleshooting audio issues and had in some instances replaced defective earbuds, albeit with another Apple AirPods Pro Gen 1 earbud that contained the same inherent Audio Defect Apple later admitted was known to cause sound issues. These two actions show that Apple was aware of the Audio Defect, but continued to market and sell first generation AirPods Pro as if they were not defective.[27]

56.      Later, in October 2020, Apple admitted on a support page that its AirPods Pros Gen 1 contained an Audio Defect associated with crackling, static, and interruption and loss of sound and claimed that the company would replace qualifying earbuds.[28] Those replacements, however, had the exact same Audio Defect that all Apple AirPods Pro Gen 1 have—including those manufactured after October 2020 when Apple admitted the defect.[29]

57.      Indeed, consumer complaints continued with respect to AirPods Pro Gen 1 units sold after October 2020 and continue to be posted directly to Apple's website to this day. For example, on Apple's Community forum, one user posted that Apple had identified the sound issue in her device but told her she did not qualify for replacement based on the date her device was manufactured:

> Recently my AirPods Pro starting having crackling noises with noise cancellation mode and relatively loud surrounding noises. After reading online that it's a known issue for those manufactured prior to October 2020, I took them to the Apple store. A sound test was performed, and they both failed. Was informed that my AirPods are doing the same thing,

---

[27] *See* Apple Support Page, "AirPods Pro Service Program for Sound Issues," published October 30, 2020; available through the Wayback Machine here: https://perma.cc/KXJ3-GGTH (last visited September 3, 2024).

[28] "AirPods Pro Service Program for Sound Issues." ("Information as of 2020-10-30"). https://perma.cc/KXJ3-GGTH (last visited Oct. 7, 2024).

[29] "Apple Quietly Extends AirPods Pro Repair Program That Addresses Crackling/Static." MacRumors.com News Discussion Board containing multiple posts about replacement AirPods experiencing same crackling issues, available here: https://perma.cc/M9KK-LYQ9/ (posted Oct. 13, 2021) (last visited Oct. 7, 2024).

but they were manufactured about one month after October 2020. This has been extremely frustrating given that they are doing the same thing, but they were manufactured outside the "recognized timeframe".

Thoughts on next steps? We have been loyal Apple customers for decades, but we will not purchase anymore products unless this gets resolved. Thanks in advance for any assistance. (Posted May 11, 2022).[30]

58.     Other users similarly complained, on Apple's website and on other forums, that Apple AirPods Pro Gen 1 manifested the sound issues caused by the Audio Defect even though manufactured after October 2020:

- "My 1st Gen AirPod Pros have the exact same issue as the Service Program describes. However, when I talked with Apple Support they said that since mine were made in Q1 2021 they're not eligible for replacement.  It definitely seems like the manufacturing problem went past October 2020, but Apple is insistent that the problem was fixed (even though myself and others I've seen here and on Reddit with post Oct 2020 units are having the same issue)." (posted October 4, 2022).[31]

- "Hey everyone, I'm having issues with my gen 1 AirPods Pro. They are the textbook definition of the hardware defect covered by Apple's 'AirPods Pro Service Program for Sound Issues'. They have a crackle/static noise that is constant when in transparency or noise cancelation mode and I've tried every 'fix.' Today, after multiple support tickets I had someone finally confirm that my AirPods were manufactured over a year after the 8/20 [sic] cutoff for the extended warranty program. Is there any way at all that I can get my AirPods fixed/replaced under warranty? I have heard, and was confirmed by Apple support, that people are still experiencing this hardware defect past Apples cutoff date. I really do not want to give any more money to Apple to fix or replace these AirPods as I've had a horrible experience with factory hardware defects on Apple devices this year, so if there's anything else I can do please let me know. ps. Apple, you REALLY need to review your program for gen 1 AirPods

---

[30] "AirPod Pros crackling noise." Apple Discussion Board available here: https://perma.cc/3RYU-Q2KH (posted May 11, 2022) (last viewed Oct. 4, 2024).

[31] "AirPods Pro Service Program - beyond Oct 2020." Apple Discussion Board available here: https://perma.cc/D6PG-KG4B (posted Oct. 4, 2022) (last viewed Oct. 4, 2024).

Pro as they obviously had manufacture defects past October of 2020." (posted June 12, 2023).[32]

- "My Gen 1 AirPods Pros have the dreaded crackling sound in the right earbud when I move around. I saw the Apple support page about replacements for this issue and made an Apple Store appointment. They did diagnostics and said that the right earbud failed. However, I guess I don't qualify for the program since my AirPods were manufactured in 2021 (limit is Oct 2020). Also, my warranty recently expired. My only option was to buy a replacement earbud for $89. They told me to call apple support and see if they could do something different. But the support line told me the same thing. Welp that sucks. I hope they expand the service program at some point. No way I'm buying AirPods Pro Gen 2, heard those are facing the same issue. Guess I'm just venting here, but does anyone have a recommendation for what I should do? The crackling sound is mildly infuriating while running." (posted November 10, 2022)[33]

- "One of my AirPods has started cracking/having static with any sound/movement. I know this is a known issue in AirPods produced before October 2020 and those are eligible for replacement. Mine were manufactured March 2021 and I bought them October 2021 and I would say they've been treated lightly in that time but is nearly unusable after only 1.5 years which seems ridiculous. Apple "genius" could only offer replacement for $90. Wondering if anyone else had experienced this or if I should have only expected them to last less than 2 years… thanks!" (posted March 27, 2023).[34]

- "I have the same issue. Went to Apple they checked them and found out both AirPods have their mistake which makes this crackling, told me they can't fix them bc the manufacturing

---

[32] "AirPods pro gen 1 extended warranty." Apple Discussion Board available here: https://perma.cc/C97W-SES8 (posted Jun. 12, 2023) (last visited on Oct. 4, 2024).

[33] " AirPods Pro (Gen 1) Crackling Issue In Right Earbud - Apple Will Not Replace." Reddit thread available here: https://perma.cc/2GZW-NE35 (posted Nov. 10, 2022) (last visited Oct. 4, 2024).

[34] "Crackling in AirPods made after October 2020." Reddit thread available here: https://perma.cc/GTU7-LQE7 (posted Mar. 27, 2023) (last visited Oct. 4, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT, 5:24-cv-07588-EKL

date is a week off from their "recall" even though the same issue is present." (posted April 1, 2023).[35]

- "Yes. My son's had this exact problem and were manufactured after the cutoff. It's complete BS that the crackling issue was fixed. I got the same story from the Apple Store associate. I love the AirPod Pros, but it's clear there was a design flaw well beyond the date acknowledged by Apple. Usually Apple backs their products, but this was a case where they really let me down." (posted March 27, 2023).[36]

59.    Notwithstanding the above, Apple has not broadened its (albeit ineffective) Service Program to cover units manufactured after October 2020 even though, *inter alia*, (a) users continued to report on Apple's discussion boards into 2024 the same Audio Defect with AirPods Pro Gen 1 manufactured after October 2020;[37] (b) Apple representatives are continuing to perform sound tests at Apple stores and to confirm that such AirPods Pro Gen 1 have the Audio Defect;[38] (c) Apple itself acknowledged on a Support Page as recently as March 2024 that users of AirPods Pro Gen 1 may *still* be experiencing the crackling or static sounds.[39]

60.    Despite users' complaints on Apple's website, Apple has also not extended its Service Program to apply to consumers whose AirPods Pro Gen 1s were manufactured prior to October 2020, but for whom the Audio Defect manifested after the 3-year period. For example, this user—in response to dozens of other users complaining that their AirPods Pro Gen 1s manufactured after October 2020 failed and Apple refused to replace them—complained:

---

[35] "Crackling in AirPods made after October 2020." Reddit thread available here: https://perma.cc/GTU7-LQE7 (response posted Apr. 1, 2023; edited Apr. 3, 2023) (last visited Oct. 4, 2024).

[36] "Crackling in AirPods made after October 2020." Reddit thread available here: https://perma.cc/GTU7-LQE7 (response posted Mar. 27, 2023) (last visited Oct. 4, 2024).

[37] "My AirPods Pro (1st generation) make crackling, buzzing or static sounds." Apple Discussion Board available here: https://perma.cc/T5AB-8G2G (posted Aug. 25, 2023, most recent post Jul. 30, 2024) (last visited Oct. 4, 2024).

[38] *See supra*, ¶92, ¶94, ¶107, ¶109, ¶¶110-111, ¶125, ¶139, ¶154, ¶157, ¶170, ¶¶179-180, ¶189 and ¶205 (Plaintiff Factual Allegations: Camacho – testing August 2022, November 2024; Schaefer – June 2021, April 2023, October 2024; Nykerk – December 2024; Ambrozic – February 2023; Adair – November 2022, November 2024; Kadyrov – December 2024; Rodgers – November 2023; LaBella – May 2024; Pawson – December 2023).

[39] "If your AirPods Pro (1st generation) make crackling or static sounds." Apple Support page available here: https://perma.cc/7GYK-FZU7 (posted Mar. 1, 2024) (last visited Oct. 4, 2024).

I go and am told yes the left one is broken, the right one also failed. My serial number IS in the recall, but it was passed the 3 years. It has been broken for more than a year, but I just put them away because I had no idea about the recall. You want to tell me apple doesn't know how to send out a message to let us know??? (posted July 30, 2024).[40]

61.     Indeed, although Apple knew shortly after launch that its AirPods Pro contained an Audio Defect, Apple elected to omit this from its continued advertisements and promotional materials, while affirmatively misrepresenting the benefits and superior sound quality of the AirPods Pro, including their noise cancelling features.

62.     Even following Apple's own admission that its AirPods Pro Gen 1 suffered from an Audio Defect, Apple failed to notify consumers who had purchased the admittedly defective headphones. Rather than notify purchasers through the same channels where it was affirmatively advertising its misrepresentations of the benefits and superior sound quality of the AirPods Pro Gen 1, including their noise cancelling features, or pushing out information on its Support app linked to the devices,[41] Apple merely posted a browser support page on its website in October 2020, which users would not find unless they looked for it specifically.[42]

63.     Apple's conduct in this respect constituted active and intentional concealment and minimization of the Audio Defect, which was material to Plaintiffs' and Class Members' decision to

---

[40] "My AirPods Pro (1st generation) make crackling, buzzing or static sounds." Apple Discussion Board available here: https://perma.cc/T5AB-8G2G (Discussion Board posted Aug. 25, 2023) (response posted Jul. 30, 2024) (last visited Oct. 7, 2024).

[41] Through Apple's "Support App" which users could access from their Apple iPhone, iPad, and computer, users could view support information for each of their paired Apple devices. For example, by clicking on their "AirPods Pro" device from the Support app, users could see information about their AirPods Pro Gen 1 "Audio & Sound," "Lost or Missing AirPods," "Pairing & Connectivity," the model, serial number, and "Coverage Info." Although users were able to retrieve an abundance of information about their devices from Apple's Support app, Apple never notified its users through the Support app or otherwise that it had identified an Audio Defect that caused the AirPods Pro Gen 1 to produce static sound and poor-quality audio or that it had implemented a Service Program (albeit ineffective) regarding the Audio Defect.

[42] Notably, Apple also did not announce the 1-year extension of its Service Program, but merely updated the text on its support page stating that "[t]he program covers affected AirPods Pro for 3 years after the first retail sale of the unit[,]" whereas previously it stated the program lasted for 2 years. *See, e.g.*, "PSA: Apple silently extended the AirPods Pro Service Program for an additional year, now covering AirPods that crackle for 3 years in total after first sale." Reddit thread available here: https://perma.cc/852E-CKE7 (posted Oct. 13, 2021) (last visited Oct. 7, 2024); *see* "AirPods Pro Service Program for Sound Issues," posted Oct. 30, 2020, available here: https://perma.cc/KXJ3-GGTH (information available as of Oct. 30, 2020) (last visited Oct. 7, 2024).

purchase their AirPods Pros and had the effect of discouraging and delaying Plaintiffs and Class Members from pursuing the relief sought herein.

64.    As a result of Apple's active concealment of the Audio Defect and/or failure to inform Plaintiffs and Class Members of the same, any delay on the part of Plaintiffs and Class Members in filing their causes of action cannot reasonably be attributable to lack of diligence on their part.

**F.    Reasonable Consumers Could Not Have Discovered the Hidden Sound Defect in Apple Airpods Gen 1**

65.    Although Apple knew of the hidden Audio Defect, Plaintiffs could not have reasonably discovered it. Apple omitted any mention of the Audio Defect in all of its advertising and at the point of sale.

66.    Although Plaintiffs and class members experienced sound issues with their particular headphones, and sometimes were able to obtain replacements with the same hidden Audio Defect, they could not have reasonably known that the defect was fundamental to Apple's AirPods Pro Gen 1.

67.    The inherent defect in AirPods Pro Gen 1 could not have been discovered by Plaintiffs simply because their individual headphones began to malfunction. Indeed, it took several months of investigation, and microscopic inspection of several units of the headphones to determine that the defect was inherent to all of the AirPods Pro Gen 1 headphones—and not just an isolated occurrence with an individual's particular headphones. As such, Plaintiffs claims in this action did not begin to accrue until the completion of the analysis conducted in connection with the filling of the operative complaint in this action on November 1, 2024.

68.    Apple's obscure support page referencing sound issues, and corresponding Service Program that replaced defective earbuds made before 2020 with more defective earbuds until the end of the program was not sufficient for Plaintiffs to have discovered their claims in this action. Apple's support page and the Service Program described would not have led to the discovery of Plaintiffs' claims because, among other things: (i) for consumers with AirPods Pro Gen 1 that fell within the arbitrarily set cut-off date, the Service Program misled them to believe that Apple would fix the problem when, in fact, Apple just replaced defective headphones with equally defective headphones containing an inherent defect; and (ii) for consumers with AirPods Pro Gen 1 headphones manufactured after October 2020, Apple led

consumers to believe that their devices did not have sound issues. Additionally, even if the support page or the Service Program described therein had been sufficient to provide notice of the defect (which it was not), the support page describing the Service Program was not sufficiently publicized. Apple's failure to publicize the defect and the Service Program included (*inter alia*): (a) the support page was not displayed or referenced at the point of purchase; (b) no information was pushed out to Apple accounts connected to the headphones referencing the support page or the known Audio Defect notwithstanding Apple's capabilities to do so; (c) Apple's settings routinely misrepresented to consumers that Apple would not cover service of their defective AirPods Pro Gen 1s even in instances where the Service Program by Apple's own language should have been available; and (d) the support page itself grossly understated the number of effected units (limiting covered units to those made before October 2020).

69.    Apple's conduct in this respect constituted active and intentional concealment and minimization of the Audio Defect, which was material to Plaintiffs' and Class Members' decision to purchase their AirPods Pro Gen 1s and had the effect of discouraging and delaying Plaintiffs and Class Members from pursuing the relief sought herein.

70.    Because Apple fraudulently concealed the defects from Plaintiffs, they did not suspect (and had no reason to suspect) that there was anything inherently defective about the AirPods Pro Gen 1 product or that Apple had committed a wrongdoing.

71.    As a result of Apple's active concealment of the Audio Defect and/or failure to inform Plaintiffs and Class Members of the same, any delay on the part of Plaintiffs and Class Members in filing their cause of action cannot reasonably be attributed to a lack of diligence on their part.

**G.    Apple's Support Program Does Not Remedy the Harm Caused by Apple's Sale of AirPods Pro Gen 1 With a Hidden Defect**

72.    Even though *all* AirPods Pro Gen 1 experience sound issues, Apple's Support Program only applies to headphones manufactured before October 2020. Thus, even Apple's Support Program was inaccessible to many purchasers of Apple's AirPods Pro Gen 1 headphones.

73.    Furthermore, when consumers who purchased headphones made before October 2020 did attempt to take advantage of Apple's one-year warranty and return the AirPods Pro Gen 1 earbud for a new one, Apple provided replacement AirPods Pro Gen 1s that contained the exact same hidden Audio

1   Defect. Accordingly, many consumers, including Plaintiffs, have been through several pairs of AirPods

2   Pro Gen 1 only to experience the same defect each time. Consumers are therefore caught in a vicious

3   cycle: use, malfunction, replacement, repeat. And after the Service Program has expired, even those

4   arbitrarily few consumers who learned about and were able to access it are left with a broken pair of

5   AirPods Pro Gen 1 with no recourse.

6          74.    Despite knowing about the Audio Defect, Apple nevertheless continued to promote and

7   market its faulty AirPods Pro Gen 1 and continued to profit handsomely from their sale. In so doing,

8   Apple has defrauded the public and cheated its consumers, including Plaintiffs.

9   **H.    The One-Year Manufacturing Warranty Does Not Apply to The Defect at Issue**

10         75.    Apple's one-year limited warranty is inapplicable to the audio defect alleged here.

11  Apple's one-year limited warranty covers "defects in material and workmanship" and not the inherent,

12  hidden, design defects causing the sound issues discussed herein.

13         76.    A defect in the manufacture of a product exists if the product differs from apparently

14  identical products from the same manufacturer. *See* Cal. Jury Instr. (BAJI) No. 9.00.3. The classic

15  example of a manufacturing defect is "the one soda bottle in ten thousand that explodes without

16  explanation." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 428 (1978) (citing *Escola v. Coca Cola Bottling*

17  *Co.*, 24 Cal. 2d 453, (1944)).

18         77.    In contrast to a manufacturing defect, a design defect "cannot be identified simply by

19  comparing the injury-producing product with the manufacturer's plans or with other units of the same

20  product line, since by definition the plans and all such units will reflect the same design." Barker, 20

21  Cal.3d at 429.

22         78.    Plaintiffs allege facts supporting a defect in design, not a manufacturing defect. Plaintiffs

23  allege that Apple's AirPods Pro Gen 1 failed to perform as expected when used in an intended manner,

24  and that replacements of their AirPods Pro Gen 1 under the Service Program did them no good because

25  they all reflected the same inherent Audio Defect. These allegations fall within the definition of a design

26  defect.

27

28

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Plaintiff Philip Camacho

79.     Plaintiff Philip Camacho is a resident and citizen of Chatsworth, California. He has resided in California since on or about August 2023.

80.     On or about March 27, 2020, while living in Illinois, Mr. Camacho spent over $200 to purchase an AirPods Pro Gen 1, model A2084, from Amazon online.

81.     As Apple did not disclose the Audio Defect at point of purchase or in any of the advertisements Mr. Camacho viewed, Mr. Camacho had no reason to suspect that the AirPods Pro Gen 1 headphones could experience sound issues, including crackling or static sounds, loss of bass sounds, or an increase in background sounds.

82.     Mr. Camacho was specifically looking for headphones with high-quality sound, including noise cancelling features to use on flights and while running.

83.     Prior to making his purchase, Mr. Camacho saw various promotional and other material reflecting Apple's advertisement of the AirPods Pro Gen 1's noise cancelling features and high-quality audio sound. He also visited Apple's website, which advertised its AirPods as providing "active noise cancellation for immersive sound" and "transparency mode for hearing what's happening around you." He then visited Amazon's website, which displayed materially identical language, consistent with Apple's promises on its own website.

84.     Nowhere in Apple's labeling or advertising did Apple disclose that its AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

85.     Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), and Apple's representations that AirPods Pro Gen 1 provided high-quality audio with noise cancelling capabilities were substantial factors in Mr. Camacho's decision to purchase AirPods Pro Gen 1 at the high price point he paid. In other words, Mr. Camacho relied on Apple's omission of the sound issues and Apple's representations that the AirPods Pro Gen 1 were noise cancelling and would eliminate unwanted sounds, while providing him with a high-quality sound experience.

86.     Mr. Camacho would not have bought or would have paid substantially less for his AirPods Pro Gen 1 had he known that they had an Audio Defect known to cause sound issues.

87.     Contrary to Apple's representations that its AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelling features, and although Apple did not disclose in its advertising that its AirPods Pro Gen 1 were known to cause sound issues, Mr. Camacho experienced audio issues with his AirPods Pro Gen 1 that rendered them unusable.

88.     Approximately three months after his purchase, in or about the summer of 2020, Mr. Camacho first experienced issues with his AirPods Pro Gen 1. Specifically, he experienced static and crackling sounds from one of his AirPods Pro Gen 1 earbuds.

89.     The static and crackling started intermittently and then presented in his second earbud, worsening over time and including loud, piercing screeching (akin to a high-pitched frequency than can happen from feedback when putting a microphone to a speaker) to a point where he stopped using his AirPods Pro Gen 1 entirely in or around August 2022.

90.     Apple never notified Mr. Camacho that it had identified an Audio Defect in its Apple AirPods Pro Gen 1 or that it had implemented the (albeit ineffective) Service Program.

91.     In researching the problem, Mr. Camacho found complaints from other AirPods Pro Gen 1 purchasers online, which prompted Mr. Camacho to contact Apple and inform the company that he was experiencing the same type of crackling and other sound issues as the similar customer complaints he had seen online.

92.     On or about August 18, 2022, Mr. Camacho went to the Apple Genius Bar in Woodfield Mall in Illinois, which tested his AirPods Pro Gen 1 and confirmed that both earbuds failed Apple's sound test. Although Apple replaced both earbuds under its Service Program, unbeknownst to Mr. Camacho at the time, the replacement AirPods Pro Gen 1s were equally defective as they had the same Audio Defect.

93.     After receiving his replacements, Mr. Camacho thus began experiencing the same audio issues with his replacement AirPods Pro Gen 1. He recalls contacting Apple to get another replacement, but Apple advised he was no longer eligible at that time.

94.     On or about November 20, 2024, Mr. Camacho returned to the Apple store in Northridge Mall, California regarding the audio issues he was experiencing. Again, the Genius Bar performed its

sound test and informed Mr. Camacho that his replacement AirPods Pro Gen 1 also failed, but that Mr. Camacho would need to buy an entirely new pair for $249 if he wanted to replace them—approximately the same price he had already paid for his defective pair. Mr. Camacho is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff Marc Schaefer**

95.    Plaintiff Marc Schaefer is a resident and citizen of San Diego, California. At all times relevant hereto, he has resided in California.

96.    On or about March 24, 2020, Mr. Schaefer spent over $250 with tax to purchase a pair of Apple AirPods Pro Gen 1, model A2084, from Amazon online.

97.    As Apple did not disclose the Audio Defect at point of purchase or in any of the advertisements Mr. Schaefer viewed, he had no reason to suspect that the AirPods Pro Gen 1 headphones could experience sound issues, including crackling or static sounds, loss of bass sounds, or an increase in background sounds.

98.    Mr. Schaefer worked from home and was specifically looking for headphones that would allow him to control the amount of outside noise let in, while providing him with high-quality sound.

99.    Mr. Schaefer regularly monitors Apple's new product releases. Prior to making his purchase, Mr. Schaefer saw various promotional and other material reflecting Apple's advertisement of the AirPods Pro Gen 1's noise cancelling features and high-quality audio sound. He also visited Apple's website, which advertised the AirPods Pro Gen 1 as providing "active noise cancellation for immersive sound" and "transparency mode for hearing what's happening around you." He then visited Amazon's website, which displayed materially identical language, consistent with Apple's promises on its own website.

100.    Mr. Schaefer was drawn to and purchased his AirPods Pro Gen 1 specifically because of these promises by Apple that the AirPods Pro Gen 1 would provide high-quality sound while blocking unwanted sound produced internally, externally or both.

101.    Nowhere in Apple's labeling or advertising did Apple disclose that its AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

102.    Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), and Apple's representations that its AirPods Pro Gen 1 provided high-quality audio with noise cancelling capabilities were substantial factors in Mr. Schaefer's decision to purchase AirPods Pro Gen 1 at the high price point he paid. In other words, in making his purchase, Mr. Schaefer relied on Apple's omissions about the true sound issues with its AirPods Pro Gen 1 and its representations that the AirPods Pro Gen 1 were noise cancelling and would eliminate unwanted sounds, while providing him with a high-quality sound experience.

103.    Mr. Schaefer would not have bought or would have paid substantially less for his AirPods Pro Gen 1 had he known that they had an Audio Defect known to cause sound issues.

104.    Contrary to Apple's representations that its AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelation and transparency modes, and although Apple did not disclose in its advertising or at the point of purchase that its AirPods Pro Gen 1 were known to cause sound issues, Mr. Schaefer experienced audio issues with his AirPods Pro Gen 1 and with every AirPods Pro Gen 1 earbud replacement that Apple provided—as the replacement AirPods Pro Gen 1 earbuds contained the same inherent defect.

105.    Apple never notified Mr. Schaefer that it had identified an Audio Defect in its AirPods Pro Gen 1 or that it had implemented the (albeit ineffective) Service Program.

106.    Mr. Schaefer first experienced issues with his AirPods Pro Gen 1 about one year after his purchase. Specifically, he experienced static and crackling sounds in one earbud.

107.    He went to the Apple Genius Bar to report the static and crackling sounds he was experiencing in or about June 2021. The Genius Bar performed its sound test and informed Mr. Schaefer that one of his earbuds failed the audio test. Apple replaced this earbud at no cost to Mr. Schaefer, but unbeknownst to him at the time, the replacement AirPods Pro Gen 1 earbud was equally defective as it had the same Audio Defect.

108.    Thereafter, he again began experiencing the same crackling and static audio issues with his replacement AirPods Pro Gen 1 earbud as well as his original AirPods Pro Gen 1 earbud.

109.    On or about April 4, 2023, Mr. Schaefer again went to an Apple store to complain of the crackling and static sounds in both earbuds and poor-quality audio experience. The Genius Bar again performed its sound test and informed Mr. Schaefer that both earbuds failed Apple's audio diagnostic test. Apple replaced both earbuds at no cost, but again the replacement AirPods Pro Gen 1 earbuds were equally defective.

110.    In or about late 2024, Mr. Schaefer again began experiencing the same crackling and static audio issues with his replacement AirPods Pro Gen 1. And he again returned to the Genius Bar.

111.    The Apple employee again took his AirPods Pro Gen 1 for a sound test. Both earbuds failed. Although the Apple employee informed Mr. Schaefer that his AirPods Pro Gen 1 had failed the sound test, the Apple employee told him that he would have to buy replacement earbuds or a new set, which would have required him to spend hundreds of more dollars in addition to the hundreds of dollars he had already spent for his initial defective pair. Mr. Schaefer is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff Jeffrey Nykerk**

112.    Plaintiff Jeffrey Nykerk is a resident and citizen of Jacksonville, Florida. At all times relevant hereto, he has resided in Florida.

113.    On or about March 12, 2022, Mr. Nykerk spent nearly $200 to purchase a pair of Apple AirPods Pro Gen 1, model A2084, from Amazon online.

114.    As Apple did not disclose the Audio Defect at point of purchase or in any of the advertisements Mr. Nykerk viewed, he had no reason to suspect that the AirPods Pro Gen 1 headphones could experience sound issues, including crackling or static sounds, loss of bass sounds, or an increase in background sounds.

115.    Mr. Nykerk was looking for high-quality noise-cancelling headphones that he could use at the fitness center and which would control the amount of outside noise let in while still providing him with high-quality sound.

116.    Prior to purchase, he saw advertisements about Apple's AirPods Pro Gen 1 touting their noise-cancelling features. He also visited Apple's website, which advertised its AirPods Pro Gen 1, *inter alia*, as providing "active noise cancellation for immersive sound" and "transparency mode for hearing

what's happening around you." In addition, Mr. Nykerk recalls visiting local stores where Apple's AirPods Pro Gen 1 were on sale, and where the information on display was consistent with what he had seen on Apple's website.

117.    At the time of his purchase, Amazon's website also included representations that were consistent with Apple's website regarding the AirPods Pro Gen 1.

118.    Mr. Nykerk was specifically drawn to and purchased the AirPods Pro Gen 1 because Apple promised that its headphones would block unwanted outside sound and would produce a clear, high-quality sound experience.

119.    Nowhere in Apple's labeling or advertising did Apple disclose that its AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

120.    Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds) together with Apple's representations that AirPods Pro Gen 1 had noise cancelling capabilities and provided high-quality audio were substantial factors in Mr. Nykerk's decision to purchase his AirPods Pro Gen 1 at the high price point he did. In other words, in making his purchase, Mr. Nykerk relied on Apple's omission of the truth about AirPods Pro Gen 1's sound issues, and on representations that its AirPods Pro Gen 1 were noise cancelling and would eliminate unwanted sounds so as to provide him with a high-quality sound experience.

121.    Mr. Nykerk would not have bought his AirPods Pro Gen 1 had he known that they had an Audio Defect known to cause sound issues.

122.    Contrary to Apple's representations that AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelling feature, and although Apple did not disclose in its advertising that its AirPods Pro Gen 1 were known to cause sound issues, Mr. Nykerk experienced audio issues with his AirPods Pro Gen 1.

123.    Specifically, Mr. Nykerk experienced static and crackling sounds that worsened over time to the point where he had to stop using them altogether.

124.    Apple never notified Mr. Nykerk that it had identified an Audio Defect in Apple's AirPods Pro Gen 1 or that it had implemented the (albeit ineffective) Service Program. Instead, Apple's iPhone

"Settings"—where IOS and general software updates are pushed out—were automatically programmed to state "Coverage Expired" and thereby lead consumers to believe that they had no recourse after a certain point in time.

125.    On or about December 23, 2024, Mr. Nykerk visited the Apple store in the St. Johns Towns Center in Jacksonville, Florida regarding the sound issues he was experiencing with his AirPods Pro Gen 1. At this time, the Genius Bar performed its sound test and informed Mr. Nykerk that both earbuds of his AirPods Pro Gen 1 had failed Apple's audio test, but that Apple would not replace them. Instead, Apple informed Mr. Nykerk that he could replace each individual earbud for $89 but recommended he buy a new pair for $249—even more expensive than the price he had paid for his first defective pair. Mr. Nykerk is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff David Ambrozic**

126.    Plaintiff David Ambrozic is a resident and citizen of Chicago, Illinois. At all times relevant hereto, he has resided in Illinois.

127.    On or about August 31, 2021, Plaintiff Ambrozic spent nearly $200 to purchase an AirPods Pro Gen 1, model A2084, from Best Buy online.

128.    As Apple did not disclose the Audio Defect at point of purchase or in any of the advertisements Mr. Ambrozic viewed, he had no reason to suspect that the AirPods Pro Gen 1 headphones could experience sound issues, including crackling or static sounds, loss of bass sounds, or an increase in background sounds.

129.    Prior to his purchase, Mr. Ambrozic viewed promotional material from Apple, including an advertisement (https://www.youtube.com/watch?v=QkmmF4yTjDc) and Apple's original press release announcing the AirPods Pro Gen 1, which touted the AirPods Pro Gen 1's noise cancelling features and ability to provide users a high-quality audio, immersive sound experience.

130.    He also visited Apple's website, which similarly advertised its AirPods Pro Gen 1 as providing "active noise cancellation for immersive sound" and "transparency mode for hearing what's happening around you." He then visited BestBuy's website to make his purchase, which displayed materially identical language, consistent with Apple's promises on its own website.

131.    Nowhere in Apple's labeling or advertising did Apple disclose that AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

132.    Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), and Apple's representations that AirPods Pro Gen 1 provided high-quality audio and had noise cancelling capabilities were substantial factors in Mr. Ambrozic's decision to purchase AirPods Pro Gen 1 at the high price point he did. Mr. Ambrozic had previously paid significantly less for Apple's AirPods that were not Pros and had attributed the higher price of the AirPods Pro Gen 1 to their noise cancelling features. Because Mr. Ambrozic was living in a college dorm at the time, where surrounding sound can become quite noisy, Mr. Ambrozic was motivated by the AirPods Pros promise of its noise cancelling features.

133.    In other words, in making his purchase, Mr. Ambrozic relied on Apple's omissions about the true sound issues with its AirPods Pro Gen 1 and its representations that the AirPods Pro Gen 1 were noise cancelling and would eliminate unwanted sounds, while providing him with a high-quality sound experience.

134.    Mr. Ambrozic would not have bought or would have paid substantially less for his AirPods Pro Gen 1 had he known that they had an Audio Defect known to cause sound issues.

135.    Contrary to Apple's representations that AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelling features, and although Apple did not disclose in its advertising that its AirPods Pro Gen 1 were known to cause sound issues, Mr. Ambrozic experienced audio issues with his AirPods Pro Gen 1 that rendered them unusable.

136.    Over a year following his initial purchase, Mr. Ambrozic experienced static and crackling sounds, including at high frequencies, which were physically discomforting. The issue was most pronounced in his left earbud. He thus replaced his left earbud for an additional cost of around $79.99. But the replacement soon became just as bad as the initial earbud, presenting the same crackling and static he had experienced previously.

137.    Apple never notified Mr. Ambrozic that it had identified an Audio Defect in Apple AirPods Pro Gen 1 or that it had implemented the Service Program.

138.    Less than a year following his purchase of the left replacement earbud and after that earbud, too, began experiencing sound issues, Mr. Ambrozic was frustrated with the poor-quality audio experience he was having and began researching the issues online. During his research, he came across numerous other consumers who had experienced similar crackling and static issues with their AirPods Pro Gen 1 and learned that Apple had identified a defect in the AirPods Pro Gen 1 causing the exact problems he was experiencing.

139.    He thus made an appointment at an Apple store, on or about February 16, 2023. At that appointment, Apple performed an audio diagnostic test on Mr. Ambrozic's AirPods Pro Gen 1 earbuds and confirmed that both earbuds failed. Although Apple's sound test confirmed that his AirPods Pro Gen 1 were defective, Apple informed Mr. Ambrozic that he would have to pay to replace them, even though he had purchased the left earbud less than a year before. The Apple employee told Mr. Ambrozic that Apple back-dated its coverage for any replacement earbuds to the date of original purchase.

140.    When Mr. Ambrozic raised the fact that Apple knew the AirPods Pro Gen 1 were defective given the Sound Service Program, the Apple representative responded, "That is the risk you take when you buy technology. It breaks."

141.    Mr. Ambrozic is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff Jerry Mitchell Adair**

142.    Plaintiff Jerry Mitchell Adair is a resident and citizen of Queens, New York. At all times relevant hereto, he has resided in New York.

143.    On or about June 16, 2021, Mr. Adair spent over $250 with tax to purchase a pair of Apple AirPods Pro Gen 1, model A2084, from an Apple store in Manhattan, New York. He also purchased AppleCare+ for $29.

144.    As Apple did not disclose the Audio Defect at point of purchase or in any of the advertisements Mr. Adair viewed, he had no reason to suspect that the AirPods Pro Gen 1 headphones could experience sound issues, including crackling or static sounds, loss of bass sounds, or an increase in background sounds.

145.    Prior to making his purchase, Mr. Adair visited Apple's website, which advertised its AirPods Pro Gen 1 as providing "active noise cancellation for immersive sound" and "transparency mode

for hearing what's happening around you." Mr. Adair also regularly monitors Apple's new product releases. After learning more about the AirPods Pro Gen 1's promised features, Mr. Adair purchased the AirPods Pro Gen 1 specifically because Apple promised that its noise cancelling features would block unwanted sound and produce clear, high-quality sound for their users.

146.    He then visited the Apple store to make his purchase and spoke with an Apple employee, who likewise conveyed the sound quality and noise cancelling features of the AirPods Pro Gen 1, consistent with Apple's website.

147.    Nowhere in Apple's labeling or advertising did Apple disclose that its AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

148.    Mr. Adair needed headphones to use at the gym and for commuting that would allow him to control the amount of outside noise let in and provide him with high-quality sound. Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), and Apple's representations that its AirPods Pro Gen 1 had noise cancelling capabilities and provided high-quality audio were substantial factors in Mr. Adair's decision to purchase AirPods Pro Gen 1 at the high price point he did.

149.    In other words, in making his purchase, Mr. Adair relied on Apple's omissions of the true sound issues with its AirPods Pro Gen 1 and its representations that the AirPods Pro Gen 1 were noise cancelling and would eliminate unwanted sounds, while providing him with a high-quality sound experience.

150.    Mr. Adair would not have bought or would have paid substantially less for his AirPods Pro Gen 1 had he known that they had an Audio Defect known to cause sound issues.

151.    Contrary to Apple's representations that AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelling features, and although Apple did not disclose in its advertising that its AirPods Pro Gen 1 were known to cause sound issues, Mr. Adair experienced audio issues with his AirPods Pro Gen 1 that rendered them unusable.

152.    Mr. Adair experienced issues with his AirPods Pro Gen 1 beginning in or about the summer of 2022. Specifically, he experienced static and crackling sounds in his right earbud. A few months later, the crackling presented in his left earbud too, with the sound issues worsening over time.

153.    Apple never notified Mr. Adair that it had identified an Audio Defect in its Apple AirPods Pro Gen 1 or that it had implemented the Service Program.

154.    On or about November 11, 2022, Mr. Adair went to the Grand Central Apple Genius Bar to report the static and crackling sounds he was experiencing when using his AirPods Pro Gen 1. After reporting the issue, the Apple representative told Mr. Adair to come back to the store later after they had performed an audio test to verify the issue. When Mr. Adair returned to the store, Apple informed him that both of his earbuds had failed the audio test and provided Mr. Adair with a replacement pair of Apple AirPods Pro Gen 1.

155.    Unbeknownst to Mr. Adair at the time, however, the replacement AirPods Pro Gen 1 headphones were also defective as they had the same Audio Defect.

156.    After Apple provided him with a replacement pair, Mr. Adair began experiencing similar crackling and static audio issues.

157.    On or about November 26, 2024, Mr. Adair went to the Soho Apple store in Manhattan, New York, regarding the audio issues he was experiencing. At that time, the Genius Bar again performed audio diagnostics and informed Mr. Adair that his replacement AirPods Pro Gen 1 had failed in both earbuds, but that he would have to pay to replace them at the out of warranty cost—either $89 per earbud or buy a new pair for $249, which would have also required him to spend hundreds of more dollars in addition to the hundreds of dollars he had already spent for his initial defective pair. Mr. Adair is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff Daniel Kadyrov**

158.    Plaintiff Daniel Kadyrov is a resident and citizen of Manhattan, New York. At all times relevant hereto, he has resided in New York.

159.    On or about November 27, 2021, Mr. Kadyrov spent nearly $400 to purchase two pairs of Apple AirPods Pro Gen 1, model A2084, from Target online. He gave one pair away as a gift and kept one pair for his own personal use.

160.    Prior to his purchase of the Apple AirPods Pro Gen 1, Mr. Kadyrov saw various promotional and other material reflecting Apple's advertisement of the AirPods Pro Gen 1's noise cancelling features and high-quality audio sound. Mr. Kadyrov also regularly monitors Apple's new

product releases, and he visited Apple's website, which advertised its AirPods as providing "active noise cancellation for immersive sound" and "transparency mode for hearing what's happening around you." He then visited Target's website, which displayed materially identical language, consistent with Apple's promises on its own website.

161.    Mr. Kadyrov was drawn to and purchased the AirPods Pro Gen 1 specifically because Apple promised the headphones would block unwanted sound and produce clear, high-quality sound.

162.    Nowhere in Apple's labeling or advertising did Apple disclose that its AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

163.    Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), and Apple's representations that its AirPods Pro Gen 1 had noise cancelling capabilities and would provide high-quality audio were substantial factors in Mr. Kadyrov's decision to purchase AirPods Pro Gen 1 at the high price point he did. In other words, in making his purchase, Mr. Kadyrov relied on Apple's omissions about the true sound issues with its AirPods Pro Gen 1 and its representations that the AirPods Pro Gen 1 were noise cancelling and would provide him with a high-quality sound experience.

164.    Mr. Kadyrov would not have bought or would have paid substantially less for his AirPods Pro Gen 1 had he known that they had an Audio Defect known to cause sound issues.

165.    Contrary to Apple's representations that AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelling features, and although Apple did not disclose in its advertising that its AirPods Pro Gen 1 were known to cause sound issues, Mr. Kadyrov experienced audio issues with his AirPods Pro Gen 1. Specifically, he experienced static and crackling sounds in both earbuds, as well as high-pitched screeching sounds that would increase in volume rapidly and sporadically to the point where it felt dangerous to leave them in his ears.

166.    Apple never notified Mr. Kadyrov that it had identified an Audio Defect in Apple AirPods Pro Gen 1 or that it had implemented the (albeit ineffective) Service Program.

167.    On or about March 2023, Apple sent Mr. Kadyrov a replacement pair of Apple AirPods Pro Gen 1.

168.    Unbeknownst to Mr. Kadyrov at the time, the replacement AirPods Pro Gen 1 headphones were equally defective as they had the same Audio Defect.

169.    Shortly after receipt of the replacement AirPods Pro Gen 1 headphones, they began having the same crackling and static audio issues.

170.    On or about December 1, 2024, Mr. Kadyrov went to an Apple store in Manhattan, New York, regarding the audio issues he was experiencing. The Genius Bar ran audio diagnostics on the headphones, which confirmed the audio static and crackling sounds and frequency failure of his AirPods Pro Gen 1 headphones. However, Mr. Kadyrov was informed by the Apple employee that Apple would not replace his AirPods Pro Gen 1 and that he would instead need to buy a new pair for hundreds of dollars more. Mr. Kadyrov is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff Stacey Rodgers**

171.    Plaintiff Stacey Rodgers is a resident and citizen of Painesville, Ohio. At all times relevant hereto, she has resided in Ohio.

172.    On or about July 24, 2021, Ms. Rodgers spent over $250 to purchase an Apple AirPods Pro Gen 1, model A2084, from a BestBuy store located in Mentor, Ohio.

173.    Prior to her purchase, Ms. Rodgers did not know because Apple did not disclose to her that the AirPods Pro Gen 1 had an Audio Defect known to cause sound issues.

174.    Based on Apple's conduct, including its omissions of the sound issues (namely, that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), Ms. Rodgers reasonably believed that the AirPods Pro Gen 1 provided high-quality audio and would function like high-end headphones as she paid an exorbitant purchase price. Having headphones with high-quality sound worth the expensive, high-end price she paid was a substantial factor in Ms. Rodger's decision to purchase her AirPods Pro Gen 1. In other words, her decision to enter the higher-end earphone market and pay the amount of money that she did was based on her understanding that the AirPods Pro Gen 1 that she purchased would provide her with a high-quality sound experience as advertised.

175.    Had Ms. Rodgers known the AirPods Pro Gen 1 had an Audio Defect known to cause sound issues, she would not have bought or would have paid substantially less for her AirPods Pro Gen 1.

176.    Contrary to Apple's representations that AirPods Pro Gen 1 would provide listeners with clear, high-quality sound, and although Apple did not disclose in its advertising that AirPods Pro Gen 1 were known to cause sound issues, Ms. Rodgers experienced audio issues with her AirPods Pro that rendered them unusable.

177.    Ms. Rodgers first experienced issues with her AirPods on or about September 1, 2023. Specifically, she experienced static and crackling noises in both earbuds after inserting Apple AirPods Pro Gen 1 into her ears. Initially, the audio disruption was intermittent, inconsistent, and significantly worse in one earbud such that she switched to using the other earbud exclusively until a few weeks later when that one also deteriorated to a point where she could no longer use either of the earbuds.

178.    Apple never notified Ms. Rodgers that it had identified an Audio Defect in the Apple AirPods Pro Gen 1 or that it had implemented a Service Program.

179.    On or about November 4, 2023, after experiencing the Audio Defect in both earbuds, rendering the set unusable, Ms. Rodgers visited an Apple store in Woodmere, Ohio.

180.    During her appointment at the Apple store regarding the Audio Defect with her AirPods Pro, the Apple employee ran a sound test on both AirPods. The representative informed Ms. Rodgers that both AirPods failed the sound test and that if she wanted to replace either earbud, she would have to pay $89 apiece. Ms. Rodgers is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff Lindsey LaBella**

181.    Plaintiff Lindsey LaBella is a resident and citizen of Allegheny County, Pennsylvania. At all times relevant hereto, she has resided in Pennsylvania.

182.    On or about April 24, 2020, Plaintiff LaBella spent over $250 with tax to purchase an AirPods Pro Gen 1, model A2084, from the Apple Store online.

183.    Prior to her purchase, Ms. LaBella viewed a commercial touting, *inter alia*, the AirPods Pro Gen 1 headphones' noise cancelling features and ability to provide users a high-quality audio,

immersive sound experience. Nowhere in Apple's labeling or advertising did Apple disclose that AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

184.    Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), and Apple's representations that AirPods Pro Gen 1 had noise cancelling capabilities and that AirPods Pro Gen 1 provided high-quality audio were substantial factors in Ms. LaBella's decision to purchase AirPods Pro Gen 1 for over $250. In other words, Ms. LaBella relied on Apple's representations that the AirPods Pro Gen 1 were noise cancelling and would eliminate unwanted sounds, and that the headphones would provide her with a high-quality sound experience.

185.    Ms. LaBella would not have bought or would have paid substantially less for her AirPods Pro Gen 1 had she known that they had an Audio Defect known to cause sound issues.

186.    Contrary to Apple's representations that AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelling features, and although Apple did not disclose in its advertising that its AirPods Pro Gen 1 were known to cause sound issues, Ms. LaBella experienced audio issues with her AirPods Pro Gen 1 that rendered them unusable.

187.    Just over a year following her purchase, Ms. LaBella experienced static and crackling sounds in both earbuds after inserting her AirPods Pro Gen 1 earbuds into her ears. The static and crackling started intermittently and then worsened over time until she could not use either earbud at all.

188.    Apple never notified Ms. LaBella that it had identified an Audio Defect in Apple AirPods Pro Gen 1 or that it had implemented the Service Program.

189.    Ms. LaBella made an appointment at an Apple store, on or about May 16, 2024, regarding the sound issues she was experiencing with her AirPods Pro Gen 1. At that appointment, Apple tested Ms. LaBella's AirPods Pro Gen 1 earbuds using its sound test and confirmed that both earbuds failed. Although Apple's sound test confirmed that her AirPods Pro Gen 1 were defective, Apple informed Ms. LaBella that she would have to pay $89 apiece per earbud to replace them or purchase a new set for $249—the same price she had paid for her defective pair. Ms. LaBella is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

**Plaintiff Michael Pawson**

190.    Plaintiff Michael Pawson is a resident and citizen of Harris County, Texas. At all times relevant hereto, he has resided in Texas.

191.    On or about November 25, 2019, Mr. Pawson spent over $250 with tax to purchase a pair of Apple AirPods Pro Gen 1, model A2084, from Target online.

192.    Mr. Pawson was looking for headphones with high quality sound and had been waiting for Apple to release ones with a noise cancellation feature. He was thus drawn to the AirPods Pro Gen 1 specifically because of their noise cancelling capabilities.

193.    Prior to purchase, Mr. Pawson visited Apple's website, which advertised its AirPods as providing "active noise cancellation for immersive sound" and "transparency mode for hearing what's happening around you."[43] He then visited Target's website, which displayed materially identical language, consistent with Apple's promises on its own website.[44]

194.    Nowhere in Apple's labeling or advertising did Apple disclose that AirPods Pro Gen 1 had an Audio Defect known to, in fact, *cause* sound issues.

195.    Apple's omission of the sound issues (including its omission that users could experience, *inter alia*, crackling or static sounds, loss of bass sounds, or an increase in background sounds), and Apple's representations that the AirPods Pro Gen 1 had noise cancelling features and provided high-quality audio were substantial factors in Mr. Pawson's decision to purchase AirPods Pro Gen 1 for over $250.

196.    Prior to his purchase of the Apple AirPods Pro Gen 1, Mr. Pawson had purchased various generic off-brand headphones. The promise of high-quality sound with the noise cancelling feature of the AirPods Pro Gen 1 motivated Mr. Pawson to enter the more expensive Apple headphone market.

197.    In other words, in making his purchase, Mr. Pawson relied on Apple's representations that the AirPods Pro Gen 1 were noise cancelling and would eliminate unwanted sounds, so as to provide him with a high-quality sound experience.

---

[43]    Apple AirPods Pro Gen 1 web advertisement, posted October 28, 2019, available here: https://perma.cc/SQG3-PZCU (last visited Oct. 1, 2024).

[44]    *See, e.g.*, Target, as of March 5, 2020, available here: https://perma.cc/A2NV-A7R8.

198.    Mr. Pawson would not have bought or would have paid substantially less for his AirPods Pro Gen 1 had he known that AirPods Pro Gen 1 had an Audio Defect known to cause sound issues.

199.    Contrary to Apple's representations that AirPods Pro Gen 1 would provide listeners with high-quality sound that eliminated unwanted noise with its noise cancelling feature, and although Apple did not disclose in its advertising that AirPods Pro Gen 1 were known to cause sound issues, Mr. Pawson experienced audio issues with his AirPods Pro Gen 1 soon after purchase and with every AirPods Pro Gen 1 earbud replacement that Apple provided—as the replacement AirPods Pro Gen 1 earbuds contained the same inherent defect.

200.    Mr. Pawson first experienced issues with his AirPods Pro Gen 1 just under one year following his purchase, in November 2020. Specifically, he experienced static and crackling sounds from his right AirPods Pro Gen 1 earbud. These sound issues produced an inconsistent, poor quality listening experience.

201.    In researching the problem, Mr. Pawson found complaints from other AirPods Pro Gen 1 purchasers online, which prompted Mr. Pawson to contact Apple and inform the company that he was experiencing the same type of crackling and other sound issues as the similar customer complaints he had seen online. Apple agreed to replace one of Mr. Pawson's earbuds with another AirPods Pro Gen 1 earbud, but unbeknownst to Mr. Pawson at the time, the replacement AirPods Pro Gen 1 earbud was equally defective as it had the same Audio Defect.

202.    In January 2021, Mr. Pawson thus began experiencing the same audio issues again, but this time with his left AirPods Pro Gen 1 earbud. On or about January 19, 2021, he again contacted Apple and informed the company that he was experiencing the same problems that he had experienced with his right earbud a few months earlier. Apple thus again exchanged Mr. Pawson's left AirPods Pro Gen 1 earbud with another AirPods Pro Gen 1, which again contained the same inherent Audio Defect.

203.    On or about November 2023, the same static and crackling noises presented whenever he used his replacement AirPods Pro Gen 1. Initially, the audio disruption was intermittent and inconsistent. But the audio disruption quickly worsened to a point where he stopped using his AirPods Pro Gen 1 entirely.

204.    Mr. Pawson contacted Apple again to report the same audio issues, with Apple telling Mr. Pawson that he would have to go to the Apple store.

205.    On or about December 5, 2023, Mr. Pawson made and went to an appointment at the Apple Houston Galleria store located in Houston, Texas. The Apple employee there took his AirPods Pro Gen 1 for a sound test. Both earbuds failed. Although the Apple employee informed Mr. Pawson that his AirPods Pro Gen 1 had failed the sound test, the Apple employee told Mr. Pawson that the best Apple could do for Mr. Pawson was to sell him replacement earbuds at $89 per earbud. Given the combined cost to replace both earbuds, the Apple employee thus recommended that Mr. Pawson buy an entirely new pair, which would have required him to spend hundreds of more dollars in addition to the hundreds of dollars he had already spent for his defective pair. Mr. Pawson is thus left with a broken pair of AirPods Pro Gen 1 with no recourse.

## CHOICE OF LAW ALLEGATIONS

206.    No Choice of Law Clause governs this dispute. Plaintiffs' claims do not arise from the Terms of Service, which govern service, not hardware, and that contains a California choice of law clause. Apple's One-Year Warranty also does not apply here as it applies only to manufacturing design defects (i.e. where there are a few substandard units that come off the manufacturing line) and not to inherent design defects (i.e. where the defect is inherent and not a manufacturing problem with a few units that did not live up to a planned design).

207.    On behalf of a nationwide class, Plaintiffs plead claims for violation of the consumer protection law of the 50 states, as well breach of express and implied warranty in the 50 states to the extent that those laws parallel to the laws of the states where each of the Plaintiffs reside.

208.    Alternatively, on behalf of state subclasses, Plaintiffs plead violation of state consumer protection law, as well as breach of express and implied warranty in each state where each named plaintiff resides.

## INADEQUATE REMEDY AT LAW

209.    Legal remedies available to Plaintiffs and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that

governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiffs seek equitable remedies in the alternative to legal remedies which are as of yet uncertain.

210.    Legal remedies available to Plaintiffs and Class Members are also inadequate because they do not address likely future harms. As of the date of this filing, Apple has failed to repair, recall, and/or replace the AirPods Pro Gen 1 or extend the applicable warranties to a reasonable period of time, or to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Audio Defect. If Apple is not ordered to take these or similar actions, Apple will or may continue to injure Plaintiffs and Class Members through the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

211.    Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

212.    Plaintiffs seek to represent the following:

Nationwide Class: All persons or entities in the United States that purchased Apple AirPods Pro Gen 1.

213.    In the alternative, Plaintiffs seek to represent the following state sub-classes:

California Class: All persons in California that purchased Apple AirPods Pro Gen 1.

Florida Class: All persons in Florida that purchased Apple AirPods Pro Gen 1.

1    Illinois Class: All persons in Illinois that purchased Apple AirPods Pro Gen 1.

2    New York Class: All persons in New York that purchased Apple AirPods Pro Gen 1.

3    Ohio Class: All persons in Ohio that purchased Apple AirPods Pro Gen 1.

4    Pennsylvania Class: All persons in Pennsylvania that purchased Apple AirPods Pro Gen 1.

5    Texas Class: All persons in Texas that purchased Apple AirPods Pro Gen 1.

6    214.    The Nationwide Class and (alternative) state classes will be referred to collectively as the

7    "Class."

8    215.    *Numerosity:* Members of the Class(es) are so numerous that joinder of all members is

9    impracticable. While the exact number of Class Members remains unknown at this time, upon

10    information and belief, there are millions of putative Class Members throughout the United States, and

11    at least hundreds of thousands in each state. Indeed, in 2021 alone, Apple sold an estimated $12.1 billion

12    worth of AirPods (all models) and holds the largest share of the wireless headset market.[45]

13    216.    *Commonality:* This action involves common questions of law and fact, which

14    predominate over any questions affecting individual Class Members. These common legal and factual

15    questions include, but are not limited to, the following:

16    a.    Whether the AirPods Pro Gen 1 suffer from an Audio Defect that causes "sound

17    issues" to manifest;

18    b.    Whether Apple engaged in the misrepresentations and omissions alleged herein;

19    c.    Whether Apple breached its express warranties as alleged herein;

20    d.    Whether Apple designed, manufactured, marketed, distributed, sold or otherwise

21    placed the AirPods Pro Gen 1 into the stream of commerce in the United States

22    knowing that they suffered from the Audio Defect;

23    e.    Whether Apple intentionally concealed the Audio Defect in the AirPods Pro Gen

24    1 from consumers;

25    f.    Whether Plaintiffs and the other Class Members have been harmed by Apple's

26    conduct as alleged herein;

27

28    [45] *See* https://perma.cc/4URP-3F8A (estimates based on LinkedIn, Above Avalon data, and estimates from Apple headphones revenue numbers) (last visited Sept. 18, 2024).

g.  Whether Apple was unjustly enriched by its deceptive practices; and

h.  Whether Plaintiffs and the Class are entitled to equitable or injunctive relief.

217.  **_Typicality_**: Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all members of the Class(es) were injured through the common misconduct described above and were subject to Apple's unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class(es).

218.  **_Adequacy of Representation:_** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the other Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

219.  **_Superiority:_** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

220.  The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class Members for the wrongs alleged because Apple would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources. Although Plaintiffs and Class Members paid a high price point of hundreds of dollars for their defective AirPods Pro Gen 1, the costs of individual suits could unreasonably consume the amounts that would be recovered. Further, proof of

1   a common course of conduct to which Plaintiffs were exposed is representative of that experienced by

2   the Class and will establish the right of each member of the Class to recover on the cause of action alleged,

3   and individual actions would create a risk of inconsistent results and would be unnecessary and

4   duplicative of this litigation.

5       221.   Plaintiffs reserve the right to modify or amend the definition of the proposed Class and

6   (alternative) state classes before the Court determines whether certification is appropriate and as the

7   parties engage in discovery.

8       222.   The class action is superior to all other available methods for the fair and efficient

9   adjudication of this controversy. Because of the number and nature of common questions of fact and law,

10  multiple separate lawsuits would not serve the interest of judicial economy.

11      223.   Individual litigation of the claims of all Class Members is economically unfeasible and

12  procedurally impracticable. While the aggregate damages sustained by the Class Members are likely in

13  the millions of dollars, the individual damages incurred by each Class Member resulting from Apple's

14  wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual

15  Class Members prosecuting separate claims is remote, and even if every Class Member could afford

16  individual litigation, the court system would be unduly burdened by individual litigation of such cases.

17  Individual Class Members do not have a significant interest in individually controlling the prosecution

18  of separate actions, and the individualized litigation would also present the potential for varying,

19  inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to

20  the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty

21  to be encountered in the management of this action that would preclude its maintenance as a class action.

22  A class action in this matter will avoid case management difficulties and provide multiple benefits,

23  including efficiency, economy of scale, unitary adjudication with consistent results and equal protection

24  of the rights of each Class member, all by way of the comprehensive and efficient supervision of the

25  litigation by a single court.

26      224.   Notice of a certified class action and of any result or resolution of the litigation can be

27  provided to Class Members by first-class mail, email, or publication, or such other methods of notice as

28  deemed appropriate by the Court.

225.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## COUNTS

### *NATIONWIDE CLAIMS*

### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF THE CONSUMER PROTECTION ACTS OF 50 STATES
### (by All Plaintiffs on Behalf of the Nationwide Class)

226.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

227.    Plaintiffs bring these statutory consumer protection claims pursuant to consumer protection laws of the states of residence of Class Members identified below to the extent they are not in true conflict with the laws of California, Florida, Illinois, New York, Ohio, Pennsylvania, and Texas.

228.    The following consumer protection acts are collectively referred to herein as the "Consumer Protection Acts," all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

a.    ALA. CODE § 8-19-1 *et seq.* (Alabama);

b.    ALASKA STAT. ANN. § 45.50.471 *et seq*. (Alaska);

c.    ARIZ. REV. STAT. ANN. § 44-1521 *et seq*. (Arizona);

d.    ARK. CODE ANN. § 4-88-101 *et seq*. (Arkansas);

e.    CAL. CIV. CODE §1750 et seq. (California);

f.    COLO. REV. STAT. ANN. § 6-1-101 *et seq*. (Colorado);

g.    CONN. GEN. STAT. ANN. § 42-110a *et seq*. (Connecticut);

h.    DEL. CODE ANN. tit. 6, § 2511 *et seq*. (Delaware);

i.    D.C. CODE ANN. § 28-3901 *et seq*. (District of Columbia);

j.    FLA. STAT. ANN. § 501.201 *et seq*. (Florida);

k.    GA. CODE ANN. § 10-1-370 *et seq*. and GA. CODE ANN. § 10-1-390 et seq. (Georgia);

l.    HAW. REV. STAT. ANN. § 480-1 *et seq*. and HAW. REV. STAT. ANN. § 481A-1 *et seq*. (Hawaii);

1       m.      IDAHO CODE ANN. § 48-601 *et seq*. (Idaho);

2       n.      815 ILCS 505/1 *et seq*. (Illinois);

3       o.      IND. CODE ANN. § 24-5-0.5-1 *et seq*. (Indiana);

4       p.      IOWA CODE 714H.1, *et seq*. (Iowa);

5       q.      KAN. STAT. ANN. § 50-623 *et seq*. (Kansas);

6       r.      KY. REV. STAT. ANN. § 367.110 *et seq*. (Kentucky);

7       s.      LA. STAT. ANN. § 51:1401 *et seq*. (Louisiana);

8       t.      MASS. GEN. LAWS, Ch. 93A (Massachusetts)

9       u.      ME. REV. STAT. tit. 5, § 205-A *et seq*. (Maine);

10       v.      MD. CODE ANN., COM. LAW § 13-101 *et seq*. (Maryland);

11       w.      MICH. COMP. LAWS ANN. § 445.901 *et seq*. (Michigan);

12       x.      MINN. STAT. ANN. § 325F.68 *et seq*., MINN. STAT. ANN. § 325D.09 *et seq*., MINN.

13 STAT. ANN. § 325D.43 *et seq*., and MINN. STAT. ANN. § 325F.67 (Minnesota);

14       y.      MISS. CODE ANN. § 75-24-1 *et seq*. (Mississippi);

15       z.      MO. ANN. STAT. § 407.010 *et seq*. (Missouri);

16       aa.      MONT. CODE ANN. § 30-14-101 *et seq*. (Montana);

17       bb.      NEB. REV. STAT. ANN. § 59-1601 *et seq*. (Nebraska);

18       cc.      NEV. REV. STAT. ANN. § 41.600 and NEV. REV. STAT. ANN. §598.0903 *et seq*.

19 (Nevada);

20       dd.      N.H. REV. STAT. ANN. § 358-A:1 *et seq*. (New Hampshire);

21       ee.      N.J. STAT. ANN. § 56:8-1 *et seq*. (New Jersey);

22       ff.      N.M. STAT. ANN. § 57-12-1 *et seq*. (New Mexico);

23       gg.      N.Y. GEN. BUS. LAW § 349 *et seq*. (New York);

24       hh.      N.C. GEN. STAT. ANN. § 75-1 *et seq*. (North Carolina);

25       ii.      N.D. CENT. CODE ANN. § 51-15-01 *et seq*. (North Dakota);

26       jj.      OHIO REV. CODE ANN. § 1345.01 *et seq*. (Ohio);

27       kk.      OKLA. STAT. ANN. tit. 15, § 751 *et seq*. (Oklahoma);

28       ll.      OR. REV. STAT. ANN. § 646.605 *et seq*. (Oregon);

| | | |
|---|---|---|
| mm. | 73 PA. STAT. ANN. § 201-1 *et seq*. (Pennsylvania); |
| nn. | R.I. GEN. LAWS ANN. § 6-13.1-1 *et seq*. (Rhode Island); |
| oo. | S.C. CODE ANN. § 39-5-10 *et seq*. (South Carolina); |
| pp. | S.D. CODIFIED LAWS § 37-24-1 *et seq*. (South Dakota); |
| qq. | TENN. CODE ANN. § 47-18-101 *et seq*. (Tennessee); |
| rr. | TEX BUS. & COM. CODE § 17.41, *et seq.* (Texas); |
| ss. | UTAH CODE ANN. § 13-11-1 *et seq*. (Utah); |
| tt. | VT. STAT. ANN. tit. 9, § 2451 *et seq*. (Vermont); |
| uu. | VA. CODE ANN. § 59.1-196 *et seq*. (Virginia); |
| vv. | WASH. REV. CODE ANN. § 19.86.010 *et seq*. (Washington); |
| ww. | W.VA. CODE ANN. § 46A-6-101 *et seq*. (West Virginia); |
| xx. | WIS. STAT. ANN. § 100.20 (Wisconsin); and |
| yy. | WYO. STAT. ANN. § 40-12-101 *et seq*. (Wyoming) |

229. Apple has engaged in deception, fraud, unfair practices, and concealment by its conduct and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and all Class Members the existence of the Audio Defect (and the costs and diminished value of the AirPods Pro Gen 1 as a result of Apple's conduct). Accordingly, Apple engaged in unfair or deceptive acts or practices as defined in the above Consumer Protection Acts, including: representing (through its misrepresentation of the AirPods Pro Gen 1 functionality and concealment of and failure to disclose the Audio Defect) that the AirPods Pro Gen 1 have characteristics, uses, benefits, and qualities which they do not have; representing (through its misrepresentation of the AirPods Pro Gen 1's functionality and concealment of and failure to disclose the Audio Defect) that the AirPods Pro Gen 1 are of a particular standard and quality when they are not; advertising the AirPods Pro Gen 1 with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

230. The facts misrepresented, concealed, or not disclosed by Apple to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's AirPods Pro Gen 1 or pay a lesser price. Had Apple disclosed the Audio Defect in its ubiquitous first generation AirPods Pro Gen 1 advertising or through its Apple Stores

or authorized retailers, Plaintiffs and other Class Members would have learned of the Audio Defect. Had Plaintiffs and other Class Members known about the Audio Defect, they would not have purchased the AirPods Pro Gen 1 or would have paid less for them.

231.    Plaintiffs and all Class Members were injured as a result of Apple's conduct in that they purchased AirPods Pro Gen 1 that were defective, overpaid for their AirPods Pro Gen 1 and did not receive the benefit of their bargain, and their AirPods Pro Gen 1 have suffered a diminution in value. These injuries are the direct and natural consequence of Apple's omissions regarding the functionality of and the Audio Defect in its AirPods Pro Gen 1 as set forth in this Complaint and were material and likely to deceive a reasonable consumer, examples of which include, but are not limited to, Apple's statements regarding the defective AirPods Pro Gen 1's usefulness and functionality as headphone, particularly in terms of the AirPods Pro Gen 1's advertised ability to only let in wanted sounds. By omitting or concealing information concerning the Audio Defect when making these statements (and others in its ubiquitous advertising and at its authorized retailers), Apple's statements were untrue or misleading.

232.    At the latest, Apple knew that its AirPods Pro Gen 1 were defective just a few weeks after release, in late October early November 2019, and likely long before.

233.    The injuries suffered by Plaintiffs and Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that those Plaintiffs and Class Members should have reasonably avoided.

234.    The injuries of Plaintiffs and Class Members were proximately caused by Defendant's fraudulent and deceptive business practices, and they are entitled to relief under the above-identified Consumer Protection Acts.

235.    Apple's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and other Class Members and, as such, warrants the imposition of punitive damages.

**SECOND CLAIM FOR RELIEF**
**VIOLATIONS OF THE EXPRESS WARRANTY LAWS OF 50 STATES**
**(by All Plaintiffs on Behalf of the Nationwide Class)**

236.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

237.   Plaintiffs bring these breach of express warranty claims pursuant to the laws of the states of residence of Class Members identified below to the extent they are not in true conflict with the laws of California, Florida, Illinois, New York, Ohio, Pennsylvania, and Texas.

238.   The following express warranty laws are collectively referred to herein as the "Express Warranty Laws," all of which provide for damages for breach of affirmative representations that form the basis of the bargain.

239.   The Express Warranty Laws include:

- ALA. CODE 1975 § 7-2-313 (Alabama);
- ALASKA STAT. ANN. § 45.02.313 (Alaska)
- ARIZ. REV. STAT. ANN. § 47-2313 (Arizona);
- ARK. CODE ANN. § 4-2-313 (Arkansas);
- CAL. CIV. CODE § 2313 (California);
- COLO. REV. STAT. ANN. § 4-2-313 (Colorado);
- CONN. GEN. STAT. ANN. § 42a-2-313 (Connecticut);
- DEL. CODE ANN. Tit. 6, § 2-313 (Delaware);
- D.C. CODE ANN. § 28:2-313 (District of Columbia);
- FLA. STAT. ANN. § 672.313 (Florida);
- GA. CODE ANN. § 11-2-313 (Georgia);
- HAW. REV. STAT. ANN. § 490:2-313 (Hawaii);
- IDAHO CODE ANN. § 28-2-313 (Idaho);
- 810 ILL. COMP. STAT. § 5/2-313 (Illinois);
- IND. CODE ANN. § 26-1-2-313 (Indiana);
- IOWA CODE ANN. § 554.2313 (Iowa);
- KAN. STAT. ANN § 84-2-313 (Kansas);
- KY. REV. STAT. ANN. § 355.2-313 (Kentucky);
- ME. REV. STAT. ANN. Tit. 11, § 2-313 (Maine)
- MD. COM. LAW CODE § 2-313 (Maryland);
- MASS. GEN. LAWS ANN. Ch. 106, § 2-313 (Massachusetts);

1    •      MICH. COMP. LAWS § 440.2313 (Michigan);

2    •      MINN. STAT. ANN. § 336.313 (Minnesota);

3    •      MISS. CODE ANN. § 75-2-313 (Mississippi);

4    •      MO. ANN. STAT. § 400.2-313 (Missouri);

5    •      MONT. CODE ANN. § 30-2-313 (Montana);

6    •      NEB. REV. STAT. ANN. § 2-313 (Nebraska);

7    •      NEV. REV. STAT. ANN. § 104.2313 (Nevada);

8    •      N.H. REV. STAT. ANN. § 382-A:2-313 New Hampshire);

9    •      N.J. STAT. ANN. § 12A:2-313 (New Jersey);

10   •      N.M. STAT. ANN. § 55-2-313 (New Mexico);

11   •      N.Y. U.C.C. LAW § 2-313 (New York);

12   •      N.C. GEN. STAT. ANN. § 25-2-313 (North Carolina);

13   •      N.D. CENT. CODE. ANN. § 41-02-30 (North Dakota);

14   •      OHIO REV. CODE ANN. § 1302.26 (Ohio);

15   •      OKLA. STAT. ANN. tit. 12A, § 2-313 (Oklahoma);

16   •      OR. REV. STAT. ANN. § 72.3130 (Oregon);

17   •      13 PA. STAT. AND CONST. STAT. ANN. § 2313 (Pennsylvania);

18   •      6A R.I. GEN. LAWS. ANN. § 2-313 (Rhode Island);

19   •      S.C. CODE ANN. § 36-2-313 (South Carolina);

20   •      S.D. CODIFIED LAWS § 57A-2-313 (South Dakota);

21   •      TENN. CODE ANN. § 47-2-313 (Tennessee);

22   •      TEX. BUS. & COM. CODE ANN. § 2.313 (Texas);

23   •      UTAH CODE ANN. § 70A-2-313 (Utah);

24   •      VT. STAT. ANN. tit. 9A, § 2-313 (Vermont);

25   •      VA. CODE ANN. § 8.2-313 (Virginia);

26   •      WASH. REV. CODE ANN. § 62A.2-313 (Washington);

27   •      W. VA. CODE ANN. § 46-2-313 (West Virginia);

28   •      WIS. STAT. ANN. § 402.313 (Wisconsin); and

- WYO. STAT. ANN. § 34.1-2.313 (Wyoming).

240. Apple expressly warranted that its AirPods Pro Gen 1 would provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs and Class Members, thereby giving rise to express warranties by Apple that the AirPods Pro Gen 1 conformed to the descriptions and affirmations of fact or promises.

241. These descriptions and affirmations of fact or promises made by Apple were made to induce Plaintiffs and Class Members to purchase Apple's AirPods Pro Gen 1.

242. Plaintiffs, in making their purchases of AirPods Pro Gen 1, relied on these descriptions, representations, affirmations of fact, or promises outlined above.

243. In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect actually produced unwanted sound in the form of crackling and static, thereby decreasing the functionality, usability, and value of Plaintiffs' and other similarly situated purchasers' headphones.

244. Plaintiffs and Class Members notified Apple of the breaches within a reasonable time, and/or were not required to do so because affording Apple a reasonable opportunity to cure its breach of warranty would have been futile. Apple also knew of the Audio Defect and yet chose to conceal it by warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while failing to comply with Apple's express warranty obligations and misrepresenting and suppressing communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*, (a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated misrepresentations to consumers regarding their purported rights and responsibilities in connection with any defects they experienced, and which conflicted with Apple's single buried website discussing the sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding

the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the foregoing conduct, as well as through arbitrary and unreasonable time limitations in its Service Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or refund Class Members' defective AirPods Pro Gen 1 headphones.

245.    As a direct and proximate cause of Apple's breach, Plaintiffs and Class Members bought AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s, did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value. Plaintiffs and Class Members have also incurred and will continue to incur costs for replacing their AirPods Pro Gen 1s.

246.    Plaintiffs and Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

### THIRD CLAIM FOR RELIEF
### VIOLATIONS OF THE IMPLIED WARRANTY LAWS OF 50 STATES
#### (by All Plaintiffs on Behalf of the Nationwide Class)

247.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

248.    Plaintiffs bring these breach of implied warranty claims pursuant to the laws of the states of residence of Class Members identified below to the extent they are not in true conflict with the laws of California, Florida, Illinois, New York, Ohio, Pennsylvania, and Texas.

249.    The following implied warranty laws are collectively referred to herein as the "Implied Warranty Laws," all of which provide for damages when goods are not merchantable and fit for the ordinary purpose for which they are sold.

250.    The Implied Warranty Laws include:

- ALA. CODE 1975 § 7-2-314 *et seq.* (Alabama);

1       •       ALASKA STAT. ANN. § 45.02.314 *et seq.* (Alaska)

2       •       ARIZ. REV. STAT. ANN. § 47-2314 *et seq.* (Arizona);

3       •       ARK. CODE ANN. § 4-2-314 *et seq.* (Arkansas);

4       •       CAL. CIV. CODE § 2314 *et seq.* (California);

5       •       COLO. REV. STAT. ANN. § 4-2-314 *et seq.* (Colorado);

6       •       CONN. GEN. STAT. ANN. § 42a-2-314 *et seq.* (Connecticut);

7       •       DEL. CODE ANN. Tit. 6, § 2-314 *et seq.* (Delaware);

8       •       D.C. CODE ANN. § 28:2-314 *et seq.* (District of Columbia);

9       •       FLA. STAT. ANN. § 672.314 *et seq.* (Florida);

10      •       GA. CODE ANN. § 11-2-314 *et seq.* (Georgia);

11      •       HAW. REV. STAT. ANN. § 490:2-314 *et seq.* (Hawaii);

12      •       IDAHO CODE ANN. § 28-2-314 *et seq.* (Idaho);

13      •       810 ILL. COMP. STAT. § 5/2-314 *et seq.* (Illinois);

14      •       IND. CODE ANN. § 26-1-2-314 *et seq.* (Indiana);

15      •       IOWA CODE ANN. § 554.2314 *et seq.* (Iowa);

16      •       KAN. STAT. ANN § 84-2-314 *et seq.* (Kansas);

17      •       KY. REV. STAT. ANN. § 355.2-314 *et seq.* (Kentucky);

18      •       LA. REV. STAT. art. 2520 *et seq.* (Louisiana);

19      •       ME. REV. STAT. ANN. Tit. 11, § 2-314 *et seq.* (Maine);

20      •       MD. COM. LAW CODE § 2-314 *et seq.* (Maryland);

21      •       MASS. GEN. LAWS ANN. Ch. 106, § 2-314 *et seq.* (Massachusetts);

22      •       MICH. COMP. LAWS § 440.2314 *et seq.* (Michigan);

23      •       MINN. STAT. ANN. § 336.314 *et seq.* (Minnesota);

24      •       MISS. CODE ANN. § 75-2-314 *et seq.* (Mississippi);

25      •       MO. ANN. STAT. § 400.2-314 *et seq.* (Missouri);

26      •       MONT. CODE ANN. § 30-2-314 *et seq.* (Montana);

27      •       NEB. REV. STAT. ANN. § 2-314 *et seq.* (Nebraska);

28      •       NEV. REV. STAT. ANN. § 104.2314 *et seq.* (Nevada);

1    • N.H. REV. STAT. ANN. § 382-A:2-314 *et seq.* (New Hampshire);

2    • N.J. STAT. ANN. § 12A:2-314 *et seq.* (New Jersey);

3    • N.M. STAT. ANN. § 55-2-314 *et seq.* (New Mexico);

4    • N.Y. U.C.C. LAW § 2-314 *et seq.* (New York);

5    • N.C. GEN. STAT. ANN. § 25-2-314 *et seq.* (North Carolina);

6    • N.D. CENT. CODE. ANN. § 41-02-31 *et seq.* (North Dakota);

7    • OHIO REV. CODE ANN. § 1302.27 *et seq.* (Ohio);

8    • OKLA. STAT. ANN. tit. 12A, § 2-314 *et seq.* (Oklahoma);

9    • OR. REV. STAT. ANN. § 72.3140 *et seq.* (Oregon);

10   • 13 PA. STAT. AND CONST. STAT. ANN. § 2314 *et seq.* (Pennsylvania);

11   • 6A R.I. GEN. LAWS. ANN. § 2-314 *et seq.* (Rhode Island);

12   • S.C. CODE ANN. § 36-2-314 *et seq.* (South Carolina);

13   • S.D. CODIFIED LAWS § 57A-2-314 *et seq.* (South Dakota);

14   • TENN. CODE ANN. § 47-2-314 *et seq.* (Tennessee);

15   • TEX. BUS. & COM. CODE ANN. § 2.314 *et seq.* (Texas);

16   • UTAH CODE ANN. § 70A-2-314 *et seq.* (Utah);

17   • VT. STAT. ANN. tit. 9A, § 2-314 *et seq.* (Vermont);

18   • VA. CODE ANN. § 8.2-314 *et seq.* (Virginia);

19   • WASH. REV. CODE ANN. § 62A.2-314 *et seq.* (Washington);

20   • W. VA. CODE ANN. § 46-2-314 *et seq.* (West Virginia);

21   • WIS. STAT. ANN. § 402.314 *et seq.* (Wisconsin); and

22   • WYO. STAT. ANN. § 34.1-2.314 *et seq.* (Wyoming).

23   251.    Apple provided Plaintiffs and all Class Members with an implied warranty that the

24   AirPods Pro Gen 1 and any parts thereof are merchantable and fit for the ordinary purposes for which

25   they were sold—as listening devices capable of delivering intelligible audio without static or other

26   interference, as well as having noise cancelling functionality. However, the AirPods Pro Gen 1 are not

27   fit for their ordinary purpose as headphones or as headphones with the particular purpose of noise

28   cancelling functionality because, *inter alia*, they suffer from an inherent Audio Defect at the point of sale

that causes "sound issues" as described herein—including, crackling or static sounds, loss of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

252.    The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes. As such, the AirPods Pro Gen 1 were not merchantable and not fit for their ordinary purpose for which they were sold.

253.    Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for audio use, as well as for the particular use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

254.    Contrary to Apple's applicable implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable headphones, much less the particular purpose of providing noise cancelling functionality in Active Noise Cancelling and Transparency Modes.

255.    Apple's actions, as complained of herein, breached the implied warranty that the headphones were of merchantable quality and fit for the ordinary use for which they were sold.

## FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(By All Plaintiffs on Behalf of the Nationwide Class
or, alternatively, by Plaintiffs on behalf of the California, Florida, Illinois, New York,
Ohio, Pennsylvania, and Texas Classes)**

256.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

257.    Plaintiffs and the Class Members conferred a benefit on Apple by purchasing the AirPods Pro Gen 1.

258.    Apple had knowledge that this benefit was conferred upon it.

259.    Apple retained that benefit under circumstances that make it unjust and inequitable for Apple to retain it without paying Plaintiffs and members of the Classes the value thereof. Specifically,

because of its wrongful acts and omissions, Apple charged a higher price for the AirPods Pro Gen 1 than the AirPods Pro Gen 1's true value given the Audio Defect, such that Apple obtained money which rightfully belongs to Plaintiffs and the Class Members.

260.    Apple has been unjustly enriched at the expense of Plaintiffs and the Class and its retention of this benefit under the circumstances would be inequitable.

261.    Plaintiffs seek an order requiring Apple to make restitution to them and the other members of the Class.

### *CALIFORNIA STATE LAW CLAIMS*

**FIFTH CLAIM FOR RELIEF**
**BREACH OF EXPRESS WARRANTY UNDER CALIFORNIA LAW**
**Cal. Unif. Com. Code § 2313**
**(By Plaintiffs Camacho and Schaefer on behalf of the California Class)**

262.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

263.    § 2313 of the California Uniform Commercial Code provides that:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

264.    Apple expressly warranted that its AirPods Pro Gen 1 would provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs

and Class Members, thereby giving rise to express warranties by Apple that the AirPods Pro Gen 1 conformed to the descriptions and affirmations of fact or promises.[46]

265.    These descriptions and affirmations of fact or promises made by Apple was made to induce Plaintiffs and Class Members to purchase Apple's AirPods Pro Gen 1.

266.    Plaintiffs Camacho and Schaefer, in making their purchases of AirPods Pro Gen 1, relied on these descriptions, representations, affirmations of fact, or promises outlined above.

267.    In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect actually produced unwanted sound in the form of crackling and static, thereby decreasing the functionality, usability, and value of Plaintiffs' and other similarly situated purchasers' headphones.

268.    Plaintiffs and Class Members notified Apple of the breaches within a reasonable time, and/or were not required to do so because affording Apple a reasonable opportunity to cure its breach of warranty would have been futile.

269.    Apple also knew of the Audio Defect and yet chose to conceal it by warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while failing to comply with Apple's express warranty obligations and misrepresenting and suppressing communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*, (a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated misrepresentations to consumers regarding their purported rights and responsibilities in connection with any defects they experienced, and which conflicted with Apple's single buried website discussing the sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing

---

[46] Apple's one-year manufacturing warranty is inapplicable to the defect at issue as the defect at issue is inherent in every AirPods Pro Gen 1 earpiece—and does not involve the occasional problem with materials and workmanship covered by Apple's one-year warranty. *See also supra* ¶¶25-29.

1  consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and

2  purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to

3  obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the

4  foregoing conduct, as well as through arbitrary and unreasonable time limitations in its sound Service

5  Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or

6  refund Class Members' defective AirPods Pro Gen 1 headphones.

7       270.    As a direct and proximate cause of Apple's breach, Plaintiffs and Class Members bought

8  AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s,

9  did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value.

10  Plaintiffs and Class Members have also incurred and will continue to incur costs for replacing their

11  AirPods Pro Gen 1s.

12       271.    Plaintiffs and Class Members are entitled to legal and equitable relief against Apple,

13  including damages, consequential damages, specific performance, attorney fees, costs of suit, and other

14  relief as appropriate.

15                          **SIXTH CLAIM FOR RELIEF**
                **BREACH OF IMPLIED WARRANTY UNDER CALIFORNIA LAW**
                           **Cal. Unif. Com. Code §§ 2314-2315**
16               **(By Plaintiffs Camacho and Schaefer on behalf of the California Class)**

17       272.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

18  fully set forth herein.

19       273.    Apple provided Plaintiffs and all Class Members with an implied warranty that the

20  AirPods Pro Gen 1 and any parts thereof are merchantable and fit for the ordinary purposes for which

21  they were sold—as listening devices capable of delivering intelligible audio without static or other

22  interference. Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular

23  purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and

24  expert knowledge about that Plaintiffs did not have.

25       274.    However, the AirPods Pro Gen 1 are not fit for their ordinary purpose as headphones or

26  as headphones with noise cancelling functionality because, *inter alia*, they suffer from an inherent Audio

27  Defect at the time of sale that causes them to malfunction. Specifically, the Audio Defect causes "sound

28  issues" as described herein—including, crackling or static sounds, loss of bass sound, increase in

background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

275. The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes. As such, the AirPods Pro Gen 1 were not merchantable and not fit for their ordinary purpose as headphones, much less as headphones with noise cancelling functionality.

276. Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for audio use, as well as for use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

277. Contrary to the applicable implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable headphones, much less ones with the particular purpose of noise cancelling functionality.

278. The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

279. Apple had reason to know that Plaintiffs and similarly situated consumers would rely on the seller's skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

280. Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiff and the other California Class Members. Among other things, Plaintiff and the other California Class Members had no meaningful

choice in determining any time limitations, the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and Plaintiff and the other California Class Members, and Apple knew of the defect at the time of sale.

281.    Apple's actions, as complained of herein, breached the implied warranty that the headphones were of merchantable quality and fit for the ordinary use for which they were sold.

282.    As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiff and the other California Class Members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**Cal. Civ. Code § 1790, *et seq.***
**(By Plaintiffs Camacho and Schaefer on behalf of the California Class)**

283.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

284.    Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class Members against Apple.

285.    At all relevant times, Apple was the manufacturer, distributor, warrantor and/or seller of the AirPods Pro Gen 1. Apple knew or should have known of the specific use for which the AirPods Pro Gen 1 were purchased.

286.    Apple provided Plaintiffs and Class Members with an implied warranty that the AirPods Pro Gen 1, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold—as listening devices capable of delivering intelligible audio without static or other interference. Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and expert knowledge about that Plaintiffs did not have.

287.    The AirPods Pro Gen 1, however, are not fit for their ordinary purpose because, *inter alia*, the AirPods Pro Gen 1 suffer from an inherent defect at the time of sale that causes them to malfunction. Specifically, the Audio Defect causes the AirPods Pro Gen 1 to experience "sound issues"—including,

crackling or static sounds, loss of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

288.    The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes.

289.    The AirPods Pro Gen 1 are not fit for the purpose of use as headphones or as headphones with noise cancelling capabilities because of the Audio Defect that causes "sound issues."

290.    Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable for use as headphones and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

291.    Contrary to Apple's implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable headphones, much less ones with noise cancelling functionality.

292.    The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

293.    Apple had reason to know that Plaintiffs and similarly situated consumers would rely on the seller's skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

294.    Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiff and the other California Class Members. Among other things, Plaintiff and the other California Class Members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Apple. A gross

1  disparity in bargaining power existed between Apple and Plaintiff and the other California Class

2  Members, and Apple knew of the defect at the time of sale.

3      295.    Apple's actions, as complained of herein, thus breached the Song-Beverly Consumer

4  Warranty Act as the AirPods Pro Gen 1s were not of merchantable quality or fit for the ordinary use for

5  which they were sold.

6      296.    As a direct and proximate result of Apple's breach of the implied warranty of

7  merchantability, Plaintiff and the other Florida Class Members have been damaged in an amount to be

8  proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or

9  diminution of value.

**EIGHTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**Cal. Civ. Code § 1750,** *et seq.*
**(By Plaintiffs Camacho and Schaefer on behalf of the California Class)**

12      297.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

13  fully set forth herein.

14      298.    Apple is a person as that term is defined in California Civil Code § 1761(c).

15      299.    Plaintiffs and the Class are "consumers" as that term is defined in California Civil Code

16  § 1761(d).

17      300.    Apple engaged in unfair and deceptive acts in violation of the CLRA by the practices

18  described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that

19  the AirPods Pro Gen 1 are inherently defective. These acts and practices violate, at a minimum, the

20  following sections of the CLRA:

21      (a)(2)   Misrepresenting the source, sponsorship, approval or certification of goods
              or services;

22      (a)(5)   Representing that goods or services have sponsorships, characteristics, uses,
23              benefits or quantities which they do not have, or that a person has a
              sponsorship, approval, status, affiliation or connection which he or she does
24              not have;

25      (a)(7)   Representing that goods or services are of a particular standard, quality, or
              grade, or that goods are of a particular style or model, if they are of
26              another; and

27      (a)(9)   Advertising goods and services with the intent not to sell them as
              advertised.

28  Cal. Civ. Code § 1770.

301.    Apple's unfair or deceptive acts or practices occurred repeatedly in Apple's trade or business and were capable of deceiving a substantial portion of the purchasing public.

302.    Apple knew or should have known of the Audio Defect due to its extensive internal, pre-release testing.

303.    Throughout the class period, Apple knew or should have known that the AirPods Pro Gen 1 were defective because of known "sound issues."

304.    Apple knew or should have known that its AirPods Pro Gen 1 were not fit for their intended use and would not provide consumers with the high-quality, immersive, pure, incredibly clear sound experience that it promised.

305.    In failing to disclose the Audio Defect at the time of sale, Apple has knowingly and intentionally concealed material facts.

306.    The facts misrepresented, concealed or not disclosed by Apple to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's AirPods Pro Gen 1 or pay a lesser price.

307.    The misrepresented, concealed or omitted facts concerning the Audio Defect are also material because they concern central functions of the product (*e.g.*, the AirPods Pro Gen 1's superior sound quality and ability to be used effectively in either noise cancelling or transparency modes).

308.    Finally, the facts concerning the Audio Defect that Apple concealed or omitted from its representations to customers are also material because they contradict affirmative representations about Apple's audio quality and functionality, as well as its ability to function as quality headphones in either noise cancelling or transparency modes.

309.    Had Plaintiffs and the Class known about the AirPods Pro Gen 1's Audio Defect that causes sound issues to manifest, they would not have purchased the AirPods Pro Gen 1 or would have paid less for them.

310.    Plaintiffs plausibly would have learned of the Audio Defect if Apple had disclosed it through its ubiquitous advertising or to the sales representatives at Apple Stores, authorized retailers, and carrier service retail locations. Plaintiffs and the other Class members' injuries were proximately caused by Apple's fraudulent and deceptive business practices.

311.    Apple's one-year manufacturing warranty is inapplicable to the defect at issue as the defect at issue is inherent in every AirPods Pro Gen 1 earpiece—and does not involve the occasional problem with materials and workmanship covered by Apple's one-year warranty.[47] Indeed, AirPods Gen 1 have an inherent defect at the time of purchase, which consumers had no reason to suspect as Apple did not provide that information at the point of purchase. Here, since the AirPods Pro Gen 1 were inherently defective at purchase, they were worth less than Plaintiffs and similarly situated class members paid at the time of purchase. Moreover, if Apple's one-year limited warranty did apply, which it does not, it would not alleviate the harm suffered because at best under the one-year limited warranty Apple would provide a replacement product—and here such replacement would not resolve Plaintiffs' or class members' claims as any replacement would suffer from the same defect as the original device.

312.    In fact, because AirPods Pro Gen 1 contain an inherent defect known to create sound issues, many consumers have had multiple devices with sound issues after replacement from Apple under its Service Program or under its one-year warranty. As a result, neither Apple's Service Program nor its one-year warranty address or resolve Plaintiffs' and class members alleged harm. Apple has made no appropriate correction because the inherently defective devices cannot be repaired or replaced because such repair and replacement would not resolve the inherent defect responsible for the sound quality issues that Apple admits exist with Apple AirPods Gen 1. It is also irrelevant that Apple extended its Service Program because the Service Program only allowed for replacement with a device with the same inherent defect.

313.    Plaintiffs had no basis to discover the inherent defect in AirPods Pro Gen 1 because Apple did not indicate that the AirPods Pro Gen 1 were defective at point of purchase, and did not send Plaintiffs or Class Members any notice despite having the ability to contact most purchasers through their Apple accounts or other means.[48] Apple did not do any publication notice beyond a passive web page that required consumers to conduct their own research to find. That passive web support page also only applied to devices manufactured during a certain time period when the defect is inherent to all AirPods

[47] https://perma.cc/8AM4-KJ3Z (last visited Oct. 23, 2024).
[48] https://perma.cc/H6JM-TTB3 (Last visited Oct. 23, 2024).

Pro Gen 1 headphones. As such, there is no reason that Plaintiffs or Class Members should have discovered the defect sooner. Also, even if Plaintiffs and Class Members noticed sound issues it was still unreasonable for them to understand that the sound issues resulted from an inherent defect in the AirPods Pro Gen 1 that existed since the time of purchase, or that the problems with the AirPods Pro Gen 1 could serve as a legal basis for filing suit against Apple.

314.    Apple has been provided notice of its violations of the CLRA pursuant to California Civil Code § 1782(a), but Plaintiffs have not received their requested relief. *See* Exhibit 3. Therefore, Plaintiffs seek injunctive relief, damages, and reasonable attorney's fees under the CLRA.  Additionally, Plaintiffs have attached a Declaration of Venue as to their CLRA claims as required under California Civil Code § 1780.  *See* Exhibit 4 (Declaration of Venue).

315.    Pursuant to California Civil Code § 1780, Plaintiffs seek an order enjoining Apple from the unlawful practices described above and a declaration that Apple's conduct violates the Consumers Legal Remedies Act.

316.    Under the CLRA, Plaintiffs and the other Class Members are entitled to and therefore seek equitable relief as well as actual and punitive damages and attorneys' fees and costs.

## NINTH CLAIM FOR RELIEF
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
#### Cal. Bus. & Prof. Code § 17200, *et seq.*
#### (By Plaintiffs Camacho and Schaefer on behalf of the California Class)

317.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

318.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

319.    Apple has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members the Audio Defect (and the costs and diminished value of the AirPods Pro Gen 1 as a result of Apple's conduct). Apple knew or reasonably should have known about the Audio Defect throughout the class period. Apple should have disclosed information concerning

the Audio Defect in its ubiquitous advertising and through its authorized retailers. Apple was in a superior position to know the true facts related to the Audio Defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the Audio Defect.

320.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Audio Defect, while misrepresenting and suppressing other material facts from Plaintiffs and the Class Members, Apple violated the UCL, and caused injuries to Plaintiffs and the Class Members. The misrepresentations, omissions, and acts of concealment by Apple pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers. Had Apple disclosed the Audio Defect in its ubiquitous AirPods Pro Gen 1 advertising or through its Apple Stores or authorized retailers, Plaintiffs and Class Members would have learned of the Audio Defect and would have acted differently. Had Plaintiffs and Class Members known about the Audio Defect, they would not have purchased the AirPods Pro Gen 1 headphones or would have paid less for them.

321.    The injuries suffered by Plaintiffs and Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class Members should have reasonably avoided.

322.    Apple's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313.

323.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Apple, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**TENTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(By Plaintiffs Camacho and Schaefer on behalf of the California Class)**

324.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

325.    The California False Advertising Law ("FAL") states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to

induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

326.    Apple caused to be made or disseminated throughout the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Apple, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

327.    Apple has violated the FAL because the omissions regarding the functionality of and the Audio Defect in its AirPods Pro Gen 1 as set forth in this Complaint were material and likely to deceive a reasonable consumer. Examples of which include, but are not limited to, Apple's statements regarding the Defective AirPods Pro Gen 1 usefulness and functionality as headphones with superior sound quality and noise cancelling capabilities, which are false misleading and confusing to the public because, in fact, AirPods Pro Gen 1 contained an Audio Defect that caused the headphones to experience "sound issues." By misrepresenting, omitting or concealing information concerning the Audio Defect when making these statements (and others in its ubiquitous advertising and at its authorized retailers), Apple's statements were untrue or misleading.

328.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Apple's unfair, unlawful, and/or deceptive practices. In purchasing their AirPods Pro Gen 1, Plaintiffs and the other Class Members relied on the omissions of Apple with respect to the reliability and functionality of the AirPods Pro. Apple's representations were untrue because the AirPods Pro Gen 1 were manufactured and sold with the Audio Defect. Had Plaintiffs and the other Class Members known this, they would not have purchased their AirPods Pro Gen 1 and/or paid as much for them. Accordingly, Plaintiffs and the other Class Members overpaid for their AirPods Pro Gen and did not receive the benefit of their bargain.

329.    All of the wrongful conduct alleged herein occurred in the conduct of Apple's business.

330.    Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class Members any money Apple acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

### *FLORIDA STATE LAW CLAIMS*

### ELEVENTH CLAIM FOR RELIEF
#### BREACH OF EXPRESS WARRANTY UNDER FLORIDA LAW
#### F.S.A. § 672.313
#### (Plaintiff Nykerk on Behalf of the Florida Class)

331.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

332.    § 672.313 of the Florida Commercial Relations Code provides that:

(a) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

333.    Apple expressly warranted that AirPods Pro Gen 1 provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs and Class Members,

thereby giving rise to express warranties by Apple that the AirPods Pro Gen 1 conformed to the descriptions and affirmations of fact or promises. [49]

334.    These descriptions and affirmations of fact or promises made by Apple was made to induce Plaintiff and Class Members to purchase Apple's AirPods Pro Gen 1.

335.    Plaintiff Nykerk, in making his purchase of AirPods Pro Gen 1, relied on these descriptions, representations, affirmations of fact, or promises outlined above.

336.    In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect actually produced unwanted sound in the form of crackling and static, thereby decreasing the functionality, usability, and value of Plaintiff Nykerk's and other similarly situated purchasers' headphones.

337.    Apple has been notified of the breaches within a reasonable time, and/or Plaintiff was not required to do so because affording Apple a reasonable opportunity to cure its breach of warranty would have been futile. *See* Exhibit 3. Apple also knew of the Audio Defect and yet chose to conceal it by warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while failing to comply with Apple's express warranty obligations and misrepresenting and suppressing communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*, (a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated misrepresentations to consumers regarding their purported rights and responsibilities in connection with any defects they experienced, and which conflicted with Apple's single buried website discussing the sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing

---

[49] Apple's one-year manufacturing warranty is inapplicable to the defect at issue as the defect at issue is inherent in every AirPods Pro Gen 1 earpiece—and does not involve the occasional problem with materials and workmanship covered by Apple's one-year warranty. *See also supra* ¶¶25-29.

consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the foregoing conduct, as well as through arbitrary and unreasonable time limitations in its sound Service Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or refund Class Members' defective AirPods Pro Gen 1 headphones.

338.    As a direct and proximate cause of Apple's breach, Plaintiff and Class Members bought AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s, did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs for replacing their AirPods Pro Gen 1s.

339.    Plaintiff and Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

**TWELFTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY UNDER FLORIDA LAW**
**F.S.A. §§ 672.314-672.315**
**(In the alternative, by Plaintiff Nykerk on Behalf of the Florida Class)**

340.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

341.    Apple provided Plaintiff Nykerk and all Florida Class Members with an implied warranty that the AirPods Pro Gen 1 and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold—as listening devices capable of delivering intelligible audio without static or other interference. Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and expert knowledge about that Plaintiffs did not have.

342.    However, the AirPods Pro Gen 1 are not fit for their ordinary purpose as headphones or for the particular purpose as headphones with noise cancelling functionality because they suffer from an inherent Audio Defect at the time of sale that causes them to malfunction. Specifically, the Audio Defect causes the AirPods Pro Gen 1 to experience "sound issues"—including, crackling or static sounds, loss

of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

343. The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes. As such, the AirPods Pro Gen 1 were not merchantable and not fit for their ordinary purpose as headphones, much less as headphones with noise cancelling functionality.

344. Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for audio use, as well as for use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

345. Contrary to the applicable implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable headphones, much less ones with noise cancelling functionality.

346. Apple's actions, as complained of herein, breached the implied warranty that the headphones were of merchantable quality and fit for such use.

347. The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

348. Apple had reason to know that Plaintiff Nykerk and similarly situated consumers would rely on the seller's skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

349. Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiff and the other Florida Class

1    Members. Among other things, Plaintiff and the other Florida Class Members had no meaningful choice

2    in determining any time limitations, the terms of which unreasonably favored Apple. A gross disparity

3    in bargaining power existed between Apple and Plaintiff and the other Florida Class Members, and Apple

4    knew of the defect at the time of sale.

5        350.    As a direct and proximate result of Apple's breach of the implied warranty of

6    merchantability, Plaintiff and the other Florida Class Members have been damaged in an amount to be

7    proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or

8    diminution of value.

9                    **THIRTEENTH CLAIM FOR RELIEF**
             **Florida Deceptive and Unfair Trade Practices ("FDUTPA")**
10                  **West's F.S.A. §§ 501.201-501.213**
             **(By Plaintiff Nykerk, individually and on behalf of the Florida Class)**
11

12       351.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though

      fully set forth herein.

13
      352.    Apple sells products and performs services in Florida.
14

15       353.    Plaintiff and Florida Class Members are "consumers" as defined by F.S.A § 501.203(7).

16       354.    Apple's conduct as described herein was in the conduct of "trade or commerce" as defined

      by F.S.A. § 501.203(8).
17

18       355.    As alleged above, Apple made direct and explicit promises and statements to consumers

19    that their AirPods Pro Gen 1 would provide consumers "superior sound quality" that "cuts out the noise"

20    for an "immersive noise-canceling experience," and overall "rich, immersive listening experience."

21    Through active noise cancellation and transparency modes, Apple promised that both modes would block

      unwanted sound produced internally, externally or both, and would produce "pure, incredibly clear
22
      sound." Plaintiff purchased Apple's AirPods Pro Gen 1 because of those representations.
23

24       356.    Under Florida law, "[u]nfair methods of competition, unconscionable acts or practices,

25    and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared

      unlawful." F.S.A. § 501.204(1).
26

27       357.    Apple engaged in unfair and/or deceptive trade practices in the conduct of their business,

28    in violation of F.S.A. § 501.204(1) by:

---

FIRST AMENDED CLASS ACTION COMPLAINT, 5:24-cv-07588-EKL

a. knowingly and fraudulently misrepresenting the sound quality and listening experience that the AirPods Pro Gen 1 would provide consumers and the features and characteristics that the AirPods Pro Gen 1 possessed;

b. knowingly and intentionally selling a defective product;

c. knowingly and intentionally omitting, suppressing, and concealing the material fact from Plaintiff and Florida Class Members that the AirPods Pro Gen 1 were inherently defective;

d. knowing that the same Audio Defect present in AirPods Pro Gen 1 manufactured after the cutoff date for the sound issues described on the support page discussing the Service Program;

e. intentionally choosing not to publicize the sound issues discussed on the support page describing the Service Program; and

f. intentionally and willfully leading consumers with AirPods Pro Gen 1 manufactured before the cut-off, when, in fact, Apple knowingly provided an equally defective AirPods Pro Gen 1 to the few who qualified; and

g. intentionally and willfully selecting an arbitrary cutoff date for consumer's eligibility to obtain replacements for their defective AirPods Pro Gen 1 under Apple's Service Program.

358.    Apple's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the quality of the experience its AirPods Pro Gen 1 would provide consumers and whether its products were fit for the ordinary purposes for which they were sold.

359.    Indeed, Plaintiff reasonably relied on Apple's representations and decided to purchase Apple AirPods Pro Gen 1 because of the high-quality sound experience Apple promised, including their ability to block unwanted sound produced internally, externally or both, through its ANC and/or transparency modes. Accordingly, Plaintiff was deceived by Apple's misrepresentations and omissions.

360.    Apple intended to mislead Plaintiff and Florida Class Members and induce them to rely on its misrepresentations and omissions to purchase AirPods Pro Gen 1.

361.    Had Apple disclosed that its AirPods Pro Gen 1 contained an Audio Defect known to cause sound issues, such as crackling, static, interruption and loss of sound, Plaintiff and Florida Class Members would not have purchased or would have paid substantially less for their AirPods Pro Gen 1.

362.    The above acts by Apple are "unfair" as they offend public policy, are immoral, unethical, oppressive, unscrupulous, and/or caused substantial injury to Plaintiff and Florida Class Members that they could not reasonably avoid. The injury caused to Plaintiff and Florida Class Members outweighed any benefits to consumers or to competition.

363.    Apple acted willfully, intentionally, knowingly, and maliciously to violate FDUTPA, and recklessly disregarded Plaintiff and Florida Class Members' rights.

364.    As a direct and proximate result of Apple's unfair, unlawful, and deceptive practices, Plaintiff and Florida Class Members suffered injury and/or damages, including, but not limited to the loss of money or property, for having purchased AirPods Pro Gen 1 that they otherwise would not have bought, overpaying for their AirPods Pro Gen 1, and incurring costs for replacing their AirPods Pro Gen 1.

365.    Pursuant to F.S.A § 501.211, Plaintiff and Florida Class Members seek all monetary and nonmonetary relief allowed by law, including actual damages, and reasonable attorneys' fees and costs.

### *ILLINOIS STATE LAW CLAIMS*

**FOURTEENTH CLAIM FOR RELIEF**
**BREACH OF EXPRESS WARRANTY UNDER ILLINOIS LAW**
**Ill. Unif. Com. Code § 5/2-313**
**(Plaintiff Ambrozic on Behalf of the Illinois Class)**

366.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

367.    § 5/2-313 of Illinois' Uniform Commercial Code provides that:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

368.    Apple expressly warranted that AirPods Pro Gen 1 provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs and Class Members, thereby giving rise to express warranties that the AirPods Pro Gen 1 conformed to the descriptions and affirmations of fact or promises. [50]

369.    These descriptions and affirmations of fact or promises made by Apple was made to induce Plaintiff and Class Members to purchase Apple's AirPods Pro Gen 1.

370.    Plaintiff Ambrozic, in making his purchase of AirPods Pro Gen 1, relied on these descriptions, representations, affirmations of fact, or promises outlined above.

371.    In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect actually produced unwanted sound in the form of crackling and static, thereby decreasing the functionality, usability, and value of Plaintiff Ambrozic and other similarly situated purchasers' headphones.

372.    Apple has been notified of the breaches within a reasonable time, and/or Plaintiff was not required to do so because affording Apple a reasonable opportunity to cure its breach of warranty would have been futile. *See* Exhibit 3. Apple also knew of the Audio Defect and yet chose to conceal it by warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while failing to comply with Apple's express warranty obligations and misrepresenting and suppressing communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*,

---

[50] Apple's one-year manufacturing warranty is inapplicable to the defect at issue as the defect at issue is inherent in every AirPods Pro Gen 1 earpiece—and does not involve the occasional problem with materials and workmanship covered by Apple's one-year warranty. *See also supra* ¶¶25-29.

(a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated misrepresentations to consumers regarding their purported rights and responsibilities in connection with any defects they experienced, and which conflicted with Apple's single buried website discussing the sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the foregoing conduct, as well as through arbitrary and unreasonable time limitations in its sound Service Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or refund Class Members' defective AirPods Pro Gen 1 headphones.

373.    As a direct and proximate cause of Apple's breach, Plaintiff and Class Members bought AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s, did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs for replacing their AirPods Pro Gen 1s.

374.    Plaintiff and Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

**FIFTEENTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY UNDER ILLINOIS LAW**
**Ill. Unif. Com. Code §§ 5/2-314-5/2-315**
**(By Plaintiff Ambrozic on Behalf of the Illinois Class)**

375.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

376.    Apple provided Plaintiff Ambrozic and all Illinois Class Members with an implied warranty that the AirPods Pro Gen 1 and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold—as listening devices capable of delivering intelligible audio without

static or other interference. Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and expert knowledge about that Plaintiffs did not have.

377.    However, the AirPods Pro Gen 1 are not fit for their ordinary purpose as headphones because they suffer from an inherent Audio Defect at the time of sale that causes them to malfunction. Specifically, the Audio Defect causes "sound issues" as described herein—including, crackling or static sounds, loss of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

378.    The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes. As such, the AirPods Pro Gen 1 were not merchantable and not fit for their ordinary purpose as headphones.

379.    Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for audio use, as well as for use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

380.    Contrary to the applicable implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable headphones, much less ones with noise cancelling functionality.

381.    Apple's actions, as complained of herein, breached the implied warranty that the headphones were of merchantable quality and fit for the ordinary use for which they were sold.

382.    The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

383.    Apple had reason to know that Plaintiff Ambrozic and similarly situated consumers would rely on the seller's skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

384.    Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiff and the other Illinois Class Members. Among other things, Plaintiff and the other Illinois Class Members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and Plaintiff and the other Illinois Class Members, and Apple knew of the defect at the time of sale.

385.    As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiff and the other Illinois Class Members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**SIXTEENTH CLAIM FOR RELIEF**
**Illinois Consumer Fraud and Deceptive Business Practices ("ICFA")**
**815 ILCS 505/1, *et seq.***
**(By Plaintiff Ambrozic, individually and on behalf of the Illinois Class)**

386.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

387.    Apple sells products and performs services in Illinois.

388.    Apple is a "person" as defined by 815 Ill. Comp. Stat. §§ 505/1(c).

389.    Plaintiff and Illinois Class Members are "consumers" as defined by 815 Ill. Comp. Stat. §§ 505/1(e).

390.    Apple's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

391.    Plaintiff has a private right of action under 815 Ill. Comp. Stat. § 505/10a.

392.    As alleged above, Apple made direct and explicit promises and statements to consumers that their AirPods Pro Gen 1 would provide consumers "superior sound quality" that "cuts out the noise"

for an "immersive noise-canceling experience," and overall "rich, immersive listening experience." Through active noise cancellation and transparency modes, Apple promised that both modes would block unwanted sound produced internally, externally or both, and would produce "pure, incredibly clear sound." Plaintiff purchased Apple's AirPods Pro Gen 1 because of those representations.

393.    The ICFA prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. § 505/2.

394.    Apple engaged in unfair and/or deceptive trade practices in the conduct of their business, in violation of 815 Ill. Comp. Stat. § 505/2, by:

- knowingly and fraudulently misrepresenting the sound quality and listening experience that the AirPods Pro Gen 1 would provide consumers and the features and characteristics that the AirPods Pro Gen 1 possessed;

- knowingly and intentionally selling a defective product;

- knowingly and intentionally omitting, suppressing, and concealing the material fact from Plaintiff and Illinois Class Members that the AirPods Pro Gen 1 were inherently defective.

395.    The ICFA also prohibits "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. § 505/2.

396.    Apple engaged in unfair or deceptive acts in the conduct of their business, in violation of 815 Ill. Comp. Stat. § 505/2 by use of the following practices prohibited by the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a):

Case 5:24-cv-07588-NW     Document 39     Filed 02/06/25     Page 80 of 110

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have (§ 510/2(a)(5));

- Representing that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another (§ 510/2(a)(7));

- Advertising goods or services with intent not to sell them as advertised (§ 510/2(a)(9));

- Engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding (§ 510/2(a)(12)).

397.    Apple's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the quality of the experience its AirPods Pro Gen 1 would provide consumers and whether its products were fit for the ordinary purposes for which they were sold.

398.    Indeed, Plaintiff reasonably relied on Apple's representations and decided to purchase Apple AirPods Pro Gen 1 because of the high-quality sound experience Apple promised, including their ability to block unwanted sound produced internally, externally or both, through its ANC and/or transparency modes. Accordingly, Plaintiff was deceived by Apple's misrepresentations and omissions.

399.    Apple intended to mislead Plaintiff and Illinois Class Members and induce them to rely on its misrepresentations and omissions to purchase AirPods Pro Gen 1.

400.    Had Apple disclosed that its AirPods Pro Gen 1 contained an Audio Defect known to cause sound issues, such as crackling, static, interruption and loss of sound, Plaintiff and Illinois Class Members would not have purchased or would have paid substantially less for their AirPods Pro Gen 1.

401.    The above acts by Apple are "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or caused substantial injury to Plaintiff and Illinois Class Members that they could not reasonably avoid. The injuries suffered by Plaintiffs and Illinois Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition.

402.    Apple acted intentionally, knowingly, and maliciously to violate ICFA, and recklessly disregarded Plaintiff and Illinois Class Members' rights.

403.    As a direct and proximate result of Apple's unfair, unlawful, and deceptive practices, Plaintiff and Illinois Class Members suffered injury and/or damages, including, but not limited to the loss of money or property, for having purchased AirPods Pro Gen 1 that they otherwise would not have

79
FIRST AMENDED CLASS ACTION COMPLAINT, 5:24-cv-07588-EKL

bought, overpaying for their AirPods Pro Gen 1, and incurring costs for replacing their AirPods Pro Gen 1.

404.    Pursuant to 815 Ill. Comp. Stat. § 505/10a, Plaintiff and Illinois Class Members seek all monetary and nonmonetary relief allowed by law, including damages, restitution, punitive damages, and reasonable attorneys' fees and costs.

## *NEW YORK STATE LAW CLAIMS*

### SEVENTEENTH CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY UNDER NEW YORK LAW
### N.Y. Unif. Com. Code § 2-313
### (Plaintiffs Adair and Kadyrov on Behalf of the New York Class)

405.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

406.    § 2-313 of New York's Uniform Commercial Code provides that:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

407.    Apple expressly warranted that AirPods Pro Gen 1 provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs and Class Members,

1  thereby giving rise to express warranties that the AirPods Pro Gen 1 conformed to the descriptions and

2  affirmations of fact or promises. [51]

3  408.    These descriptions and affirmations of fact or promises made by Apple was made to

4  induce Plaintiffs and Class Members to purchase Apple's AirPods Pro Gen 1.

5  409.    Plaintiffs Adair and Kadyrov, in making their respective purchases of AirPods Pro Gen 1,

6  relied on these descriptions, representations, affirmations of fact, or promises outlined above.

7  410.    In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did

8  not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an

9  inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect

10  actually produced unwanted sound in the form of crackling and static, thereby decreasing the

11  functionality, usability, and value of Plaintiffs Adair and Kadyrov and other similarly situated purchasers'

12  headphones.

13  411.    Apple has been notified of the breaches within a reasonable time, and/or Plaintiffs were

14  not required to do so because affording Apple a reasonable opportunity to cure its breach of warranty

15  would have been futile. *See* Exhibit 3. Apple also knew of the Audio Defect and yet chose to conceal it

16  by warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while

17  failing to comply with Apple's express warranty obligations and misrepresenting and suppressing

18  communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*,

19  (a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods

20  Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated

21  misrepresentations to consumers regarding their purported rights and responsibilities in connection with

22  any defects they experienced, and which conflicted with Apple's single buried website discussing the

23  sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding

24  the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when

25  in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing

26

27

28  [51] Apple's one-year manufacturing warranty is inapplicable to the defect at issue as the defect at issue is inherent in every AirPods Pro Gen 1 earpiece—and does not involve the occasional problem with materials and workmanship covered by Apple's one-year warranty. *See also supra* ¶¶25-29.

consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the foregoing conduct, as well as through arbitrary and unreasonable time limitations in its sound Service Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or refund Class Members' defective AirPods Pro Gen 1 headphones.

412.     As a direct and proximate cause of Apple's breach, Plaintiffs and Class Members bought AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s, did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value. Plaintiffs and Class Members have also incurred and will continue to incur costs for replacing their AirPods Pro Gen 1s.

413.     Plaintiffs and Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

**EIGHTEENTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY UNDER NEW YORK LAW**
**N.Y. Unif. Com. Code §§ 2-314-2-315**
**(In the alternative, by Plaintiffs Adair and Kadyrov on Behalf of the New York Class)**

414.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

415.     Apple provided Plaintiffs Adair and Kadyrov and all New York Class Members with an implied warranty that the AirPods Pro Gen 1 and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold—as listening devices capable of delivering intelligible audio without static or other interference.  Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and expert knowledge about that Plaintiffs did not have..

416.     However, the AirPods Pro Gen 1 are not fit for their ordinary purpose as headphones because they suffer from an inherent Audio Defect that causes "sound issues" as described herein—

including, crackling or static sounds, loss of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

417.    As such, the AirPods Pro Gen 1 were not merchantable and not fit for their ordinary purpose as headphones, much less as headphones with noise cancelling functionality.

418.    Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for audio use, as well as for use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

419.    Contrary to the applicable implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable headphones, much less ones with noise cancelling functionality.

420.    Apple's actions, as complained of herein, breached the implied warranty that the headphones were of merchantable quality and fit for such use.

421.    The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

422.    Apple had reason to know that Plaintiffs Adair and Kadyrov and similarly situated consumers would rely on the seller's skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

423.    Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiffs and the other New York Class Members. Among other things, Plaintiffs and the other New York Class Members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Apple.

A gross disparity in bargaining power existed between Apple and Plaintiffs and the other New York Class Members, and Apple knew of the defect at the time of sale.

424.   As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiffs and the other New York Class Members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**NINETEENTH CLAIM FOR RELIEF**
**New York Deceptive Trade Practices Act ("GBL")**
**N.Y. Gen. Bus. Law § 349**
**(By Plaintiffs Adair and Kadyrov, on behalf of themselves and the New York Class)**

425.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

426.   Apple conducts business, trade, or commerce in New York as required by N.Y. GBL § 349(a).

427.   Apple engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, including:

- knowingly and fraudulently misrepresenting the sound quality and listening experience that the AirPods Pro Gen 1 would provide consumers and the features and characteristics that the AirPods Pro Gen 1 possessed;

- knowingly and intentionally selling a defective product;

- knowingly and intentionally omitting, suppressing, and concealing the material fact from Plaintiff and New York Class Members that the AirPods Pro Gen 1 were inherently defective.

428.   Apple's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the quality of the experience its AirPods Pro Gen 1 would provide consumers and whether its products were fit for the ordinary purposes for which they were sold.

429.   Indeed, Plaintiffs and New York Class Members reasonably relied on Apple's representations and decided to purchase Apple AirPods Pro Gen 1 because of the high-quality sound experience Apple promised, including their ability to block unwanted sound produced internally, externally or both, through its ANC and/or transparency modes. Accordingly, Plaintiffs and New York Class Members were deceived by Apple's misrepresentations and omissions.

430.    Apple acted intentionally, knowingly, and maliciously to violate New York's GBL, and recklessly disregarded Plaintiffs and New York Class Members' rights.

431.    As a direct and proximate result of Apple's unfair, unlawful, and deceptive practices, Plaintiffs and New York Class Members suffered injury and/or damages, including, but not limited to the loss of money or property, for having purchased AirPods Pro Gen 1 that they otherwise would not have bought, overpaying for their AirPods Pro Gen 1, and incurring costs for replacing their AirPods Pro Gen 1.

432.    Apple's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the many New Yorkers that purchased Apple's defective AirPods Pro Gen 1.

433.    The above deceptive and unlawful practices and acts by Apple caused substantial injury to Plaintiffs and New York Class Members that they could not reasonably avoid.

434.    Plaintiffs and New York Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, and attorneys' fees and costs.

***OHIO STATE LAW CLAIMS***

<u>**TWENTIETH CLAIM FOR RELIEF**</u>
**BREACH OF EXPRESS WARRANTY UNDER OHIO LAW**
**Ohio Revised Code § 1302.26**
**(In the alternative, by Plaintiff Rodgers on Behalf of the Ohio Class)**

435.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

§ 1302.26 of the Ohio Revised Code provides that:

(A) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(B) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

436.    Apple expressly warranted that AirPods Pro Gen 1 provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs and Class Members, thereby giving rise to express warranties that the AirPods Pro Gen 1 conformed to the descriptions and affirmations of fact or promises.

437.    These descriptions and affirmations of fact or promises made by Apple was made to induce Plaintiff and Class Members to purchase Apple's AirPods Pro Gen 1.

438.    Plaintiff Rodgers, in making her purchase of AirPods Pro Gen 1, relied on these descriptions, representations, affirmations of fact, or promises outlined above.

439.    In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an

inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect actually produced unwanted sound in the form of crackling and static, thereby decreasing the functionality, usability, and value of Plaintiff Rodgers' and other similarly situated purchasers' headphones.

440.    Apple has been notified of the breaches within a reasonable time, and/or Plaintiff was not required to do so because affording Apple a reasonable opportunity to cure its breach of warranty would have been futile. *See* Exhibit 3. Apple also knew of the Audio Defect and yet chose to conceal it by warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while failing to comply with Apple's express warranty obligations and misrepresenting and suppressing communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*, (a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated misrepresentations to consumers regarding their purported rights and responsibilities in connection with any defects they experienced, and which conflicted with Apple's single buried website discussing the sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the foregoing conduct, as well as through arbitrary and unreasonable time limitations in its sound Service Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or refund Class Members' defective AirPods Pro Gen 1 headphones.

441.    As a direct and proximate cause of Apple's breach, Plaintiff and Class Members bought AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s, did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs for replacing their AirPods Pro Gen 1s.

442.    Plaintiff and Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

### TWENTY-FIRST CLAIM FOR RELIEF
### BREACH OF IMPLIED WARRANTY UNDER OHIO LAW
### Ohio Revised Code §§ 1302.27-1302.28
### (In the alternative, by Plaintiff Rodgers on Behalf of the Ohio Class)

443.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

444.    Apple provided Plaintiff Rodgers and the Ohio Class Members with an implied warranty that the AirPods Pro and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold—as listening devices capable of delivering intelligible audio without static or other interference. Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and expert knowledge about that Plaintiffs did not have.

445.    However, the AirPods Pro are not fit for their ordinary purpose as headphones or as headphones with noise cancelling functionality because they suffer from an inherent Audio Defect at the time of sale that causes them to malfunction. Specifically, the Audio Defect causes the AirPods Pro Gen 1 to experience "sound issues" as described herein—including, crackling or static sounds, loss of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

446.    The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes. As such, the AirPods Pro were incapable of being used as headphones, much less as headphones with noise cancelling functionality.

447.    Apple impliedly warranted that the AirPods Pro were of merchantable quality and fit for audio use, as well as for use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

448. Contrary to the applicable implied warranties, the AirPods Pro at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Rodgers and the Ohio Class Members with reliable headphones, much less ones with noise cancelling functionality.

449. Apple's actions, as complained of herein, breached the implied warranty that the AirPods Pro were of merchantable quality and fit for such use.

450. The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

451. Apple had reason to know that Plaintiff and similarly situated consumers would rely on its skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

452. Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiff and the other Ohio Class Members. Among other things, Plaintiff and the other Ohio Class Members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and Plaintiff and the other Ohio Class Members, and Apple knew of the defect at the time of sale.

453. As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiff and the other Ohio Class Members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**TWENTY-SECOND CLAIM FOR RELIEF**
**Ohio Consumer Sales Practices Act ("OCSPA")**
**O.R.C. § 1345 *et seq.***
**(By Plaintiff Rodgers, individually and on behalf of the Ohio Class)**

454. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

455.    This count is brought pursuant to Ohio's Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345, *et seq*. At all relevant times hereto, including at all times during the transaction between Plaintiff and Apple, and the consumer transactions between the putative class members and Apple, Plaintiff and each of the putative class members were "consumers" as defined in the OCSPA, and the transactions were "consumer transactions" as defined in the OCSPA. Ohio Rev. Code § 1345.01.

456.    At all relevant times hereto, Apple was a "supplier" as defined in the OCSPA.

457.    In connection with a consumer transaction (i.e., advertising, offering, and/or selling sold goods or services in the form of the AirPods Pro Gen 1) in Ohio, Apple acted as a supplier and committed unfair, deceptive, and/or unconscionable acts directly or indirectly affecting the people of Ohio.

458.    As alleged above, Apple made direct and explicit promises and statements to consumers that their AirPods Pro Gen 1 would provide consumers "superior sound quality" that "cuts out the noise" for an "immersive noise-canceling experience," and overall "rich, immersive listening experience." Through active noise cancellation and transparency modes, Apple promised that both modes would block unwanted sound produced internally, externally or both, and would produce "pure, incredibly clear sound." Plaintiff purchased Apple's AirPods Pro Gen 1 because of those representations.

459.    Apple continued to promote and advertise its AirPods Pro Gen 1 as providing, *inter alia*, "superior sound quality," while knowing that its AirPods Pro Gen 1 contained an Audio Defect that caused static and cracking sounds and a poor-quality sound experience.

460.    Specifically, while operating in Ohio, Apple violated Ohio Rev. Code §1345.01(A) by engaging in deceptive trade practices, including, but not limited to the following:

- knowingly and fraudulently misrepresenting the sound quality and listening experience that the AirPods Pro Gen 1 would provide consumers and the features and characteristics that the AirPods Pro Gen 1 possessed;

- knowingly and intentionally selling a defective product;

- knowingly and intentionally omitting, suppressing, and concealing the material fact from Plaintiff and Ohio Class Members that the AirPods Pro Gen 1 were inherently defective.

461.    The OCSPA permits a class action if Apple violated a "rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based." O.R.C. 1345.09.

462.    Apple violated the following rule: "[i]t shall be a deceptive act or practice in connection with a consumer transaction for a supplier to … Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact[.]" O.A.C. 109:4-3-02.

463.    Apple's misrepresentations and omissions were material because they were likely to deceive ordinary consumers about the quality of the experience its AirPods Pro Gen 1 would provide consumers and whether its products were fit for the ordinary purposes for which they were sold.

464.    Indeed, Plaintiff was deceived by Apple's representations and omissions. Plaintiff purchased Apple AirPods Pro Gen 1 because of the high-quality sound experience Apple promised and the ability to block unwanted sound produced internally, externally or both, through its ANC and/or transparency modes.

465.    Apple intended to mislead Plaintiff and Ohio Class Members and induce them to rely on its misrepresentations and omissions to purchase AirPods Pro Gen 1.

466.    Had Apple disclosed that its AirPods Pro Gen 1 contained an Audio Defect known to cause sound issues, such as crackling, static, interruption and loss of sound, Plaintiff and Ohio Class Members would not have purchased or would have paid substantially less for their AirPods Pro Gen 1.

467.    The above unfair and deceptive acts and practices by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and the Ohio Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

468.    Apple acted intentionally, willfully, knowingly, and maliciously to violate the OCSPA, and recklessly disregarded Plaintiff and Ohio Class Members' rights.

469.    As a direct and proximate result of Apple's practices, Plaintiff and the Ohio Class Members suffered injury and/or damages, including, but not limited to the loss of money or property, for

having purchased AirPods Pro Gen 1 that they otherwise would not have bought, overpaying for their AirPods Pro Gen 1, and incurring costs for replacing their AirPods Pro Gen 1.

470.    The injuries suffered by Plaintiffs and Ohio Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and Ohio Class Members should have reasonably avoided.

471.    Pursuant to the OCSPA, Plaintiff and Ohio Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, attorneys' fees, and any other relief that is just and proper.

## *PENNSYLVANIA STATE LAW CLAIMS*

### TWENTY-THIRD CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY UNDER PENNSYLVANIA LAW
### 13 Pa.C.S.A. § 2313
### (By Plaintiff LaBella on Behalf of the Pennsylvania Class)

472.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

§ 2313 of Pennsylvania Commercial Code provides that:

(a) General rule.--Express warranties by the seller are created as follows:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) Formal words or specific intent unnecessary.--It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.

473.    Apple expressly warranted that AirPods Pro Gen 1 provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs and Class Members,

thereby giving rise to express warranties that the AirPods Pro Gen 1 conformed to the descriptions and affirmations of fact or promises. [52]

474.    These descriptions and affirmations of fact or promises made by Apple was made to induce Plaintiff and Class Members to purchase Apple's AirPods Pro Gen 1.

475.    Plaintiff LaBella, in making her purchase of AirPods Pro Gen 1, relied on these descriptions, representations, affirmations of fact, or promises outlined above.

476.    In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect actually produced unwanted sound in the form of crackling and static, thereby decreasing the functionality, usability, and value of Plaintiff LaBella and other similarly situated purchasers' headphones.

477.    Apple has been notified of the breaches within a reasonable time, and/or Plaintiff was not required to do so because affording Apple a reasonable opportunity to cure its breach of warranty would have been futile. *See* Exhibit 3. Apple also knew of the Audio Defect and yet chose to conceal it by warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while failing to comply with Apple's express warranty obligations and misrepresenting and suppressing communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*, (a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated misrepresentations to consumers regarding their purported rights and responsibilities in connection with any defects they experienced, and which conflicted with Apple's single buried website discussing the sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing

---

[52] Apple's one-year manufacturing warranty is inapplicable to the defect at issue as the defect at issue is inherent in every AirPods Pro Gen 1 earpiece—and does not involve the occasional problem with materials and workmanship covered by Apple's one-year warranty. *See also supra* ¶¶25-29.

consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the foregoing conduct, as well as through arbitrary and unreasonable time limitations in its sound Service Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or refund Class Members' defective AirPods Pro Gen 1 headphones.

478. As a direct and proximate cause of Apple's breach, Plaintiff and Class Members bought AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s, did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs for replacing their AirPods Pro Gen 1s.

479. Plaintiff and Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

### TWENTY-FOURTH CLAIM FOR RELIEF
### BREACH OF IMPLIED WARRANTY UNDER PENNSYLVANIA LAW
### 13 Pa.C.S.A. §§ 2314-2315
### (In the alternative, by Plaintiff LaBella on Behalf of the Pennsylvania Class)

480. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

481. Apple provided Plaintiff LaBella and the Pennsylvania Class Members with an implied warranty that the AirPods Pro and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold—as listening devices capable of delivering intelligible audio without static or other interference. Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and expert knowledge about that Plaintiffs did not have.

482. However, the AirPods Pro Gen 1 are not fit for their ordinary purpose as headphones because they suffer from an inherent Audio Defect at the time of sale that causes them to malfunction. Specifically, the Audio Defect causes "sound issues" as described herein—including, crackling or static

sounds, loss of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected.

483.    The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes. As such, the AirPods Pro Gen 1 were not merchantable and not fit for their ordinary purpose as headphones, much less as headphones with noise cancelling functionality.

484.    Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for audio use, as well as for use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

485.    Contrary to the applicable implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable headphones, much less ones with noise cancelling functionality.

486.    Apple's actions, as complained of herein, breached the implied warranty that the headphones were of merchantable quality and fit for the ordinary use for which they were sold.

487.    The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

488.    Apple had reason to know that Plaintiff LaBella and similarly situated consumers would rely on the seller's skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

489.    Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiff and the other Pennsylvania

Class Members. Among other things, Plaintiff and the other Pennsylvania Class Members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and Plaintiff and the other Pennsylvania Class Members, and Apple knew of the defect at the time of sale.

490.    As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiff and the other Pennsylvania Class Members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**TWENTY-FIFTH CLAIM FOR RELIEF**
**Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")**
**73 Pa. Cons. Stat. Ann. §§ 201–1–201-9.3**
**(By Plaintiff LaBella, individually and on behalf of the Pennsylvania Class)**

491.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

492.    Apple sells products and performs services in the Commonwealth of Pennsylvania.

493.    Plaintiff, Pennsylvania Class Members, and Apple are "persons" as defined by the UTPCPL. 73 P.S. § 201-2(2).

494.    Apple's products and services constitute as "trade" and "commerce" under the statute. 73 P.S. § 201-2(3).

495.    Plaintiff purchased Apple's AirPods Pro Gen 1 primarily for personal, family, and/or household purposes as required by 73 P.S. § 201-9.2(a).

496.    Plaintiff has a private right of action under 73 P.S. § 201-9.2(a).

497.    As alleged above, Apple made direct and explicit promises and statements to consumers that their AirPods Pro Gen 1 would provide consumers "superior sound quality" that "cuts out the noise" for an "immersive noise-canceling experience," and overall "rich, immersive listening experience." Through active noise cancellation and transparency modes, Apple promised that both modes would block unwanted sound produced internally, externally or both, and would produce "pure, incredibly clear sound." Plaintiff purchased Apple's AirPods Pro Gen 1 because of those representations.

498.    Apple continued to promote and advertise its AirPods Pro Gen 1 as providing, *inter alia*, "superior sound quality," while knowing that its AirPods Pro Gen 1 contained an Audio Defect that caused static and cracking sounds and a poor-quality sound experience.

499.    The UTPCPL lists twenty-one instances of "unfair methods of competition" and "unfair or deceptive acts or practices." 73 P.S. § 201-2(4). Apple violated the UTPCPL by engaging in, *inter alia*, the following:

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have (73 P.S. § 201-2(4)(v));

- Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another (73 P.S. § 201-2(4)(vii));

- Advertising goods or services with intent not to sell them as advertised (73 P.S. § 201-2(4)(ix)); and

- Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 P.S. § 201-2(4)(xxi)).

500.    While operating in Pennsylvania, engaged in unfair methods of competition and unfair and/or deceptive trade practices in connection with a consumer transaction, in violation of 73 P.S. §§ 201-1, *et seq*., including, but not limited to the following:

- knowingly and fraudulently misrepresenting the sound quality and listening experience that the AirPods Pro Gen 1 would provide consumers and the features and characteristics that the AirPods Pro Gen 1 possessed;

- knowingly and intentionally selling a defective product;

- knowingly and intentionally omitting, suppressing, and concealing the material fact from Plaintiff and Pennsylvania Class Members that the AirPods Pro Gen 1 were inherently defective

- knowing that the same Audio Defect present in AirPods Pro Gen 1 manufactured after the cutoff date for the sound issues described on the support page discussing the Service Program;

- intentionally choosing not to publicize the sound issues discussed on the support page describing the Service Program; and

- intentionally and willfully leading consumers with AirPods Pro Gen 1 manufactured before the cut-off, when, in fact, Apple knowingly provided an equally defective AirPods Pro Gen 1 to the few who qualified; and

- intentionally and willfully selecting an arbitrary cutoff date for consumer's eligibility to obtain replacements for their defective AirPods Pro Gen 1 under Apple's Service Program.

501.    Apple's misrepresentations and omissions were material because they were likely to deceive ordinary consumers about the quality of the experience its AirPods Pro Gen 1 would provide consumers and whether its products were fit for the ordinary purposes for which they were sold.

502.    Indeed, Plaintiff was deceived by Apple's representations and omissions. Plaintiff purchased Apple AirPods Pro Gen 1 because of the high-quality sound experience Apple promised and the ability to block unwanted sound produced internally, externally or both, through its ANC and/or transparency modes.

503.    Apple intended to mislead Plaintiff and Pennsylvania Class Members and induce them to rely on its misrepresentations and omissions to purchase AirPods Pro Gen 1.

504.    Had Apple disclosed that its AirPods Pro Gen 1 contained an Audio Defect known to cause sound issues, such as crackling, static, interruption and loss of sound, Plaintiff and Pennsylvania Class Members would not have purchased or would have paid substantially less for their AirPods Pro Gen 1.

505.    Apple acted intentionally, knowingly, and maliciously to violate Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff and Pennsylvania Class Members' rights.

506.    As a direct and proximate result of Apple's practices, Plaintiff and the Pennsylvania Class Members suffered injury and/or damages, including, but not limited to the loss of money or property, for having purchased AirPods Pro Gen 1 that they otherwise would not have bought, overpaying for their AirPods Pro Gen 1, and incurring costs for replacing their AirPods Pro Gen 1.

507.    The injuries suffered by Plaintiffs and Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and Pennsylvania Class Members should have reasonably avoided.

508.    Pursuant to 73 Pa. Stat. Ann. § 201-9.2, Plaintiff and Pennsylvania Class Members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

### TEXAS STATE LAW CLAIMS

#### TWENTY-SIXTH CLAIM FOR RELIEF
#### BREACH OF EXPRESS WARRANTY UNDER TEXAS LAW
Tex. Bus. & Com. Code § 2.313
**(In the alternative, by Plaintiff Pawson on Behalf of the Texas Class)**

509.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

510.    § 2.313 of the Texas Business and Commercial Code provides that:

(a) Express warranties by the seller are created as follows:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

511.    Apple expressly warranted that AirPods Pro Gen 1 provide "superior sound quality" and a noise cancelling feature—including "Active Noise Cancelling" ("ANC") to filter out exterior sound and "Transparency" modes to filter out interior sound, while ensuring that desired sound could be heard clearly in both noise cancelling and transparency modes. These descriptions and affirmations of fact or promises became part of the basis of the bargain between Apple and all Plaintiffs and Class Members,

1  thereby giving rise to express warranties that the AirPods Pro Gen 1 conformed to these descriptions and

2  affirmations of fact or promises.[53]

3       512.    These descriptions and affirmations of fact or promises made by Apple was made to

4  induce Plaintiff and Class Members to purchase Apple's AirPods Pro Gen 1.

5       513.    Plaintiff Pawson, in making his purchase of AirPods Pro Gen 1, relied on these

6  descriptions, representations, affirmations of fact, or promises outlined above.

7       514.    In fact, however, Apple's AirPods Pro Gen 1 did not have superior sound quality and did

8  not provide effective noise cancelling. Instead, the AirPods Pro Gen 1 had "sound issues" caused by an

9  inherent defect in all AirPods Pro Gen 1. Instead of eliminating unwanted sound, the Audio Defect

10  actually produced unwanted sound in the form of crackling and static, thereby decreasing the

11  functionality, usability, and value of Plaintiff Pawson and other similarly situated purchasers'

12  headphones.

13       515.    Apple has been notified of the breaches within a reasonable time, and/or Plaintiff was not

14  required to do so because affording Apple a reasonable opportunity to cure its breach of warranty would

15  have been futile. *See* Exhibit 3. Apple also knew of the Audio Defect and yet chose to conceal it by

16  warranting and continuing to advertise the noise cancelling benefits of the AirPods Pro Gen 1, while

17  failing to comply with Apple's express warranty obligations and misrepresenting and suppressing

18  communication regarding the known sound issues with its AirPods Pro Gen 1, including by, *inter alia*,

19  (a) failing to affirmatively reach out to consumers and notify them of the known defect with their AirPods

20  Pro Gen 1 headphones, while leaving in place form language by which Apple uniformly communicated

21  misrepresentations to consumers regarding their purported rights and responsibilities in connection with

22  any defects they experienced, and which conflicted with Apple's single buried website discussing the

23  sound issues with Apple's AirPods Pro Gen 1; (b) suppressing and misrepresenting information regarding

24  the sound issues including by claiming that it only affected a "small percentage of AirPods Pro," when

25  in reality Apple knew the sound issues reflected a defect inherent in all AirPods Pro Gen 1; (c) providing

26

27  ─────────────────────

28  [53] Apple's one-year manufacturing warranty is inapplicable to the defect at issue as the defect at issue is inherent in every AirPods Pro Gen 1 earpiece—and does not involve the occasional problem with materials and workmanship covered by Apple's one-year warranty. *See also supra* ¶¶ 25-29.

consumers with equally defective AirPods Pro Gen 1 as replacements under its one year warranty and purported Service Program; (d) imposing arbitrary and unreasonable conditions on consumers' ability to obtain refunds or adequate relief for their defective AirPods Pro Gen 1 headphones both through the foregoing conduct, as well as through arbitrary and unreasonable time limitations in its sound Service Program relating to date of manufacture and date of purchase; and (e) refusing to repair, replace, and/or refund Class Members' defective AirPods Pro Gen 1 headphones.

516.    As a direct and proximate cause of Apple's breach, Plaintiff and Class Members bought AirPods Pro Gen 1s that they otherwise would not have bought, overpaid for their AirPods Pro Gen 1s, did not receive the benefit of their bargain, and their AirPods Pro Gen 1s suffered a diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs for replacing their AirPods Pro Gen 1s.

517.    Plaintiff and Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

### TWENTY-SEVENTH CLAIM FOR RELIEF
**BREACH OF IMPLIED WARRANTY UNDER TEXAS LAW**
**Tex. Bus. & Com. Code §§ 2.314-2.315**
**(In the alternative, by Plaintiff Pawson on Behalf of the Texas Class)**

518.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

519.    Apple was at all relevant times a "seller" and "merchant" of headphones within the meaning of Tex. Bus. & Com. Code § 2.103 and § 2.104, respectively.

520.    Apple's AirPods Pro Gen 1 are and were at all relevant times "goods" pursuant to Tex. Bus. & Com. Code § 2.105.

521.    A warranty that Apple's AirPods Pro Gen 1 and any parts thereof were in merchantable condition and fit for the ordinary purpose for which they were sold—as listening devices capable of delivering intelligible audio without static or other interference—is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314-2.315.

522.    Apple thus impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for the ordinary purposes for which they were sold—as listening devices capable of delivering

intelligible audio without static or other interference. Apple also impliedly warranted that AirPods Pro Gen 1 were suited for the particular purpose of noise cancelling in ANC and Transparency modes—a new functionality it had specialized and expert knowledge about that Plaintiffs did not have. Apple's implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

523.    However, the AirPods Pro Gen 1 are not fit for their ordinary purpose as headphones because they suffer from an inherent Audio Defect that causes "sound issues" as described herein— including, crackling or static sounds, loss of bass sound, increase in background sounds, or other sound issues due to the noise cancelling and other sound features not working as expected. As such, contrary to the applicable implied warranties, the AirPods Pro Gen 1 were not merchantable or fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable headphones.

524.    The Audio Defect, which is present at the point of sale (and remains latent until manifestation), renders the AirPods Pro Gen 1 incapable of functioning as headphones at all—let alone as headphones capable of noise cancelling or transparency modes. As such, the AirPods Pro Gen 1 were not merchantable and not fit for their ordinary purpose as headphones, much less as headphones with noise cancelling functionality.

525.    Apple impliedly warranted that the AirPods Pro Gen 1 were of merchantable quality and fit for audio use, as well as for use as noise cancelling headphones. This implied warranty included, among other things, a warranty that the AirPods Pro Gen 1 manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure or "sound issues" when consumers used them in a reasonable and foreseeable manner.

526.    Contrary to the applicable implied warranties, the AirPods Pro Gen 1 at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable headphones, much less ones with noise cancelling functionality.

527.    Apple's actions, as complained of herein, breached the implied warranty that the headphones were of merchantable quality and fit for the ordinary use for which they were sold.

528.    The AirPods Pro Gen 1 would not pass without objection in the marketplace had Apple made their inherent defect known as they suffer from sound issues, and thus were not of fair average quality within the description, are not fit for the ordinary purpose as headphones, and are not permitted variations of quality.

529.    Apple had reason to know that Plaintiff Pawson and similarly situated consumers would rely on the seller's skill or judgment regarding the sound quality of headphones, and the ability of headphones to perform noise-cancelling functions in particular.

530.    Apple has been notified of its breaches of warranty and Apple has thus been afforded a reasonable opportunity to cure the breach, but Apple has not remedied the breach. *See* Exhibit 3.

531.    Any attempt by Apple to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because Apple knowingly sold a defective product without informing consumers about the defect. Any time limits contained in Apple's warranty periods would likewise be unconscionable and inadequate to protect Plaintiff and the other Texas Class Members. Among other things, Plaintiff and the other Texas Class Members had no meaningful choice in determining any time limitations, the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and Plaintiff and the other Texas Class members, and Apple knew of the defect at the time of sale.

532.    As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiff and the other Texas Class Members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**TWENTY-EIGHTH CLAIM FOR RELIEF**
**Deceptive Trade Practices-Consumer Protection Act**
**Texas Bus. & Com. Code § 17.41, *et seq.***
**(By Plaintiff Pawson, individually and on behalf of the Texas Class)**

533.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

534.    Apple is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

535.    Plaintiff and the Texas Subclass Members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

536.    Apple advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(1), (3), and (6).

537.    The DTPA provides consumers with a private right of action against a "person" for "use or employment . . . [of] false, misleading, or deceptive act or practice . . . breach of an express or implied warranty[,] [and] any unconscionable action or course of action . . . ." Tex. Bus. & Com. Code § 17.50(a)(1)-(3).

538.    As alleged above, Apple made direct and explicit promises and statements to consumers that their AirPods Pro Gen 1 would provide consumers "superior sound quality" that "cuts out the noise" for an "immersive noise-canceling experience," and overall "rich, immersive listening experience." Through active noise cancellation and transparency modes, Apple promised that both modes would block unwanted sound produced internally, externally or both, and would produce "pure, incredibly clear sound." Plaintiff purchased Apple's AirPods Pro Gen 1 because of those representations.

539.    Apple continued to promote and advertise its AirPods Pro Gen 1 as providing, *inter alia*, "superior sound quality," while knowing that its AirPods Pro Gen 1 contained an Audio Defect that caused static and cracking sounds and a poor-quality sound experience.

540.    Apple engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not § 17.46(b)(5);

- Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another § 17.46(b)(7);

- Advertising goods or services with intent not to sell them as advertised § 17.46(b)(9);

- Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the

consumer into a transaction into which the consumer would not have entered had the information been disclosed § 17.46(b)(24).

541.    While operating in Texas, engaged in false, misleading, or deceptive acts or practices in connection with a consumer transaction, in violation of Texas Bus. & Com. Code § 17.41, *et seq.*, including, but not limited to the following:

- knowingly and fraudulently misrepresenting the sound quality and listening experience that the AirPods Pro Gen 1 would provide consumers and the features and characteristics that the AirPods Pro Gen 1 possessed;

- knowingly and intentionally selling a defective product;knowingly and intentionally omitting, suppressing, and concealing the material fact from Plaintiff and Texas Class Members that the AirPods Pro Gen 1 were inherently defective.

- knowing that the same Audio Defect present in AirPods Pro Gen 1 manufactured after the cutoff date for the sound issues described on the support page discussing the Service Program;

- intentionally choosing not to publicize the sound issues discussed on the support page describing the Service Program; and

- intentionally and willfully leading consumers with AirPods Pro Gen 1 manufactured before the cut-off, when, in fact, Apple knowingly provided an equally defective AirPods Pro Gen 1 to the few who qualified; and

- intentionally and willfully selecting an arbitrary cutoff date for consumer's eligibility to obtain replacements for their defective AirPods Pro Gen 1 under Apple's Service Program.

542.    Apple's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the quality of the experience its AirPods Pro Gen 1 would provide consumers and whether its products were fit for the ordinary purposes for which they were sold.

543.    Indeed, Plaintiff was deceived by Apple's representations and omissions. Plaintiff purchased Apple AirPods Pro Gen 1 because of the high-quality sound experience Apple promised and the ability to block unwanted sound produced internally, externally or both, through its ANC and/or transparency modes.

544.    Apple intended to mislead Plaintiff and Texas Class Members and induce them to rely on its misrepresentations and omissions to purchase AirPods Pro Gen 1.

545.    Apple acted intentionally, knowingly, and maliciously to violate Texas's DTPA and recklessly disregarded Plaintiff and Texas Class Members' rights.

546.    Apple's acts and/or practices alleged above constitute "unconscionable actions" under Texas Bus. & Com. Code § 17.45(5) because "to the consumers' determinant, [Apple took] advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

547.    Consumers, including Plaintiff and Texas Subclass Members, lacked knowledge about the Audio Defect in Apple's AirPods Pro Gen 1 because this information was known exclusively by Apple. Consumers also lacked the ability, experience, or capacity to detect the defect. Plaintiff and the Texas Class lack expertise in audio engineering. Apple took advantage of its unparalleled brand reputation for high quality products and Plaintiff's and the Texas Class's inability, inexperience, or incapacity to detect the Audio Defect.

548.    Apple intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness that resulted from Apple's conduct is glaringly noticeable and flagrant.

549.    Had Apple disclosed that its AirPods Pro Gen 1 contained an Audio Defect known to cause sound issues, such as crackling, static, interruption and loss of sound, Plaintiff and Texas Class Members would not have purchased or would have paid substantially less for their AirPods Pro Gen 1.

550.    Apple had a duty to disclose to consumers the above facts because Apple knew of the Audio Defect after extensive pre-release testing of the product.

551.    Apple's duty to disclose arose from its:

- Possession of exclusive knowledge regarding the quality and characteristics of its AirPods Pro Gen 1;

- Active concealment of the Audio Defect known to Apple at the time of Plaintiff and Texas Class Members' consumer transactions;

552.    Incomplete representations about the quality and characteristics of its AirPods Pro Gen 1 and purposeful withholding of material facts from Plaintiff and Texas Class Members that contradicted the representations it made about its product.

553.    Apple also violated the DTPA when it breached its express and/or implied warranties with Plaintiff and the Texas Class Members, as alleged herein. Texas Bus. & Com. Code § 17.50(a)(2).

554.    As a direct and proximate result of Apple's acts and practices, Plaintiff and the Texas Class Members suffered injury and/or damages, including, but not limited to the loss of money or property, for having purchased AirPods Pro Gen 1 that they otherwise would not have bought, overpaying for their AirPods Pro Gen 1, and incurring costs for replacing their AirPods Pro Gen 1.

555.    The injuries suffered by Plaintiffs and Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and Texas Class Members should have reasonably avoided.

556.    Pursuant to Tex. Bus. & Com. Code § 17.505, Plaintiff provided Apple written notice of the factual bases of this cause of action and others on October 31, 2024. To date, Apple has taken no action to remedy its misconduct or otherwise address the violations outlined in the written notice sent by Plaintiff's counsel.

557.    Contemporaneous with the filing of this Amended Complaint, Plaintiff's counsel will send to the Consumer Protection Division a copy of the written notice sent to Apple.

558.    Plaintiff and the Texas Class Members seek all monetary and non-monetary relief allowed by law, including economic damages; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; and any other relief which the court deems proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

1.    Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying one or more Classes as defined above;

2.    Appoint all Plaintiffs as representatives of the Nationwide Class. In the alternative, appoint Plaintiffs as representatives of multi-state classes with similar laws, or appoint Plaintiffs Philip Camacho and Marc Schaefer as representatives of the California Class, appoint Plaintiff Jeffrey Nykerk as a representative of the Florida Class, appoint Plaintiff David Ambrozic as a representative of the Illinois Class, appoint Plaintiffs Jerry Mitchell Adair and Daniel Kadyrov as representatives of the New York Class, appoint Plaintiff Stacey Rodgers as representative of the Ohio Class, appoint Plaintiff Lindsey LaBella as representative of the Pennsylvania Class, and appoint Plaintiff Michael Pawson as representative of the Texas Class.

3.    Appoint all Plaintiffs' counsel whose appearance is noticed herein as Class Counsel;

4.    Award all actual, general, special, incidental, statutory, punitive, exemplary, and consequential damages and, in the alternative to damages, any restitution to which Plaintiffs and Class Members are entitled in an amount to be determined at trial and require Apple to disgorge its ill-gotten gains;

5.    Award pre-judgment and post-judgment interest on such monetary relief at the highest legal rate to the extent provided by law;

6.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Apple to repair, recall, and/or replace the AirPods Pro and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Audio Defect;

7.    Award reasonable attorneys' fees and costs to the extent provided by law; and

8.    Grant such further relief that this Court deems appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

1    DATED: February 6, 2025                    **TYCKO & ZAVAREEI LLP**

2
                                    By:    /s/ *Annick M. Persinger*
3

4                                          Annick M. Persinger (CA Bar No. 272996)
                                           apersinger@tzlegal.com
5                                          **TYCKO & ZAVAREEI LLP**
                                           1970 Broadway, Suite 1070
6                                          Oakland, California 94612
                                           Telephone: (510) 254-6808
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT, 5:24-cv-07588-EKL