CLAUDIA M. VETESI (CA SBN 233485)
CVetesi@mofo.com
CAMILA A. TAPERNOUX (CA SBN 299289)
CTapernoux@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

ZACHARY MALDONADO (CA SBN 328639)
ZMaldonado@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, California 90017-3453
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JERRY MITCHELL ADAIR, DAVID AMBROZIC, PHILIP CAMACHO, DANIEL KADYROV, LINDSEY LABELLA, JEFFREY NYKERK, MICHAEL PAWSON, STACEY RODGERS, and MARC SCHAEFER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 5:24-cv-07588-NW<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 6, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 3 – 5th Floor<br>Judge: Hon. Noël Wise<br><br>FAC Filed: February 6, 2025 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    Apple's One Year Limited Warranty for AirPods and the AirPods Pro 1 Service Program Applies to Plaintiffs' Purchases ................................... 2

    B.    Seven Plaintiffs Do Not Allege That They Experienced Any Issues with Their AirPods Pro 1 During the Warranty Period ........................................ 3

    C.    The Remaining Two Plaintiffs Each Received Free Replacement AirPods Pro 1 and Used their Devices for Several Years ...................................... 5

III.    LEGAL STANDARD .......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 6

    A.    Plaintiffs' Warranty Claims Fail on Multiple Grounds .......................... 6

        1.    Apple's Limited Warranty Governs and Bars Plaintiffs' Warranty Claims, Even if Based on an Alleged Design Defect ................................ 6

        2.    Plaintiffs' Express Warranty Claims Fail Because No Plaintiff Alleges a Breach During the Warranty Period .......................................... 7

        3.    Rodgers' Express Warranty Claim Based on Apple's Advertising Further Fails for Lack of Exposure and Reliance ................................... 10

        4.    Plaintiffs' Implied Warranty Claims Fail as a Matter of Law ................. 10

        5.    Camacho Cannot State a Claim Under the Song-Bervely Consumer Warranty Act ................................................................................. 12

    B.    Plaintiffs' Consumer Protection Claims Fail as a Matter of Law on Multiple Grounds ............................................................................. 13

        1.    Labella and Rodgers' Consumer Protection Claims Fail to Satisfy Rule 9(b)'s Particularity Requirements ............................................ 13

        2.    Plaintiffs' Consumer Protection Claims Based on Alleged Apple Omissions Fail Because They Cannot Show a Duty to Disclose ............. 14

        3.    Plaintiff Pawson's Consumer Protection Claim Is Time Barred ............. 15

    C.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law ............................ 16

    D.    Plaintiffs Lack Article III Standing to Pursue Injunctive Relief Because They Do Not Allege Any Likelihood of Future Injury ......................................... 17

    E.    Plaintiffs' Conclusory Alternative Claims Under the Consumer Protection Statutes and Warranty Laws of Other States Fail as a Matter of Law ................. 17

V.    CONCLUSION .................................................................................................. 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aberin v. Am. Honda Motor Co.*,
   No. 16-CV-04384-JST, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ............................. 5, 6

*Am. Suzuki Motor Corp. v. Superior Ct.*,
   37 Cal. App. 4th 1291 (1995) ................................................................................................ 11

*Anderson v. Talentsy, Inc.*,
   599 F. Supp. 3d 1207 (M.D. Fla. 2022) ................................................................................ 17

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018) .................................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 6

*Banco Panamericano, Inc. v. City of Peoria*,
   880 F.3d 329 (7th Cir. 2018) ................................................................................................. 17

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ................................................................................................. 17

*Becker v. Cont'l Motors, Inc.*,
   709 F. App'x. 263 (5th Cir. 2017) ........................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 5

*Bettles v. Toyota Motor Corp.*,
   645 F. Supp. 3d 978 (C.D. Cal. 2022) ................................................................................... 16

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
   94 Cal. App. 4th 151 (2001) .................................................................................................. 16

*Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters., Inc.*,
   50 N.E.3d 955 (Ohio Ct. App. 2015) ....................................................................................... 8

*Cohen v. Am. Sec. Ins. Co.*,
   735 F.3d 601 (7th Cir. 2013) ................................................................................................. 16

*Coody v. A.H. Robins Co.*,
   696 S.W.2d 154 (Tex. App. 1985) ......................................................................................... 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Cook v. Ohio Nat'l Life Ins. Co.*,
    961 F.3d 850 (6th Cir. 2020)..................................................................... 16, 17

*Cox v. NAP Constr. Co.*,
    10 N.Y.3d 592 (2008) ................................................................................... 16

*Daugherty v. Am Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006) ....................................................................... 9

*Davidson v. Apple Inc.*,
    No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ..................... 9, 14, 17

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
    989 So. 2d 696 (Fla. Dist. Ct. App. 2008) ........................................................ 16

*Duncan v. Kahala Franchising, L.L.C.*,
    732 F. Supp. 3d 255 (E.D.N.Y. 2024) .............................................................. 11

*Evitts v. DaimlerChrysler Motors Corp.*,
    834 N.E.2d 942 (Ill. App. 2005) .................................................................... 8

*Fineman v. Ferragamo USA Inc.*,
    672 F. Supp. 3d 1302 (S.D. Fla. 2023), *appeal dismissed* No. No. 23-11987-A,
    2023 WL 5939033 (11th Cir. July 19, 2023) ..................................................... 11

*Franco v. Ford Motor Co.*,
    644 F. Supp. 3d 672 (C.D. Cal. 2022) ............................................................. 11

*Gagetta v. Walmart, Inc.*,
    646 F. Supp. 3d 1164 (N.D. Cal. 2022) ........................................................ 10, 11

*GMC v. Brewer*,
    966 S.W.2d 56 (Tex. 1998)........................................................................... 11

*Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*,
    360 F. Supp. 3d 494 (N.D. Tex. 2019), *aff'd*, 954 F.3d 804 (5th Cir. 2020) ........................... 9

*Graham v. Wells Fargo Bank, N.A.*,
    No. 3:15-cv-04220-JD, 2017 WL 86013 (N.D. Cal. Jan. 10, 2017)............................ 13

*Holmes v. P.K. Pipe & Tubing, Inc.*,
    856 S.W.2d 530 (Tex. App. 1993)................................................................. 15

*LaTouche v. Perry Homes, LLC*,
    606 S.W.3d 878 (Tex. App. 2020) ............................................................. 15, 16

*Liberty Mut. Ins. Co. v. Gemma*,
    301 F. Supp. 3d 523 (W.D. Pa. 2018) ......................................................... 16, 17

*Licul v. Volkswagen Grp. of Am., Inc.*,
  No. 13-61686-CIV, 2013 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)...................................8

*Long v. Hewlett-Packard Co.*,
  No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007), *aff'd*, 316
  F. App'x 585 (9th Cir. 2009) ...............................................................................................9

*Lozano v. Baylor Univ.*,
  408 F. Supp. 3d 861 (W.D. Tex. 2019) ................................................................................15

*Marcus v. Apple Inc.*,
  No. C 14-03824 WHA, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015)....................................18

*McKinney v. Bayer Corp.*,
  744 F. Supp. 2d 733 (N.D. Ohio 2010) ...............................................................................10

*Meserole v. Sony Corp. of Am., Inc.*,
  No. 08 Cv. 8987 (RPP), 2009 WL 1403933 (S.D.N.Y. May 18, 2009) ................................7

*Moore v. Apple, Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ...................................................................................6

*In re Nanobeak Biotech Inc.*,
  656 B.R. 350 (Bankr. S.D.N.Y. 2024) .................................................................................17

*Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*,
  No. 2:02-cv-1288, 2007 WL 894833 (S.D. Ohio, Mar. 22, 2007)........................................10

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................................12

*Osness v. Lasko Prods., Inc.*,
  868 F. Supp. 2d 402 (E.D. Pa. 2012) ...............................................................................8, 11

*Perkins v. DaimlerChrysler Corp.*,
  890 A.2d 997 (N.J. Super. Ct. App. Div. 2006)...................................................................14

*Peterson v. Cellco P'Ship*,
  164 Cal. App. 4th 1583 (2008) ............................................................................................16

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  198 F. Supp. 3d 1183 (D. Or. 2016) ....................................................................................13

*Reveille Trucking, Inc. v. Lear Corp.*,
  No. 4:14-CV-511, 2017 WL 661521 (S.D. Tex. Feb. 17, 2017) ....................................16, 17

*Risner v. Regal Marine Indus., Inc.*,
  8 F. Supp. 3d 959 (S.D. Ohio 2014) ....................................................................................11

*Royal Typewriter Co. v. Xerographic Supplies Corp.*,
    719 F.2d 1092 (11th Cir. 1983)............................................................................ 12

*Rudy v. D.F. Stauffer Biscuit Co.*,
    666 F. Supp. 3d 706 (N.D. Ill. 2023) .................................................................. 11

*Shields v. Alere Home Monitoring, Inc.*,
    No. C15-2580 CRB, 2015 WL 7272672 (N.D. Cal. Nov. 18, 2015).................................... 13

*Smith v. LG Elecs. U.S.A., Inc.*,
    No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ...................................... 12

*Tabak v. Apple Inc.*,
    No. 19-cv-02455-JST, 2020 WL 9066153 (N.D. Cal. Jan. 30, 2020) ................................. 8, 9

*Taleshpour v. Apple Inc.*,
    549 F. Supp. 3d 1033 (N.D. Cal. 2021), *aff'd*, No. 21-16282, 2022 WL
    1577802 (9th Cir. May 19, 2022) ....................................................................... 14

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................... 11

*Ward v. Mitchell*,
    No. 12-cv-3932 NC, 2013 WL 1758840 (N.D. Cal. Apr. 24, 2013) .............................. 17, 18

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014)................................ 17

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)........................................................................... 14

*Woo v. Am. Honda Motor, Co.*,
    462 F. Supp. 3d 1009 (N.D. Cal. 2020) ................................................................ 12

*Yastrab v. Apple*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) ............................................................... 13, 14

**Statutes**

Cal. Civ. Code § 1792 ....................................................................................... 12

**Other Authorities**

Fed. R. Civ. P.
    8.................................................................................................... 2, 18
    9(b) ............................................................................................... *passim*
    12(b)(6) ............................................................................................... 5

## **NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on August 6, 2025 at 9:00 a.m., or as soon thereafter as the motion may be heard in Courtroom 3 on the 5th Floor of the United States Courthouse, 280 South First Street, San Jose, California, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Apple Inc. ("Apple") will and hereby does move to dismiss the following claims asserted in plaintiffs Jerry Mitchell Adair, David Ambrozic, Philip Camacho, Daniel Kadyrov, Lindsey LaBella, Jeffrey Nykerk, Michael Pawson, Stacey Rodgers, and Marc Schaefer's ("Plaintiffs") First Amended Class Action Complaint filed in this Court on February 6, 2025 (ECF No. 39): Plaintiffs' claims for breach of express and implied warranties (Causes of Action 5-6, 11-12, 14-15, 17-18, 20-21, 23-24, 26-27); Plaintiff Camacho's Song Beverly Consumer Warranty Act claim (Cause of Action 7); Plaintiffs Adair, Ambrozic, Kadyrov, LaBella, Nykerk, Rodgers, and Schaefer's consumer protection claims based on any alleged Apple omissions (Causes of Action 8-10, 13, 16, 19, 22, and 25); Plaintiffs LaBella, Pawson, and Rodgers' consumer protection claims in their entirety (Causes of Action 22, 25, and 28); Plaintiffs' unjust enrichment claim (Cause of Action 4), and Plaintiffs' claims under the consumer protection statutes and warranty laws of all 50 states (Causes of Action 1-3).  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Claudia Vetesi filed herewith, Apple's Request for Judicial Notice, and the pleadings and evidence on file in this matter, oral arguments of counsel, and such other materials and arguments as may be presented in connection with the hearing on the Motion.

Dated:  March 28, 2025                    MORRISON & FOERSTER LLP


                                          By:    _/s/ Claudia M. Vetesi_
                                                 CLAUDIA M. VETESI

                                          Attorneys for Defendant
                                          APPLE INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The First Amended Complaint ("FAC") adds six additional plaintiffs from four states and asserts an additional 14 claims.  While Plaintiffs have added to their story, their claims continue to suffer from the same core flaws.  Plaintiffs seek to assert breach of warranty and consumer fraud claims based on "sound issues" they claim to have experienced with their AirPods Pro 1. But seven of nine Plaintiffs do not allege experiencing any sound issues with their AirPods Pro 1 during the one-year warranty period and, indeed, many concede that they used their devices for well beyond that period, apparently without incident.  While the two remaining Plaintiffs (Pawson and Camacho) claim they experienced sound issues within the warranty period, their claims fare no better because they each admit they received free replacements from Apple that they used for years after their initial purchase date.  At bottom, Plaintiffs here each received what they bargained for.  Their claims to the contrary are meritless.

Plaintiffs' express warranty claims are governed by Apple's One-Year Limited Hardware Accessory Warranty ("Limited Warranty"), but those claims fail at the outset for the seven Plaintiffs who do not allege that they experienced any sound issues during the Limited Warranty period.  The only two Plaintiffs who claim to have experienced sound issues during the Limited Warranty period each received free replacements from Apple and cannot claim any warranty breach occurred.  Plaintiffs' novel theory that the Limited Warranty does not apply because it excludes design defects from coverage is wrong as a matter of law.  Plaintiffs cannot show their AirPods Pro 1 were not fit for their ordinary use (as is required to state a claim for breach of the implied warranty of merchantability) or that they were purchased for a particular purpose other than their ordinary use (as required to state a claim for breach of the implied warranty of fitness for a particular purpose), so plaintiffs' implied warranty claims both fail.

Plaintiffs' consumer protection claims are equally flawed.  Plaintiffs LaBella and Rodgers, who assert claims sounding in fraud, do not come close to satisfying the heightened pleading requirements of Rule 9(b).  The seven remaining Plaintiffs who admit that they did not experience any sound issues during the Limited Warranty period fail to allege that Apple owed them any

1   duty to disclose potential sound issues, dooming their omissions claims too.  Indeed, where an

2   alleged defect manifests only after the warranty period has expired, a defendant's duty to disclose

3   applies only if the defect poses an unreasonable safety risk.  Here, these Plaintiffs do not even

4   attempt to allege any safety issue as required to trigger any disclosure duty beyond the Limited

5   Warranty period.  Further, because Pawson claims that he first experienced alleged sound issues

6   more than two years before this action commenced, his consumer protection claim under Texas

7   law is time-barred.

8       Plaintiffs' remaining claims also fail at the outset.  Plaintiffs cannot state a claim for

9   unjust enrichment because their rights are governed by an express contract (the Limited

10  Warranty), and because their allegations make clear they each received the benefit of their

11  bargain.  Nor do Plaintiffs allege sufficient facts to justify any injunctive relief here where they do

12  not allege likelihood of future injury.  Finally, Plaintiffs' conclusory claims under the consumer

13  protection statutes and warranty laws of all other states fail to meet the basic pleading standard of

14  Rule 8, let alone the heightened standard required under Rule 9(b).

15  **II.    FACTUAL BACKGROUND**

16      **A.    Apple's One Year Limited Warranty for AirPods and the AirPods Pro 1
                Service Program Applies to Plaintiffs' Purchases**
17

18      The AirPods Pro 1 are subject to Apple's Limited Warranty.  The Limited Warranty

19  warrants against "defects in materials and workmanship" for a one year period "from the date of

20  original retail purchase[.]"  (Declaration of Claudia M. Vetesi in Support of Apple's Motion to

21  Dismiss Plaintiffs' First Amended Class Action Complaint ("Vetesi Decl."), ¶¶ 2-4, Exs. A-C.)

22  The Limited Warranty further provides that "if a defect arises during the Warranty Period," Apple

23  has the option to (i) repair the product, (ii) to replace the product, or (iii) to refund the original

24  purchase price.  (*Id.*)

25      After determining "that a small percentage of AirPods Pro may experience sound issues,"

26  Apple launched the AirPods Pro Service Program for Sound Issues (the "Service Program") in

27  October 2020 for "[a]ffected units manufactured before October 2020."  (Vetesi Decl. ¶ 5, Ex. D.)

28  The Service Program addressed the "small percentage" of affected AirPods Pro 1 that exhibit

either "[c]rackling or static sounds that increase in loud environments, with exercise or while talking on the phone" or "Active Noise Cancellation not working as expected, such as a loss of bass sound, or an increase in background sounds, such as street or airplane noise[.]" (*Id.*) Through the Service Program, users with affected units could obtain service "free of charge" and could obtain a replacement for AirPods with a "confirmed issue[.]" (*Id.*) The Service Program covered "affected AirPods Pro for 3 years after the first retail sale of the unit." (*Id.*)[1]

**B.    Seven Plaintiffs Do Not Allege That They Experienced Any Issues with Their AirPods Pro 1 During the Warranty Period**

By their own allegations, seven of nine Plaintiffs used their AirPods Pro 1 without issue for the full one-year Limited Warranty period and, in many cases, well beyond.

**Adair.**  Adair alleges he purchased his AirPods Pro 1 "[o]n or about June 16, 2021[.]" (FAC ¶ 143.)  Adair does not allege experiencing any issues with his AirPods Pro 1 until an unspecified date during "the summer of 2022," when he allegedly experienced sound issues with his right bud. (*Id.* ¶ 152.)  However, Adair concedes he continued to use his AirPods Pro 1 until November 11, 2022, when he received a free replacement pair from Apple. (*Id.* ¶ 154.)  Adair claims he then experienced sound issues with his replacement AirPods Pro 1, but continued to use them for another two years until he reported the issue to Apple "[o]n or about November 26, 2024[.]" (*Id.* ¶ 157.)

**Ambrozic.**  Plaintiff Ambrozic alleges he purchased his AirPods Pro 1 "[o]n or about August 31, 2021[.]" (*Id.* ¶ 127.)  Ambrozic alleges he first experienced sound issues "[o]ver a year following his initial purchase," and that he purchased a replacement left bud. (*Id.* ¶ 136.)  Ambrozic claims he experienced sound issues with his AirPods Pro 1 and reported the issue to Apple on February 16, 2023. (*Id.* ¶ 139.)

**Kadyrov.**  Kadyrov alleges he purchased his AirPods Pro 1 "[o]n or about November 27, 2021[.]" (*Id.* ¶ 159.)  Kadyrov claims he experienced sound issues with his AirPods Pro 1 but does not specify when any such issues began.  Instead, he alleges only that he received a free

---

[1] The Service Program did not extend the standard warranty coverage of the AirPods Pro 1. (Vetesi Decl. Ex. D.)

replacement from Apple "[o]n or about March 2023"—approximately a year and a half after his initial purchase date. (*Id.* ¶ 167.) While Kadyrov claims he experienced sound issues with his replacement AirPods Pro 1 "[s]hortly after" their receipt, he continued to use his AirPods Pro 1 until he reported the issue to Apple "[o]n or about December 1, 2024[.]" (*Id.* ¶¶ 169-70.)

**LaBella.** LaBella alleges she purchased her AirPods Pro 1 "[o]n or about April 24, 2020" after viewing a "commercial" touting the device's noise cancelling features, "high-quality audio" and "immersive sound experience." (*Id.* ¶¶ 182-83.) LaBella alleges she experienced sound issues "[j]ust over a year following her purchase[.]" (*Id.* ¶ 187.) Yet, she did not contact Apple about her alleged issues, and she continued to use her AirPods Pro 1 until May 16, 2024—three years after she allegedly first experienced the issue and more than four years after her purchase date. (*Id.* ¶ 189.)

**Nykerk.** Nykerk alleges he purchased his AirPods Pro 1 "[o]n or about March 12, 2022[.]" (*Id.* ¶ 113.) Like Kadyrov, Nykerk alleges he experienced sound issues with his AirPods Pro 1 but does not allege specifically when any such issues began. Instead, he alleges only that he reported his issues to Apple "[o]n or about December 23, 2024," more than two and a half years after his purchase date. (*Id.* ¶ 125.)

**Rodgers.** Rodgers claims to have purchased her AirPods Pro 1 "[o]n or about July 24, 2021," but, unlike any other Plaintiff, she does not allege she was exposed to or relied on any representation concerning the AirPods Pro 1 before making her purchase. (*Id.* ¶¶ 172-73.) Rodgers claims she first experienced sound issues on September 1, 2023, after more than two years of use. (*Id.* ¶ 177.) Notably, moreover, Rodgers waited to contact Apple about her alleged sound issues (and continued to use her AirPods Pro 1) until "[o]n or about November 4, 2023[.]" (*Id.* ¶ 179.)

**Schaefer**. Schaefer alleges he purchased his AirPods Pro 1 "[o]n or about" March 24, 2020[.] (*Id.* ¶ 96.) He claims he first experienced issues with his AirPods Pro 1 "about one year after his purchase." (*Id.* ¶ 106.) Schaefer claims he contacted Apple about the issue in June 2021 and received free replacement AirPods Pro 1. (*Id.* ¶ 107.) Schaefer then used his replacement AirPods Pro 1 for nearly two years before he received another free replacement "on or about

April 4, 2023[.]" (*Id.* ¶ 109.) Schaefer claims he then used his second replacement for more than one and a half years before experiencing sound issues "in or about late 2024[.]" (*Id.* ¶ 110.)

### C.    The Remaining Two Plaintiffs Each Received Free Replacement AirPods Pro 1 and Used their Devices for Several Years

**Camacho**. Camacho purchased his AirPods Pro 1 in Illinois "[o]n or about March 27, 2020[.]" (*Id.* ¶ 80.) While he alleges first experiencing sound issues "three months after his purchase," he continued to use his AirPods Pro 1 for more than two years after his purchase, until "on or around August 2022." (*Id.* ¶¶ 88-89.) Camacho alleges Apple replaced his AirPods Pro 1 for free in August 2022, and that at some unspecified point, he began experiencing sound issues with his replacement AirPods Pro 1. (*Id.* ¶¶ 92-93.) Despite the claimed sound issues, Camacho concedes he continued to use his replacement AirPods Pro 1 until November 20, 2024—more than four and a half years after his initial purchase date. (*Id.* ¶ 94.)

**Pawson**. Pawson purchased his AirPods Pro 1 "[o]n or about November 25, 2019[.]" (*Id.* ¶ 191.) He alleges that he first experienced sound issues with his device "just under one year following his purchase," and that Apple replaced his right bud—at no cost to him—sometime after November 25, 2019. (*Id.* ¶¶ 200-01.) Pawson alleges that in January 2021 he experienced sound issues with his left bud and that Apple replaced that for free as well. (*Id.* ¶ 202.) Pawson alleges he then used his replacement AirPods Pro 1 for almost another three years (four years after the original purchase) before he purportedly experienced sound issues again "[o]n or about November 2023[.]" (*Id.* ¶ 203.) Pawson alleges that he then contacted Apple about his sound issues in December 2023—more than four years after his initial purchase date. (*Id.* ¶ 205.)

## III.    LEGAL STANDARD

A complaint must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007). While courts must accept the Complaint's specific factual allegations as true, courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Aberin v. Am. Honda Motor Co.*, No. 16-

1   CV-04384-JST, 2018 WL 1473085, at *2 (N.D. Cal. Mar. 26, 2018) (citing *Ashcroft v. Iqbal*, 556

2   U.S. 662, 678 (2009)).  A pleading that offers "labels and conclusions" or "a formulaic recitation

3   of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678.

4       Claims grounded in fraud are subject to the heightened pleading requirements of Rule

5   9(b).  *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1198 (N.D. Cal. 2014).  Rule 9(b) requires that a

6   claim grounded in fraud "state with particularity the circumstances constituting fraud[.]" *Aberin*,

7   2018 WL 1473085, at *3 (citing Fed. R. Civ. P. 9(b)).  To satisfy this heightened standard, the

8   plaintiff must allege "an account of the time, place, and specific content of any false

9   representations as well as the identities of the parties to the misrepresentations." *Moore*, 73 F.

10  Supp. 3d at 1198 (internal citation omitted).

11  **IV.    ARGUMENT**

12       **A.    Plaintiffs' Warranty Claims Fail on Multiple Grounds**

13       Plaintiffs' express warranty claims are barred because they (i) cannot dispute that the

14  Limited Warranty applies, and (ii) fail to allege facts sufficient to establish a breach during the

15  term of the Limited Warranty.  Further, Plaintiffs do not allege facts sufficient to plead breach of

16  any implied warranty, nor can they.

17              **1.    Apple's Limited Warranty Governs and Bars Plaintiffs' Warranty
                        Claims, Even if Based on an Alleged Design Defect**

18

19       Plaintiffs try to avoid application of Apple's Limited Warranty by claiming that it does

20  not apply here because their claims involve an alleged "design defect" and not an issue with

21  "materials and workmanship covered by" the Limited Warranty.  (FAC ¶¶ 75-78.)  Not so.  The

22  Limited Warranty's *coverage* here is limited to "defects in materials and workmanship."  (Vetesi

23  Decl. ¶¶ 2-4, Exs. A-C.)  That is, to the extent a user alleges an issue stemming from product's

24  design as opposed to from "materials and workmanship," that issue would be excluded from

25  coverage under the Limited Warranty.  But courts in this District have made clear that the

26  terms—including the duration—of of the Limited Warranty *apply* even in cases where the

27  factual basis of plaintiffs' issues means they are not eligible for *coverage* under the warranty.  *See*

28  *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 462-63 (N.D. Cal. 2018)

(applying Apple's one-year warranty period to claims premised on purported battery defect even though, as here, Apple's Limited Warranty expressly excluded batteries from warranty coverage unless the battery failure "occurred due to a defect in materials or workmanship"). Thus, the fact that a claim might be *excluded* from the Limited Warranty's terms does not mean that the Limited Warranty does not otherwise *apply* to the purchase. Any other interpretation is at odds with the reasoned decisions of multiple courts in this District and would render a manufacturer's limitations or exclusions in an express warranty meaningless; that is not the law.

Apple's Limited Warranty applies and bars Plaintiffs' claims.

### 2. Plaintiffs' Express Warranty Claims Fail Because No Plaintiff Alleges a Breach During the Warranty Period

Plaintiffs' express warranty claims fail as a matter of law for one simple reason: no Plaintiff alleges that Apple breached the Limited Warranty during the one-year Limited Warranty period, which is the only basis for such a claim.

The express warranty claims asserted by Schaefer, Nykerk, Ambrozic, Adair, Kadyrov, LaBella, and Rodgers each share the same fundamental defect: their allegations make clear that their devices functioned without issue for the full duration of the Limited Warranty, and they do not allege they sought or were denied coverage at any relevant time.

Adair purchased his AirPods Pro 1 "[o]n or about June 16, 2021," and did not contact Apple concerning any purported "sound issues" with his device until an unspecified date in "the summer of 2022." (FAC ¶¶ 143, 152.) Kadyrov does not even allege when he first experienced any sound issues and alleges only that he received a free replacement from Apple more than 15 months after his initial purchase date. (*Id*. ¶¶ 159, 167.) Accordingly, neither Adair nor Kadyrov can state a claim for breach of express warranty claim under New York law. *Meserole v. Sony Corp. of Am., Inc.*, No. 08 Cv. 8987 (RPP), 2009 WL 1403933, at *6 (S.D.N.Y. May 18, 2009) (dismissing warranty claim where the defect did not manifest until after the express warranty period had lapsed).

Ambrozic concedes he did not experience sound issues until "[o]ver a year following his initial purchase[.]" (FAC ¶ 136.) He thus has no breach of express warranty claim under Illinois

law.  *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. 2005) (under Illinois law "express warranties of limited duration cover only defects that become apparent during the warranty period").

LaBella alleges she first experienced sound issues "[j]ust over a year following her purchase[.]"  (FAC ¶ 187.)  Absent alleged issues during the warranty period, she cannot state a claim for breach of express warranty under Pennsylvania law.  *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 410-11 (E.D. Pa. 2012) (acknowledging general rule under Pennsylvania law that "defects discovered after the term of the warranty are not actionable" and dismissing breach of express warranty claim where plaintiff alleged defect that manifested after warranty period had lapsed).

Nykerk does not allege when he first experienced any sound issues and instead only claims to have contacted Apple about his sound issues more than two years after his purchase date.  (FAC ¶¶ 113, 123-25.)  Because he does not allege experiencing any issues during the warranty period, he cannot state a breach of express warranty claim under Florida law.  *See Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013) (plaintiffs could not maintain express warranty claims under Florida law because the express warranty expired prior to the manifestation of the claimed defect).

Rodgers alleges she first experienced sound issues more than two years after her purchase date and more than a year after her Limited Warranty period had lapsed.  (FAC ¶¶ 172, 177.) Rodgers' breach of express warranty thus fails under Ohio law.  *See Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters., Inc.*, 50 N.E.3d 955, 961-62 (Ohio Ct. App. 2015) (finding under Ohio law that no breach of express warranty occurred where plaintiffs did not allege experiencing any issues with product until after warranty period had lapsed).

Schaefer did not experience any sound issues until "about one year after his purchase." (FAC ¶ 106.)  Notably, Schaefer avoids alleging the actual date when he experienced sound issues, and thus fails to allege facts establishing that he experienced such an issue within the warranty period.  He cannot state a claim for breach of express warranty under California law. *See, e.g.*, *Tabak v. Apple Inc.*, No. 19-cv-02455-JST, 2020 WL 9066153, at *11-12 (N.D. Cal.

Jan. 30, 2020) (dismissing express warranty claims for plaintiffs who did not experience any issues with devices during the one-year warranty period (citing *Daugherty v. Am Honda Motor Co.*, 144 Cal. App. 4th 824, 830-32 (2006)); *see also Davidson v. Apple Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *13 (N.D. Cal. Mar. 14, 2017) (same). Indeed, if a "[f]ailure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself." *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *4 (N.D. Cal. July 27, 2007) (citation omitted), *aff'd*, 316 F. App'x 585 (9th Cir. 2009).

Further, while Camacho and Pawson each allege experiencing sound issues during the Limited Warranty period, they both concede they received free replacements from Apple that they used for several years beyond their initial purchase date. Camacho claims he first experienced sound issues "three months" after his purchase in March 2020, yet he continued to use his AirPods Pro 1 for more than two years until they were replaced for free by Apple in August 2022, and he then used his free replacement AirPods for another two years until November 2024. (FAC ¶¶ 80, 88, 92-94.) Similarly, Pawson alleges he experienced sound issues with his right bud during the one-year warranty period, and Apple provided him with a free replacement when he reported the issue. (*Id.* ¶¶ 200-01.) Pawson further alleges he received another free bud after he experienced sound issues with his left bud more than a year later. (*Id.* ¶ 202.) Because Camacho and Pawson each concede that they received free replacements under warranty, which they continued to use for years thereafter, they cannot state a claim for breach of express warranty. *See Tabak*, 2020 WL 9066153, at *13 (dismissing breach of warranty claim for plaintiff who received replacement device under warranty); *Long*, 2007 WL 2994812, at *5 (allegation that a replacement received during warranty subsequently malfunctioned outside the warranty period immaterial to breach of express warranty claim); *see also Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 511 (N.D. Tex. 2019) (finding no breach of express warranty where defendant fulfilled its obligations under limited warranty by repairing allegedly defective software), *aff'd*, 954 F.3d 804 (5th Cir. 2020); *Becker v. Cont'l Motors, Inc.*, 709 F. App'x. 263, 267-69 (5th Cir. 2017) (holding that defendant

did not breach express warranty where plaintiff failed to show that defendant failed to repair or replace allegedly defective product under warranty).

### 3.    Rodgers' Express Warranty Claim Based on Apple's Advertising Further Fails for Lack of Exposure and Reliance

Plaintiff Rodgers' attempt to assert "express warranty" claims based on Apple's advertisements further fails because she cannot show that the purported "express [advertising] warranty" was "part of the basis of the bargain" for her purchase. *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010).  To make this showing, Rodgers must plausibly allege that she relied on the alleged advertising "express warranty." *Id*. at 754 (noting that a warranty "is the basis of the bargain if it has been relied upon as one of the inducements for purchasing the product") (citation omitted); *see also Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*, No. 2:02-cv-1288, 2007 WL 894833, at *16 (S.D. Ohio, Mar. 22, 2007) (determining whether a representation is "part of the basis of the bargain" requires evaluating "the reliance placed on the seller's statement by the buyer").  Rodgers, however, does not allege she was even *exposed* to any Apple advertisements concerning the AirPods Pro 1 before she made her purchase, much less that she relied on any Apple statements or reviewed the terms of the Limited Warranty.  Rodgers' breach of express warranty claim based on Apple's advertisements fails for lack of exposure and reliance.

### 4.    Plaintiffs' Implied Warranty Claims Fail as a Matter of Law

Plaintiffs' claim for breach of the implied warranty of merchantability fails because, by Plaintiffs' own allegations, they either used their AirPods Pro 1 devices for *years* before they purportedly experienced "sound issues," or they received replacements from Apple that they continued to use *years* after their original purchase.[2]  To state a claim for breach of the implied warranty of merchantability, Plaintiffs must show that the device lacked "the most basic degree of fitness for ordinary use." *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1178 (N.D. Cal.

---

[2] While both Camacho and Pawson claim to have experienced sound issues within a year of their purchase dates, they each concede they received free replacement AirPods Pro 1 from Apple and that they used their replacement devices for several years beyond their original purchase date, more than satisfying any alleged implied warranty obligation.

2022).[3]  Plaintiffs cannot make this showing given that they each used their device for years after purchase, for the duration of the Limited Warranty period and beyond.  *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (dismissing breach of implied warranty of merchantability claim where because the plaintiff's "allegations of continued use of the [m]achine throughout the one-year warranty period belie her claim that it failed to serve its ordinary purpose"); *Franco v. Ford Motor Co.*, 644 F. Supp. 3d 672, 683 (C.D. Cal. 2022) (dismissing implied warranty claims where plaintiffs failed to show that the alleged defect impaired their use of their vehicles).  Indeed, seven of the nine plaintiffs here concede they had *no* issues with their AirPods Pro 1 during the Limited Warranty period.  (FAC ¶¶ 143, 152 (Adair); ¶ 136 (Ambrozic); ¶¶ 159, 167 (Kadyrov); ¶ 187 (LaBella); ¶¶ 113, 123-25 (Nykerk); ¶¶ 172, 177 (Rodgers); ¶ 106 (Schaefer).)  Further, the two remaining Plaintiffs—Camacho and Pawson—each conceded that they received free replacement AirPods Pro 1 that they used for several years beyond their initial purchase date.  (*Id*. ¶¶ 191, 200-03, 205 (Pawson); ¶¶ 80, 88-89, 92-94 (Camacho).)

Further, while Plaintiffs seek to assert claims for breach of the implied warranty of fitness for a particular purpose, Plaintiffs' only allegations as to any "particular purpose" for which they purchased their AirPods Pro 1 is that they intended to use the device's "noise cancelling functionality."  (*See, e.g.*, FAC ¶ 251.)  But to state a claim for breach of the implied warranty of fitness for a particular purpose, Plaintiffs must identify a "particular purpose" that is *different from* the AirPods Pro 1's "ordinary purpose" as noise-cancelling headphones.  *See Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1295 n.2 (1995) ("A particular purpose

---

[3] Plaintiffs must also make this showing for their breach of implied warranty claims pled under Florida, Illinois, New York, Ohio, Pennsylvania, and Texas law.  *Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1308 (S.D. Fla. 2023) (under Florida law, merchantability only requires that goods "*satisfy a minimum level of quality*") (citation omitted), *appeal dismissed* No. 23-11987-A, 2023 WL 5939033 (11th Cir. July 19, 2023); *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 721-22 (N.D. Ill. 2023) (same requirement under Illinois law); *Duncan v. Kahala Franchising, L.L.C.*, 732 F. Supp. 3d 255, 268 (E.D.N.Y. 2024) (same requirement under New York law); *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 993 (S.D. Ohio 2014) (noting under Ohio law, merchantability requires that goods be "of fair average quality"); *Osness*, 868 F. Supp. 2d at 414 (under Pennsylvania law, merchantability requires only that goods be of "reasonable quality"); *GMC v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) (under Texas law, breach of implied warranty of merchantability requires showing that goods "lack of something necessary for adequacy") (citation omitted).

differs from the ordinary purpose for which the goods are used in that it *envisages a specific use by the buyer which is peculiar to the nature of his business*[.]") (emphasis added, citation omitted).  Because they cannot do so here, their claims fail.  *See Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *8 (N.D. Cal. Mar. 11, 2014) (dismissing claim for breach of implied warranty of particular purpose where plaintiff's purchase of washing machines based on their claimed "high efficiency" did not constitute a "particular purpose," as it still pertained to "ordinary purpose" of washing clothes); *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983) (finding no breach of implied warranty of a particular purpose because plaintiffs failed to show their use of the product differed from the "ordinary purpose" for which the product was sold).

### 5.    Camacho Cannot State a Claim Under the Song-Beverly Consumer Warranty Act

Camacho's claim under the Song Beverly Consumer Warranty Act fails because he did not purchase his AirPods Pro 1 in California, which is required by the plain text of the statute.  *See* Cal. Civ. Code § 1792 ("Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold *at retail in this state* shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable.") (emphasis added).  While Camacho is a California resident, he admits that he purchased his AirPods Pro 1 while residing in Illinois.  (FAC ¶ 80.)  Camacho's Song-Beverly claim therefore fails as a matter of law.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 926 (N.D. Cal. 2018) (dismissing Song-Beverly claims where plaintiffs failed to allege they purchased their phones in California because "[t]he protections of the Song-Beverly Act extend only to 'sale[s] of consumer goods that are sold at retail in this state [California]'" (quoting Cal. Civ. Code § 1792)); *Woo v. Am. Honda Motor, Co.*, 462 F. Supp. 3d 1009, 1019 (N.D. Cal. 2020) (dismissing Song-Beverly claims asserted by plaintiffs who purchased vehicles outside of California).

**B.      Plaintiffs' Consumer Protection Claims Fail as a Matter of Law on Multiple Grounds**

**1.      Labella and Rodgers' Consumer Protection Claims Fail to Satisfy Rule 9(b)'s Particularity Requirements**

Plaintiffs' consumer protection claims are unequivocally grounded in fraud; they are premised on the allegation that Apple either misrepresented or concealed facts pertaining to sound issues with the AirPods Pro 1.  (*See, e.g.*, FAC ¶ 6 (alleging Apple "concealed the sound issues it knew about from consumers"); ¶¶ 460, 500 (alleging that Apple "knowingly and fraudulently misrepresent[ed] the sound quality and listening experience that the AirPods Pro Gen 1 would provide consumers[.]")  Plaintiffs must therefore meet the heightened pleading requirements of Rule 9(b), which requires that they plead the "who, what, when, where, and how" of the alleged misrepresentation or omission, as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *See Yastrab v. Apple*, 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016);  *Graham v. Wells Fargo Bank, N.A.*, No. 3:15-cv-04220-JD, 2017 WL 86013, at *4 (N.D. Cal. Jan. 10, 2017) (the "'fraudulent' and 'unfair' prongs of the UCL . . . are subject to Rule 9(b)'s heightened pleading standards"); *Shields v. Alere Home Monitoring, Inc.*, No. C15-2580 CRB, 2015 WL 7272672, at *6 (N.D. Cal. Nov. 18, 2015) (claims grounded in fraud where plaintiff alleged that defendant misrepresented information about its product and concealed knowledge of product defects).  Further, because Rule 9(b)'s heightened pleading requirement is procedural, it applies "irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."  *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1192 (D. Or. 2016).

Plaintiffs LaBella and Rodgers do not come close to meeting this heightened pleading requirement.  Plaintiff LaBella makes at best vague allegations that she saw an Apple "commercial" that "tout[ed]" the AirPods Pro 1's "noise cancelling features and ability to provide users with high-quality audio."  (FAC ¶ 183.)  But LaBella provides no detail whatsoever about where or when she saw the "commercial," or even on what medium.  Rodgers alleges even less.  She does not allege she saw *any* Apple advertisement or other representation concerning AirPods Pro 1 before her purchase.  (*Id*. ¶¶ 171-80.)  She has failed to plead *any* facts, let alone with the

1  requisite specificity, as to what statement she saw or read that contained an alleged omission, as

2  well as when or where she saw such a statement.  LaBella and Rodgers' consumer protection

3  claims fail for lack of specificity and must be dismissed.  *See Yastrab*, 173 F. Supp. 3d at 978

4  (dismissing plaintiffs' consumer protection claims for failure to meet Rule 9(b)'s specificity

5  requirement where plaintiffs referenced only vague statements on Apple's website and its

6  advertisements); *see also Davidson*, 2017 WL 976048, at *8-9 (dismissing fraud claims premised

7  on an alleged omission where plaintiffs did not identify the specifics of the Apple advertisement

8  that contained an alleged omission).

9         **2.       Plaintiffs' Consumer Protection Claims Based on Alleged Apple**
             **Omissions Fail Because They Cannot Show a Duty to Disclose**
10

11        To the extent Plaintiffs Adair, Ambrozic, Kadyrov, LaBella, Nykerk, Rodgers, and

12  Schaefer seek to assert omissions-based consumer protection claims, those claims fail because

13  they cannot show that Apple had a duty to disclose any purported sound issues with their AirPods

14  Pro 1 that they claim occurred only after the Limited Warranty period expired.  (*See* FAC ¶¶ 143,

15  152 (Adair); ¶ 136 (Ambrozic); ¶¶ 159, 167 (Kadyrov); ¶ 187 (LaBella); ¶¶ 113, 123-25

16  (Nykerk); ¶ 106 (Schaefer); ¶¶ 172, 177-79 (Rodgers).  Where an alleged defect manifests only

17  after the warranty period has expired, a defendant's duty to disclose extends only if the defect

18  poses an unreasonable safety risk.  *See Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1044-45

19  (N.D. Cal. 2021), *aff'd*, No. 21-16282, 2022 WL 1577802 (9th Cir. May 19, 2022); *see also*

20  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-42 (9th Cir. 2012); *Perkins v.*

21  *DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (N.J. Super. Ct. App. Div. 2006) (finding no liability

22  under Pennsylvania law for failure to disclose defect that manifested after warranty period lapsed

23  where "it was not alleged that the . . . failure . . . represented a danger to others").

24        Plaintiffs here do not even attempt to plead such a safety risk, and for good reason: none

25  exists.  Without any allegation of a safety risk, Plaintiffs Adair, Ambrozic, Kadyrov, LaBella,

26  Nykerk, Rodgers, and Schaefer's omissions claims fail and should be dismissed.  Further, because

27  Plaintiff Rodgers alleges *only* omissions-based claims, her consumer protection claims should be

28  dismissed in their entirety.

1

### 3.      Plaintiff Pawson's Consumer Protection Claim Is Time Barred

2     Plaintiffs Pawson's consumer protection claim is independently deficient because it is

3  untimely.  Pawson's claim under the Texas Deceptive Trade Practices-Consumer Protection Act

4  ("DTCPA") is subject to a two-year statute of limitation.  *See Holmes v. P.K. Pipe & Tubing,*

5  *Inc.*, 856 S.W.2d 530, 537 (Tex. App. 1993).  This two-year statute begins to run "after the

6  consumer discovered or in the exercise of reasonable diligence should have discovered the

7  occurrence of the false, misleading, or deceptive act or practice."  *Id*.  By his own allegations,

8  Pawson discovered his claims no later than November 2020 when he first experienced sound

9  issues with his AirPods Pro 1 (FAC ¶¶ 191, 200), yet waited four years, until November 2024 to

10 file suit.[4]

11     Pawson cannot rely on either the delayed discovery rule or the doctrine of fraudulent

12 concealment to salvage his untimely claim.  To invoke the delayed discovery rule, Pawson must

13 show that the "nature of [his] injury" was both "inherently undiscoverable" and "objectively

14 verifiable."  *LaTouche*, 606 S.W.3d at 883.  "An injury is not inherently undiscoverable when it

15 could be discovered through the exercise of reasonable diligence."  *Id*.  Similarly, fraudulent

16 concealment tolls the statute of limitations only until "a party learns of facts . . . which would

17 cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of

18 the concealed cause of action."  *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 900 (W.D. Tex.

19 2019) (citations omitted); *see also Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 156 (Tex. App.

20 1985) (affirming dismissal of claim as untimely, noting "[t]he discovery rule speaks only of

21 discovery of the injury. It does not operate to toll the running of the limitation period until such

22 time as plaintiff discovers all of the elements of a cause of action").  Neither save Pawson's

23 DTCPA claim.  Here, Pawson claims that he first experienced sound issues in November 2020,

24 which prompted him to conduct online "research" into his issues, and he claims he then later

25

26     ---

    [4] The Court can properly determine the timeliness of Pawson's DTCPA as a matter of law.

27 "[I]f reasonable minds could not differ as the conclusion to be drawn from the facts, the
commencement of the limitations period may be determined as a matter of law."  *LaTouche v.*

28 *Perry Homes, LLC*, 606 S.W.3d 878, 884 (Tex. App. 2020).

1    experienced sound issues for the second time in January 2021.  (FAC ¶¶ 191, 200-02.)

2    Accordingly, Pawson was on notice of his claim as early as November 2020 and by no later than

3    January 2021, and he cannot claim any such facts were "undiscoverable" to him.  *LaTouche*, 606

4    S.W.3d at 883; *see also Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 984-85 (C.D. Cal.

5    2022) (holding plaintiff could not invoke delayed discovery rule where plaintiff's own complaint

6    cited "numerous sources of information concerning the defect that would have been revealed by

7    such a search").  Pawson's DTCPA claim is untimely and should be dismissed.

8            **C.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law**

9            Plaintiffs cannot state an unjust enrichment claim because the parties have an express

10   contract that governs Plaintiffs' rights as to whether their AirPods Pro 1 performed as warranted.

11   *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 153 (2001)

12   ("[a]s a matter of law, a quasi-contract action for unjust enrichment does not lie where express

13   binding agreements exist and define the parties' rights").[5]

14           As set forth above, the Limited Warranty governs Plaintiffs' rights as to their purported

15   issues with their devices, *supra* IV (A)(1).  Consequently, Plaintiffs' unjust enrichment claim

16   lacks any legal basis as it cannot cover conduct governed by a valid contract.  But even if

17   Plaintiffs had a legal basis to assert a claim for unjust enrichment, that claim would still

18   independently fail because Plaintiffs cannot plausibly allege that Apple retained any benefit at

19   their expense where each Plaintiff concedes they used their AirPods Pro 1 for years beyond their

20   purchase dates.  *See Peterson v. Cellco P'Ship*, 164 Cal. App. 4th 1583, 1593 (2008) ("There is

21   no equitable reason for invoking restitution when the plaintiff gets the exchange which he

22

23

24

25           [5] This limiting principle also applies under Florida, Illinois, New York, Ohio,
     Pennsylvania, and Texas law.  *See Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696
26   (Fla. Dist. Ct. App. 2008) (Florida law); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir.
     2013) (Illinois law); *Cox v. NAP Constr. Co.*, 10 N.Y.3d 592, 607 (2008) (New York law); *Cook
27   v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020) (Ohio law); *Liberty Mut. Ins. Co. v.
     Gemma*, 301 F. Supp. 3d 523, 541 (W.D. Pa. 2018) (Pennsylvania law); *Reveille Trucking, Inc. v.
28   Lear Corp.*, No. 4:14-CV-511, 2017 WL 661521, at *13 (S.D. Tex. Feb. 17, 2017) (Texas law).

1    expected.").[6]

2        **D.    Plaintiffs Lack Article III Standing to Pursue Injunctive Relief Because They
             Do Not Allege Any Likelihood of Future Injury**

3

4        Plaintiffs fail to satisfy the requirements for Article III standing to seek injunctive relief.

5    Plaintiffs do not allege that they intend to purchase another pair of AirPods Pro 1 in the future and

6    accordingly, they fail to allege any likelihood of future injury, as required for standing for

7    injunctive relief claims. *See Davidson*, 2017 WL 976048, at *6 (finding plaintiffs lacked Article

8    III standing for injunctive relief where plaintiffs failed to "allege that they intend to purchase

9    another iPhone 6 or 6 Plus in the future"). Plaintiffs do not allege that Apple even continues to

10   sell the AirPods Pro 1 (it does not), and they concede that any purported problem was "fix[ed]"

11   with the "new generation" of AirPods Pro (FAC ¶ 51), thus making clear there is no "real and

12   immediate threat of repeated injury" here that could be addressed via injunctive relief. *See, e.g.*,

13   *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *Werdebaugh v. Blue*

14   *Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014)

15   (no Article III standing for injunctive relief because "there is no likelihood of future injury to

16   Plaintiff that is redressable through injunctive relief" (class decertified, 2014 WL 7148923 (N.D.

17   Cal. Dec. 15, 2014))).

18       **E.    Plaintiffs' Conclusory Alternative Claims Under the Consumer Protection
             Statutes and Warranty Laws of Other States Fail as a Matter of Law**

19

20       In an "everything but the kitchen sink" effort that falls woefully short of the applicable

21   pleading requirements, Plaintiffs plead in the alternative that (i) Apple violated the "consumer

22   protection acts of 50 states," and (ii) Apple purportedly breached express and implied warranties

23   under the "warranty laws of 50 states." (FAC ¶¶ 226-55.) Such a "terse recitation of the law" is

24   plainly insufficient to meet the heightened pleading requirements of Rule 9(b). *See Ward v.*

25       [6] The same is true under Florida, Illinois, New York, Ohio, Pennsylvania, and Texas law.
26   *See, e.g.*, *Anderson v. Talentsy, Inc.*, 599 F. Supp. 3d 1207, 1214 (M.D. Fla. 2022) (Florida law);
     *Banco Panamericano, Inc. v. City of Peoria*, 880 F.3d 329, 333 (7th Cir. 2018) (Illinois law); *In*
     *re Nanobeak Biotech Inc.*, 656 B.R. 350, 368 (Bankr. S.D.N.Y. 2024) (New York law); *Cook*,
27   961 F.3d at 585 (Ohio law); *Liberty Mut.*, 301 F. Supp. 3d at 541 (Pennsylvania law); *Reveille*
     *Trucking*, 2017 WL 661521, at *13 (Texas law).
28

1    *Mitchell*, No. 12-cv-3932 NC, 2013 WL 1758840, at *9 (N.D. Cal. Apr. 24, 2013).  Indeed,

2    "[m]erely naming the statutes is insufficient" even under the Rule 8 pleading standards.  *See*

3    *Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 151489, at *4 (N.D. Cal. Jan. 8, 2015).

4    Plaintiffs do not allege the elements required to establish a violation of these statutes or laws,

5    much less facts to establish that each element under each variation of the law has been satisfied.

6    Accordingly, these claims should be dismissed.

7    **V.    CONCLUSION**

8            For the foregoing reasons, Apple respectfully requests that the Court grant Apple's motion

9    to dismiss.

10

11   Dated:  March 28, 2025                    MORRISON & FOERSTER LLP

12

13                                             By:    */s/ Claudia M. Vetesi*
                                                     CLAUDIA M. VETESI

14
                                                   Attorneys for Defendant
15                                                 APPLE INC.

16

17

18

19

20

21

22

23

24

25

26

27

28